UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

QUINTIN L. WILSON,

                                        Plaintiff,

                                                                3:23-cv-00263-DNH-TWD

v.

SGT. DANIEL FLANDERS et al.,
                                        Defendants.

_____

APPEARANCES:

QUINTIN L. WILSON
  *Plaintiff, pro se*
225323
Broome County Correctional Facility
P.O. Box 2047
Binghamton, NY 13902-2047

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent the Court a civil rights complaint filed by Quintin L. Wilson

("Plaintiff") pursuant to 42 U.S.C. § 1983.  (Dkt. Nos. 1, 1-5[1].)  Plaintiff has also filed a motion

to proceed *in forma pauperis* ("IFP").  (Dkt. No. 6.)  For the following reasons, the Court grants

Plaintiff's IFP application for purposes of initial review and recommends dismissal of the

complaint in its entirety.

_____

[1]  The Court reads Dkt. Nos. 1 and 1-5 together as Plaintiff's complaint in recognition of
Plaintiff's *pro se* status.

## I.  IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  (Dkt. No. 6.)  After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status.  Therefore, Plaintiff's IFP application is granted for purposes of initial review.

## II.  BACKGROUND

Plaintiff initiated this action against Sgt. Daniel Flanders, Judge Joseph F. Cawley, Jr., Alexander Czebiniak, Christopher D. Grace, and Judge Kevin Dooley on February 28, 2023. (Dkt. Nos. 1, 1-5.)  The Court takes judicial notice Judge Kevin Dooley was a Broome County Criminal Court Judge from 2014 to February 2022;[2] Judge Joseph F. Cawley, Jr., has been a Broome County Judge since 2008;[3] and Alexander Czebiniak is an Assistant District Attorney for Broome County.[4]

Plaintiff has filed a threadbare, conclusory complaint making it difficult for the Court to discern his claims.  *See id.*  From this complaint, however, the Court gleans the following. Plaintiff is suing Sgt. Flanders for "assaulting [him] at [his] home on the porch which put [him] in fear for [his] life" and which caused him to go into "Flight or Fight" on June 1, 2021.  (Dkt. No. 1 at 1.)  He is suing Judge Dooley, Judge Cawley, Alexander Czebiniak, and Christopher D. Grace for violations of his due process, speedy trial, Sixth Amendment, Eighth Amendment, and

---

[2]  Jim Ehmke, *Broome County Court Judge Kevin Dooley retires*, Binghamton Home Page (Feb, 25, 2022, 5:28PM), https://www.binghamtonhomepage.com/news/broome-county-court-judge-kevin-dooley-retires/.

[3]  6th JD – BROOME COUNTY, NYCOURTS.GOV, https://ww2.nycourts.gov/courts/6jd/broome/county.shtml (last visited May 1, 2023); The Honorable Joseph F. Cawley, Trellis, https://trellis.law/judge/joseph.f.cawley (last visited May 1, 2023.)

[4]  Alexander John Czebiniak, OPENGOVNY, https://opengovny.com/attorney/5931654 (last visited May 1, 2023.)

Fourteenth Amendment rights.  (Dkt. No. 1 at 1-2, Dkt. No. 1-5 at 2.)  Plaintiff lists his first

cause of action as "monetary relief" and "$1,000,00.00"; his second cause of action as

"$750,000.00"; and his third cause of action as "$500,000.00."  (Dkt. No. 1-5 at 4.)  Plaintiff

requests "monetary relief" from the Court.  (Dkt. No. 1-5 at 5.)

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Legal Standard

Under Section 1915(e), the Court must dismiss a complaint filed IFP if it determines that

the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted;

or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).[5]

The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter

jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these

grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66,

72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest*."  *Triestman

v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v.

Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a

finding of factual frivolousness is appropriate when the facts alleged rise to the level of the

irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous'

---

[5]  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks,
emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157
n.4 (2d Cir. 2020).

when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  "Section 1983 itself creates no substantive rights; it

provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Moreover, a court should not dismiss a *pro se* complaint "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.    Claims Against Alexander Czebiniak

Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of

his role as an advocate for the State." *Buckley*, 509 U.S. at 273.  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)).  Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Verbeek v. Teller*, 158 F. Supp. 2d 267, 282 (E.D.N.Y. 2001) (granting motion to dismiss claims against prosecutorial official because conspiracy allegation does not "negate her entitlement to absolute immunity") (citing *Dory*, 25 F.3d at 83).

Moreover, "'[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'"  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 20221) ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319, 2021 WL 3037709 (GTS/ML), at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were

effectively claims against the State of New York—as barred by the Eleventh Amendment), *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Although the allegations in the complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain Alexander Czebiniak violated Plaintiff's due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights while performing his official duties as a prosecutor.  (*See generally* Dkt. No. 1 at 2.)  *Simon*, 727 F.3d at 171.  Here, Plaintiff's allegations against Alexander Czebiniak clearly relate to non-investigative actions taken by Alexander Czebiniak in his official capacity as a prosecutor, and, therefore, he is entitled to prosecutorial immunity.  *Simon*, 727 F.3d at 171; *see, e.g.*, *Matthews v. Cnty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at *3 (N.D.N.Y. June 8, 2018) (dismissing claims against prosecutor on initial review because of prosecutorial immunity).  Thus, Plaintiff's Section 1983 claims against Alexander Czebiniak fail as a matter of law.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendant Alexander Czebiniak, an Assistant District Attorney for Broome County, be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

### C.    Claims Against Judge Dooley and Judge Cawley

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly."  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]"  *Young v. Selsky*, 41

F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id*.

Although the allegations in the complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain Judge Dooley and Judge Cawley violated his due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights while performing their official duties as judges. (*See generally* Dkt. No. 1 at 1-2.) *Mireles*, 502 U.S. at 11. Here, Plaintiff's allegations against Judge Dooley and Judge Cawley clearly relate to actions that are judicial in nature and, therefore, they are entitled to judicial immunity. *Mireles*, 502 U.S. at 11; *see, e.g.*, *Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-0981(JS) (SIL), 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (dismissing claims against a New York State court judge on initial review because of judicial immunity); *United States v. Bommer*, No. 1:19-CV-00823 EAW, 2020 WL 1963159, at *4 (W.D.N.Y. Apr. 21, 2020) (same). Thus, Plaintiff's Section 1983 claims against Judge Dooley and Judge Cawley fail as a matter of law.

Consequently, the Court recommends that all claims against Judge Dooley and Judge Cawley be dismissed with prejudice as Plaintiff seeks relief from defendants immune from suit under Section 1983. 28 U.S.C. §§ 1915(e), 1915A.

### D.      Claims Against Christopher D. Grace

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful

that conduct may be." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  A

conclusory allegation that a private individual acted in concert with a state actor does not

constitute a plausible allegation that the private individual acted under color of state law.  *See*

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*,

No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the

plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding

that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d

296, 301 (N.D.N.Y. 2018) (same).  Here, Plaintiff has not made any plausible allegation that

Christopher D. Grace acted under the color of state law.

　　　Further, insofar as Plaintiff seeks to impose liability on Christopher D. Grace,

presumably as Plaintiff's criminal defense attorney, based on the allegations in the current

complaint, such claims are not plausible because attorneys, whether court appointed or privately

retained, are generally not state actors for purposes of Section 1983.  *See, e.g.*, *Polk Cty. v.*

*Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir.

1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional

functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state

law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

　　　As such, Plaintiff's Section 1983 claims against Christopher D. Grace are inadequately

pled because he has failed to allege Christopher D. Grace acted under color of state law.  *See* 42

U.S.C. § 1983; *Velez*, 401 F.3d at 84.  The undersigned accordingly recommends dismissing all

of Plaintiff's Section 1983 claims against Christopher D. Grace on the grounds that they are

inadequately pled and frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B); *see also Livingston*, 141 F.3d at

437; *Walker v. Rivera*, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *3 (N.D.N.Y.

June 29, 2022), *report and recommendation adopted*, No. 1:22-CV-560, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

     **E.**    **Claim Against Sergeant Flanders**

     Construed liberally, Plaintiff asserts a Fourth Amendment excessive force claim against Sgt. Flanders.  (Dkt. Nos. 1, 1-5.)  "The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects.  To establish a Fourth Amendment excessive force claim, Plaintiff must show that the force used by the officer was 'objectively unreasonable.'"  *Correa v. McLeod*, No. 3:17CV1059 (VLB), 2017 WL 2962884, at *3 (D. Conn. July 11, 2017).  Determining whether the force is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  A court shall consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the [arrestee] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

     Simply put, "'[n]ot every push or shove' amounts to a Fourth Amendment violation. Indeed, a '*de minimis* use of force will rarely suffice to state a Constitutional claim.'"  *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)).  Moreover, a plaintiff must allege that he sustained an injury.  *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011).  "However, an individual does not need to sustain a severe injury to maintain a claim."  *Id*. (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force

used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

Here, Plaintiff has not provided "a short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a)(2). Instead, he advances the general claim that Sgt. Flanders violated his constitutional rights by "assaulting" him on his porch, putting him in "fear for [his] life" which put him in "Flight or Fight" mode on June 1, 2021, in Binghamton, New York. (Dkt. No. 1 at 1.) Plaintiff's allegation against Sgt. Flanders is conclusory and simply devoid of facts to support an excessive force claim. He has also not pled that he sustained any injuries. Thus, the Court recommends dismissal of the claim without prejudice for failure to state a claim.

### F.      Whether to Permit Amendment

A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez*, 171 F.3d at 795 (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

In this case, it is not clear whether better pleading would permit Plaintiff to cure the deficiencies identified above. Nevertheless, out of deference to Plaintiff's pro se status, the Court recommends that he be granted leave to amend to cure the deficiencies identified above, except with regard to any claims against Judge Dooley and Judge Cawley, who are entitled to judicial immunity, and Alexander Czebiniak, who is entitled to prosecutorial immunity.

11

**WHEREFORE**, for these reasons, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 6) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's claims against Judge Dooley, Judge Cawley, and Alexander Czebiniak (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e), 1915A; and it is further

**RECOMMENDED** that the remaining claims against Sgt. Flanders and Christopher D. Grace be **DISMISSED WITH LEAVE TO AMEND**[6] pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the

---

[6] Should Plaintiff be granted leave to amend, any amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and Local Rule 10.1. Any amended complaint must be a complete pleading which will supersede and replace the original complaint in its entirety. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

[7] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a).

      **IT IS SO ORDERED.**


Dated: May 4, 2023
      Syracuse, New York

                            Thérèse Wiley Dancks
                            United States Magistrate Judge

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### MEMORANDUM OPINION & ORDER

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the City of New York, former New York County Assistant District Attorney Dustin Chao, and eight members of the New York City Police Department ("NYPD") under 42 U.S.C. § 1983 and state law. Moye claims that Chao is liable for damages under Section 1983 and state law for malicious prosecution, abuse of process, denial of a fair trial, fabrication of evidence, conspiracy "to inflict an unconstitutional injury," and intentional and negligent infliction of emotional distress. (Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Claims) Chao has moved to dismiss the Amended Complaint on grounds of absolute immunity. For the reasons stated below, Chao's motion to dismiss will be granted.

### BACKGROUND

For purposes of deciding Defendant Chao's motion to dismiss, the Court has assumed that the following facts presented in the Amended Complaint are true.

### I. *MOYE'S ARREST*

On or about March 12, 2002, at approximately 8:00 p.m., NYPD officers Paul Jeselson and Tawaina O'Neal were stationed on the rooftop of an apartment building on the south side of West 118th Street near the corner of Morningside Avenue conducting nighttime narcotics surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located on the north side of West 118th Street, near Manhattan Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed Plaintiff "extend his hand from the driver's side window and hand a small glassine" to another individual—later arrested—who, in turn, handed it to an unapprehended customer. (*Id.* ¶ 20) The Defendant officers moved in and arrested Moye in the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the officers searched Moye and his car and found United States currency, both in Moye's possession and inside the vehicle. (*Id.* ¶ 27) The Defendant officers unnecessarily grabbed Moye, pushed him, and placed excessively tight handcuffs on him (*id.* ¶ 30), causing him to suffer bruises to and numbness in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal Possession of a Controlled Substance in the Third Degree. (Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that the police officer defendants "conspired [to give] and gave false testimony and intentionally placed false evidence before the grand jury."[1] (Am.Cmplt.¶ 35)

1    The Amended Complaint does not disclose what false testimony or other false evidence was laid before the grand jury. Moreover, there is no suggestion that Chao was involved in presenting false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*

Moye's first trial began on January 14, 2003. (Schwartz Decl., Ex. B) A.D.A. Chao introduced photographs at trial which he claimed showed the position of Plaintiff s car as it was parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer Jeselson, and Officer Papa were present when a District Attorney's office photographer took these photos in June 2002 from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42, 44) Although the photographs were intended to convey the vantage point of the officers on the night of the arrest, they did not replicate the "nighttime conditions." (*Id.* ¶ 45) According to Moye, these photographs nonetheless showed that the officers could not have seen Plaintiff extend his hand from the driver's side window and pass a small glassine to another individual, because the driver's side could not be seen from the vantage point of the rooftop observation post, even with binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

2012 WL 2569085

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

2012 WL 2569085

**IV. *THE CHARGES AGAINST MOYE ARE DISMISSED***

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Moye,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Moye,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

*DISCUSSION*

**I. *IMMUNITY***

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]    Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d

75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4** As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***

A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]   District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83.[4]

[4]
> By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at *4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

> [5] Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony....' ' ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard,* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express [ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10**  In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

* * * *

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.          8

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant District
Attorney Robert Henoch, Captain of Corrections Martin,
Corrections Officer Schmidt, Corrections Officer Brown
and Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages on the grounds that the defendants—the City of New York, an Assistant District Attorney, and certain Corrections Officers—violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by failing to protect him from an attack by fellow inmates against whom he had arranged to testify. Johnson also asserts two tort claims. The Assistant District Attorney moves to dismiss the complaint as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is granted and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed to be true for purpose of this motion. In May of 1998 Johnson was arrested for allegedly selling crack cocaine. Complaint at 4. Shortly after his arrest, he entered into a cooperation agreement with ADA Henoch to testify against several of his co-defendants. [1] *Id.* ADA Henoch allegedly "assured" plaintiff at that time that he "would protect him[ ]" from possible retaliation by his co-defendants. *Id.* Johnson claims that he was being held in Beacon, a housing area on Rikers Island, which was in "the same general area" as where the

people against whom he was to testify were held and that he alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured [him] that he would be safe" and that "he would be placed in protective custody." *Id.* at 4–5. Plaintiff also alerted defendant Corrections Officers Martin, Schmidt, Brown and "Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]   The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow inmates "who called him a snitch as they beat and kicked him." *Id.* As a result of the beating, Johnson suffered a fractured ankle, injuries to his head, neck and legs, and damage to his retina that required surgery. *Id.* ADA Henoch, after learning of the attack on plaintiff, "acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City of New York, Correction Officers Martin, Schmidt, Brown, and ADA Henoch and the ADA has moved to dismiss the complaint on the grounds that it fails to state a constitutional claim for which relief may be granted and that he is entitled to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as true the factual allegations of the complaint and must view the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722

F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818.) To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v . Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson.[2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, \*3 (S.D.N.Y. Nov. 6, 1995)

(citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

2        Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control

and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

### III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

### IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

---

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

## ORDER

ANALISA TORRES, District Judge:

*1 This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia,* 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

## BACKGROUND [1]

[1]    Unless otherwise stated, the following facts are
taken from the complaint and assumed, for
purposes of this motion, to be true. *ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    1

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

> [2]    The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.,* 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–147. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal.[3]

---

[3] Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

Rich v. New York, Slip Copy (2022)

2022 WL 992885

## IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

---

[4]    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5]    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent

infliction of emotional distress) against the DA Defendants.

### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

6    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable

cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

## 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation.[7]

[7]     As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4,

2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021).[8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]     The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at \*3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at \*4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

9
    Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10
    Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis for his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed —the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11]    As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

### A. Time Bar

#### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at \*4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

[12]      As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City [13]

[13]      Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

**\*12** The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se*. The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 992885

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

*\*1* The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]    The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id.* at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id.*) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]    "A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all
purposes. Fed. R. Civ. P. 10(c); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
1991) ("the complaint is deemed to include any
written instrument attached to it as an exhibit or
any statements or documents incorporated in it by
reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id.*)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id.*)

3    Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id.*) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id.*)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id.* at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id.*)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id.*) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id.*) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy County Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id.* at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id.* at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

4    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http:// pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

[5]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims
"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy— all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

> [6]  The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

> [7]  Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

Gentry v. New York, Slip Copy (2021)

2021 WL 3037709

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

**C. Claims Against Defendants Sharp and Soares**

**1. Individual Capacity**

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolute immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

**2. Official Capacity**

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

---

[8]    The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id*.) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**\*7**  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't,* 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York,* 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome,* 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato,* 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.,* when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.,* 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace,* 549 U.S. at 388-89); *see also Thomas v. Heid,* 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted,* 2018 WL 1773130 (N.D.N.Y.

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9]   Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10]   Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8**  As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

**\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]    Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]     As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2021 WL 3037709

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

*\*1* Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1] When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

*\*2* **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)

2018 WL 2926272

2018 WL 2926272
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tyrone MATTHEWS, Plaintiff,

v.

COUNTY OF CAYUGA, et al., Defendants.

5:17-CV-1004 (MAD/TWD)
|
Signed 06/08/2018

**Attorneys and Law Firms**

OFFICE OF JARROD W. SMITH, OF COUNSEL: JARROD
W. SMITH, ESQ., 11 South Main Street, P.O. Box 173,
Jordan, New York 13080, Attorney for Plaintiff.

**ORDER**

Mae A. D'Agostino, U.S. District Judge

**\*1** On September 8, 2017, Plaintiff Tyrone Matthews
commenced a counseled civil rights action, pursuant to
42 U.S.C. § 1983, against Defendants County of Cayuga,
Cayuga County Sheriff's Department, Cayuga County District
Attorney's Office, Cayuga County District Attorney Jon
E. Budelmann, Cayuga County Senior Assistant District
Attorney Christopher Valdina, City of Auburn, and Auburn
City Police Department. *See* Dkt. No. 1. In addition, Plaintiff
filed an application to proceed *in forma pauperis*. *See* Dkt.
No. 2.

On November 27, 2017, Magistrate Judge Thérèse Wiley
Dancks issued an Order and Report-Recommendation in
which she granted Plaintiff's motion to proceed *in forma
pauperis*. *See* Dkt. No. 6. Magistrate Judge Dancks
also conducted an initial review of the complaint and
recommended dismissal of all claims. *See id.* This
recommendation was rejected as moot because Plaintiff
amended his original complaint as matter of right. *See* Dkt.
No. 15.

In the Amended Complaint, filed on March 2, 2018,
Plaintiff named as additional defendants the following law
enforcement officers: Jeffrey Catalfano, Matthew Androsko,
David Edmonds, Andrew Penczek, Andrew Skardinski,
Timothy Spingler, and David Walters, and the Chief of the
Auburn Police Department, Shawn I. Butler. *See* Dkt. No. 13
at ¶¶ 15-22.

In his Amended Complaint, Plaintiff asserts the following
causes of action pursuant to 42 U.S.C. § 1983 and New
York State law: "malicious prosecution; conspiracy to commit
malicious prosecution; false arrest; intentional infliction of
emotional distress; deliberately indifferent unconstitutional
decisions, policies, practice[s], habits, customs, usages,
training and derelict supervision, ratification, acquiescence
and intentional failures[.]" Dkt. No. 13 at ¶ 27. These claims
stem from two separate indictments.

In an indictment dated September 23, 2015, Plaintiff was
charged with two counts of Criminal Sale of a Controlled
Substance in the Third Degree, two counts of Criminal
Possession of a Controlled Substance in the Third Degree,
and two counts of Criminal Possession of a Controlled in the
Seventh Degree. *See id.* at ¶ 28. On September 30, 2015,
Plaintiff was arraigned on these charges and, unable to post
bail, was housed at the Cayuga County Jail. *See id.* at ¶ 29. In
an indictment dated July 7, 2016, Plaintiff was charged with
one count of Criminal Possession of a Controlled Substance
in the Third Degree. *See id.* at ¶ 30.

Plaintiff claims that Defendants lacked probable cause to
arrest and prosecute him for the felony drug charges because
they knew that "Plaintiff was a drug addict and nothing more
than an agent of a drug dealer." *Id.* at ¶ 31. At trial, Plaintiff
was convicted of three counts of Criminal Possession of a
Controlled Substance in the Seventh Degree but was acquitted
of the remaining, more serious counts.

On April 18, 2018, Magistrate Judge Dancks issued
a second Order and Report-Recommendation based on
Plaintiff's Amended Complaint in which she recommended
the complaint be dismissed upon initial review under 28
U.S.C. § 1915(e)(2)(B)(ii)-(iii). *See* Dkt. No. 16. Magistrate
Judge Dancks further recommended that Plaintiff's § 1983
claims be dismissed without prejudice as barred by *Heck
v. Humphrey*, 512 U.S. 477 (1994); and that Plaintiff's §
1983 claims against Defendants Budelmann and Valdina be
dismissed with prejudice on prosecutorial immunity grounds.
*See id.* In addition, Magistrate Judge Dancks recommended
that the Court decline to exercise supplemental jurisdiction
over Plaintiff's state law claims, and that Plaintiff's letter
motion (Dkt. No. 14) be denied as moot. *See id.*

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 51 of 106

Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)

2018 WL 2926272

**\*2** A court may grant a motion to proceed *in forma pauperis* ("IFP") if the party is "unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). While "extreme caution should be used in considering an in forma pauperis application, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted); *see, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

When a party files specific objections to a magistrate judge's order and report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However," [g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the

magistrate judge are reviewed for clear error." *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A litigant's failure to file objections to a magistrate judge's report and recommendation waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted) ).

In the present matter, Magistrate Judge Dancks provided Plaintiff adequate notice that he was required to file any objections to the Order and Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 16 at 13. On May 15, 2018, Plaintiff's counsel filed a letter stating he "will not be filling any objections." *See* Dkt. No. 19.

**\*3** As Magistrate Judge Dancks correctly found, Plaintiff is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), to assert civil rights claims, pursuant to 42 U.S.C. § 1983, for false arrest, false imprisonment, conspiracy, and malicious prosecution. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the [plaintiff's] suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted). In this case, Plaintiff was convicted of three counts of Criminal Possession of a Controlled Substance in the Seventh Degree. Plaintiff's success here would unquestionably cast doubt on these counts. Therefore, the Court finds that Plaintiff's claims for false arrest, false imprisonment, conspiracy, and malicious prosecution are barred under *Heck. See DiBlaisio v. City of New York*, 102 F.3d 654, 657-59 (2d Cir. 1996).

As Magistrate Judge Dancks correctly concluded, a prosecutor is absolutely immune from liability for virtually all acts associated with his or her function as a prosecutor and advocate. *See Lawlor v. Connelly*, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (citing cases). In fact, the Second Circuit has specifically held that a prosecutor is absolutely immune from

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 52 of 106

Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)

2018 WL 2926272

liability for withholding exculpatory evidence from a grand jury. *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Therefore, the Court finds that Plaintiff's § 1983 claims against Budelmann and Valdina are dismissed with prejudice on prosecutorial immunity grounds.

Further, since Plaintiff's § 1983 claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (holding that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

Upon a review of the Order and Report-Recommendation, and considering that Plaintiff has not objected to any of Magistrate Judge Dancks' thorough and well-reasoned recommendations, the Court finds no clear error in Magistrate Judge Dancks' recommendations and hereby affirms and adopts the Order and Report-Recommendation as the opinion of the Court.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' April 18, 2018 Order and Report-Recommendation is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 13) is **DISMISSED** on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926272

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 260102
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Andrew HARDY-GRAHAM, Plaintiff,

v.

SOUTHAMPTON JUSTICE COURT, Southampton
Town Police Dept., Jane Doe, Eileen Powers, John Doe 2,
Keith Lawston, Barbara Wilson, John Doe, Defendants.

20-CV-0981(JS)(SIL)
|
Signed 01/25/2021

**Attorneys and Law Firms**

For Plaintiff: Andrew Hardy-Graham, 836 Davis Avenue,
Uniondale, New York 11553.

For Defendants: No appearances.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

 *1  Before the Court is the Second Amended Complaint
(ECF No. 9; hereafter, the "SAC") filed in forma pauperis
by pro se plaintiff Andrew Hardy-Graham ("Plaintiff")
purporting to allege civil rights violations pursuant to 42
U.S.C. § 1983 ("Section 1983") against the Southampton
Justice Court (the "SJ Court"), the Southampton Town Police
Department (the "Police Department"), Eileen Powers, Esq.
("Powers"), Keith Lawston ("Officer Lawston"), Barbara
Wilson ("Justice Wilson"), and three unidentified individuals
who are alleged to be "police or court officers" ("John Doe 1",
"John Doe 2", "Jane Doe", and collectively, "Defendants").
Upon review of the SAC in accordance with the in forma
pauperis statute, 28 U.S.C. § 1915, the Court finds that
Plaintiff has failed to allege a plausible claim for relief as
against the SJ Court, the Police Department, Justice Wilson,
Powers, and Jane Doe. Accordingly, the SAC is DISMISSED
as against these Defendants pursuant to 28 U.S.C. § 1915(e)
(2)(B). Though attenuated, Plaintiff's remaining excessive
force claims against Lawston and John Does 1 and 2 shall
proceed and the Court ORDERS service of the Summonses
and the SAC by the United States Marshals Service (USMS)
as set forth herein.

BACKGROUND

By Memorandum and Order dated May 15, 2020, the
Court granted Plaintiff's application to proceed in forma
pauperis and dismissed Plaintiff's Amended Complaint
without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and
Federal Rule of Civil Procedure 8. (See Memo & Order, ECF
No. 8.) Plaintiff was granted leave to file a SAC within thirty
(30) days and, on June 15, 2020, Plaintiff timely did so. (See
SAC, ECF No. 9.) Because Plaintiff largely complained of
events alleged to have occurred in 2014, the Court ordered
Plaintiff to show cause (hereafter, "OSC") why his claims
arising from events alleged to have occurred during February
2014 are not barred by the applicable statute of limitations.
(See OSC, ECF No. 10.) On September 21, 2020, Plaintiff
filed an unsigned response to the OSC that barely addressed
the timeliness of his claims. (See Response, ECF No. 11.)
Rather, Plaintiff largely argued the merits of his claims. (See
id.)

In an abundance of caution and in light of Plaintiff's pro se
status, the Court issued another Order to Show Cause whereby
Plaintiff was "afforded a final opportunity to properly
respond ... in writing, by October 30, 2020, why his Section
1983 claims are not barred by the applicable three-year
statute of limitations." (Sept. 25, 2020 Elec. Order to Show
Cause; hereafter, "Electronic OSC.") Plaintiff's response to
the Electronic OSC was dated October 29, 2021 and was
received by the Court on November 2, 2020; it has been
accepted for filing. (See Reply, ECF No. 12.)

The Court finds that, at this early stage in the proceedings
and though barely, Plaintiff has demonstrated that he acted
with reasonable diligence during the time period he seeks
to be tolled and that his circumstances are so extraordinary
that the equitable tolling doctrine should apply. See Zerilli-
Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d
Cir. 2003) (internal citations and quotation marks omitted).
Specifically, Plaintiff reports that his untimely filing was a
result of the conditions of his confinement at the Suffolk
County Correctional Facility, as well as his homelessness,
addiction, and recovery efforts. (See Reply, generally, and
at 2-3.) Plaintiff describes that corrections officers "did
not allow complaints and used fear to keep inmates from
trying to complain." (Id. at 3.) He also explains that his
"appeal paperwork was damaged in Suffolk County jail
transfers and cell tossing." (Id.) Further, Plaintiff states that
he was homeless after his release from incarceration and he

Case 3:23-cv-00263-DNH-TWD  Document 10  Filed 05/04/23  Page 54 of 106

"prioritized survival over recovering what was lost. I lost personal items and release paperwork." (Id.) According to Plaintiff, once he "recovered some stability" in his sobriety and the necessities of living, he focused on his claims. (Id. at 5.) Thus, the Court finds that Plaintiff's response to the Electronic OSC sufficiently demonstrates a basis for equitable tolling of the statute of limitations. [1] Accordingly, the Court next considers the merits of Plaintiff's claims in accordance with the screening provision of 28 U.S.C. § 1915(e)(2)(B).

[1]  However, this finding is without prejudice to the further adjudication of the timeliness of Plaintiff's claims should the Defendants raise the statute of limitations as an affirmative defense.

## THE SECOND AMENDED COMPLAINT

**\*2**  Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 to redress the alleged deprivation of his Sixth, Eighth, and Fourteenth Amendment rights, as well as several sections under Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519. (SAC, ¶ II.A. [2])

[2]  Plaintiff also lists 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668."

According to his SAC, in February 2014, Plaintiff was arrested after breaking the windshield of his then-girlfriend's car. (SAC at 6.) Plaintiff was "detained and held overnight" by the Police Department. (Id.) Plaintiff was then taken by Southampton Town police to the SJ Court for arraignment on criminal mischief charges. (See id.) He describes respectfully "request[ing] to use the bathroom multiple times" to Jane Doe and to Officer Lawston. (Id.) Jane Doe allegedly advised Plaintiff that he could not use the restroom if he was next to be called for Court and Officer Lawston just questioned why Plaintiff did not go before leaving his cell for Court. (See id. at 6-7.) Plaintiff alleges that he had consumed "two oranges juices" necessitating his need to use the restroom. (Id.) He claims hearing a toilet flush and again asking Officer Lawston to use the bathroom since it was "right there." (Id. at 7.) Plaintiff contends that while Officer Lawston told him to go, when he attempted to do so, Officer Lawston "pulled" Plaintiff and physically kept Plaintiff from using the restroom. (Id.)

According to Plaintiff, he then "jump[ed] on top of the seating arrangement ... protesting ... [that he] will not sit until he goes to the bathroom or until Defendant Keith Lawston attempts to trip (Pl[aintiff]) from 3 feet above ground where (Pl[aintiff]) protested." (Id.) Plaintiff describes that he "gave up the protest but did not sit" and instead "lung[ed] for the bathroom" when Officer Lawston "put[ ] an elbow to [Plaintiff's] throat." (Id.) Officer Lawston allegedly "trips both parties" and "propel[led] [Plaintiff] towards the exit, not the restroom." (Id.)

Plaintiff asserts that John Doe entered and, after consultation with Officer Lawston, accused Plaintiff of "multiple charges" including attempted escape and assaulting an officer. (Id.) Plaintiff also claims that John Doe "ignored" his request to use the restroom and, instead, restrained Plaintiff. (Id. at 7-8.) Plaintiff contends that, thereafter, he was placed face-down on the floor, with an unknown officer twisting Plaintiff's arm until it hurt and digging his knee into Plaintiff's back. (See id. at 8.) Plaintiff alleges that Jane Doe then pointed a taser at him and threatened to taser him because he was yelling and kicking. (See id.)

Plaintiff was then taken back to the Police Department where he was placed on suicide watch after Plaintiff said "I should kill myself." (Id.) Claiming to have used that phrase as a "figure of speech", Plaintiff further contends he has never been suicidal or violent. (Id.) The following day, Plaintiff was returned to the SJ Court for arraignment where he again requested to use the bathroom. (See id.) Plaintiff claims that he "possibl[y] [has a] small bladder" and his request was ignored by John Doe 2. (See id.) When Jane Doe called Plaintiff's name, Plaintiff requested to use the bathroom, to which Jane Doe acquiesced and for which Plaintiff was grateful and relieved. (See id.)

**\*3**  Next, Plaintiff complains about his court-appointed attorney, Powers, claiming she called him an "asshole" and has a reputation, as reported in the newspapers, for representing "a rape/murder[er] Mexican." (Id. at 8-9.) Therefore, Plaintiff requested that Powers be relieved from her representation of him. (See id.) Justice Wilson did not permit Powers to be relieved; thus, Plaintiff asserts that Powers defended him without his consent. (See id. at 8-9.)

Finally, Plaintiff alleges that the "Suffolk County Jail does not allow timely visits to the law library", "has no grievance policy", and "flipped cells destroying important documents, tainting pro se efforts." (Id. at 9.)

As a result of the foregoing, Plaintiff claims to have suffered "monetary and mental damages" for which he seeks to recover a damages award in the total sum of $1 million. (SAC, ¶II.B(3), ¶IV.)

## DISCUSSION

Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### A. Claims Brought Pursuant to 18 U.S.C. §§ 1510, 1512, and 1519

Plaintiff seeks to pursue claims for relief pursuant to three sections of Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519. (See SAC, ¶II.A.) However, these sections are criminal statutes that proscribe the obstruction of justice and do not provide for a private right of action. See Arthur Andersen LLP v. United States, 544 U.S. 696, 703, 125 S. Ct. 2129, 2134 (2005) ("Chapter 73 of Title 18 of the United States Code provides criminal sanctions for those who obstruct justice."); see also LoPorto v. County of Rensselaer, No. 15-CV-0866, 2018 WL 4565768, at *16 (N.D.N.Y. Sept. 24, 2018) ("[T]here is no indication that §

1510 creates an individual right that can be enforced ...."); Hilow v. Rome City Sch. Dist., No. 14-CV-288, 2015 WL 893050, at *8 (N.D.N.Y. Mar. 2, 2015) (finding 18 U.S.C. § 1512 does not contain a private right of action); Kalola v. Int'l Bus. Machines Corp., No. 19-CV-9900, 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019) ("[N]o private right of action exists under the criminal statutes enumerated above", including 18 U.S.C. § 1519 (citing Bruin v. White, 2019 WL 4889270, at *4 (W.D. Ky. Oct. 3, 2019) (finding no private cause of action under 18 U.S.C. § 1519)). Accordingly, because there is no private right of action under these criminal statutes, these claims are implausible, warranting their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### B. Claims Brought Pursuant to 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668" [3]

Insofar as Plaintiff also includes "C.P.L.P. 213", "Prisoner Reform Laws", and "466 U.S. 668", none of these cites provide a cause of action or claim for relief. It appears that Plaintiff intended to cite to N.Y. C.P.L.R. § 213 in support of his mistaken belief that the statute of limitations applicable to his claims is six years. Additionally, Plaintiff's vague reference to unidentified "Prison Reform Laws" and his citation to Strickland v. Washington, 466 U.S. 668 (1984), do not provide independent causes of action.

**\*4** Plaintiff's claims brought pursuant to 28 U.S.C. §§ 455, 1332, 1343, 1361, and 1491 fare no better. Each of these statutes govern procedure in the federal district courts and none of them provide a separate claim for relief. Section 455 of Title 28 of the United States Code governs the disqualification of a federal justice, judge, or magistrate judge "in any proceeding in which his impartiality might reasonably be question." 28 U.S.C. § 455(a). Section 1332 of Title 28 of the United States Code governs the jurisdiction of the federal district courts and requires that the parties be of diverse citizenship and that the amount in controversy exceeds the sum or value of $75,000. See 28 U.S.C. § 1332(a)(1). Section 1343 of Title 28 of the United States Code provides that federal "district courts shall have original jurisdiction" over civil rights claims, including the right to vote. See 28 U.S.C. § 1343(a). Section 1361 of Title 28 of the United States Code provides that the federal "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff." Finally, Section 1491 of Title 28 of the United States Code, known as the Tucker Act, provides "a limited waiver of sovereign immunity and establish[es] federal jurisdiction over certain non-tort claims against the United States." Odonoghue v. U.S. Dep't of the Army, No. 12-CV-4959, 2012 WL 5505921, at *1 (E.D.N.Y. Nov. 13, 2012).

Because each of these statutes are procedural in nature, and do not provide a substantive cause of action or a right to relief, Plaintiff's damages claims arising from these statutes are implausible, warranting their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

C. Claims Brought Pursuant to Section 1983

Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356, 361, 132 S. Ct. 1497, 1501 (2012). To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rodriguez v. Shoprite Supermarket, No. 19-CV-6565, 2020 WL 1875291, at *2 (E.D.N.Y. Apr. 15, 2020) (internal quotation marks and citation omitted); see also Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010)(same)(quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

1. Claims Against the SJ Court

To the extent that Plaintiff seeks to impose Section 1983 liability on the SJ Court, such claims are implausible. First, it is well-established that a Section 1983 action may only be maintained against a "person" who has deprived another of

rights under the "Constitution and Laws." See Dames v. de Blasio, No. 20-CV-0226, 2020 WL 3869724, at *2 (S.D.N.Y. July 8, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (state is not a "person" for the purpose of § 1983 claims)); Zuckerman v. Appellate Div., Second Dep't Supreme Court, 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of 42 U.S.C. § 1983).

Second, because the "the Southampton Village Justice Court is part of the New York State Unified Court System", see Davis v. County of Suffolk, No. 18-CV-0303, 2020 WL 7699919, at *12 (E.D.N.Y. Oct. 30, 2020), report and recommendation adopted, 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020) (citing Ceparano v. Southampton Justice Court, No. 09-CV-0423, 2010 WL 11527157, at *12 (E.D.N.Y. Mar. 22, 2010), report and recommendation adopted, 2010 WL 11527158 (E.D.N.Y. May 12, 2010), aff'd, 404 F. App'x 537 (2d Cir. 2011)), Plaintiff's claims against the SJ Court are barred by the Eleventh Amendment. It is well-established that "[s]tates and their agencies possess sovereign immunity, as memorialized in the Eleventh Amendment." Ojeda v. Mendez, No. 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). "The Eleventh Amendment bars suits for damages against states and state agencies absent a state's consent or a valid abrogation of the state's sovereign immunity by an act of Congress." Ojeda, 2021 WL 66265, at *3 (citing Pennhurst, 465 U.S. at 99-100). Here, Plaintiff has not identified any waiver of sovereign immunity that would permit him to bring suit against the SJ Court, nor could he given that " 'New York State has not waived its sovereign immunity from Section 1983 claims, nor did Congress override that immunity by enacting Section 1983.' " Ojeda, 2021 WL 66265, at *3 (quoting Nolan v. Cuomo, No. 11-CV-5827, 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013)) (internal citations omitted)). Accordingly, as they are barred by the Eleventh Amendment, Plaintiff's Section 1983 claims against the SJ Court are DISMISSED pursuant 28 U.S.C. § 1915(e)(2)(B).

2. Claims Against Justice Wilson

**\*5** Plaintiff also names Justice Wilson as a Defendant. Because Justice Wilson is a state actor sued in her official capacity, Plaintiff's Section 1983 claims for damages against her are likewise barred by the Eleventh Amendment. See supra at 13-14; see also London v. Nassau County Dist. Attorney's Office, No. 20-CV-3988, 2020 WL 7699644, at *7

(E.D.N.Y. Dec. 28, 2020) ("Eleventh Amendment immunity bars Plaintiff's claims for damages against the State of New York and the individual state Defendants in their official capacities).

Moreover, Justice Wilson is absolutely immune from suit.

> "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citation omitted).

Guarnieri v. Kelley, No. 19-CV-0318, 2019 WL 1486688, at *3 (N.D.N.Y. Apr. 4, 2019), report and recommendation adopted, 2019 WL 5596468 (N.D.N.Y. Oct. 30, 2019), appeal dismissed (Jan. 17, 2020).

In addition, the 1996 Congressional amendments to Section 1983 bar injunctive relief and provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." See Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996); see also Montero v. Travis, 171 F.3d 757 (2d Cir. 1999). Therefore, unless a judge has "acted either beyond the judge's judicial capacity, or in the complete absence of all jurisdiction", he or she will be immune from all forms of suit. Guarnieri, 2019 WL 1486688, at *3 (internal quotation marks and citation omitted).

Here, Plaintiff alleges only that Justice Wilson denied his request to have his court-appointed attorney, Powers, relieved from representing him during the preliminary proceedings in the underlying state court criminal case. (See SAC at 8-9.) Yet, there can be no dispute that deciding motions during a court proceeding is a purely judicial function. Further, Plaintiff has not alleged that Justice Wilson acted beyond the scope of her authority, nor could he, given that the SJ Court had jurisdiction over the underlying criminal case. See N.Y. Crim. Proc. Law §§ 10.30(1)-(2) (local criminal courts possess jurisdiction over all offenses other than felonies). Accordingly, Plaintiff's claims against Justice Wilson are barred by absolute judicial immunity compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B). See also Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### 3. Claims Against the Police Department

**\*6** Plaintiff's claims against the Police Department are implausible because it is an administrative arm of the Town of Southampton and thus lacks the capacity to be sued as a separate entity. See, e.g., Ayers v. Suffolk County Dist. Attorney Office Inc., No. 20-CV-1192, 2020 WL 6363898, at *3 (E.D.N.Y. Oct. 28, 2020) (dismissing claims against the Southampton Town Police Department because, as "an arm of the Southampton Town government", it "cannot sue or be sued") (citing Southampton Town Code §§ 19-1, 19-3; Arum v. Miller, 331 F. Supp. 2d 99, 107 (E.D.N.Y. 2004) ("[U]nder New York law, a town police department is not a suable entity." (citation omitted)); Kiernan v. Town of Southampton, No. 14-CV-1831, 2015 WL 1258309, at *10 (E.D.N.Y. Mar. 17, 2015)).

### 4. Purported Claims Against the Town of Southampton

Given Plaintiff's pro se status and affording his Complaint a liberal construction, the Court has considered whether Plaintiff has alleged a plausible Section 1983 claim against the municipality, the Town of Southampton, and finds that he has not for the reasons that follow.

It is well-established that a municipality such as Southampton cannot be held liable under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly prohibits respondeat superior liability for municipalities.")(citing Monell, 436 U.S. at 691; Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (additional citation omitted)); Ayers, 2020 WL 6363898, *3. To prevail on a Section 1983 claim against a municipality, a plaintiff must show that "'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (internal citation omitted); City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915 (1988) (plurality

opinion) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Agosto, 982 F.3d at 97. To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 563 U.S. at 60-61; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 563 U. S. at 61; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." Cash, 654 F.3d at 334 (internal quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (holding a municipal custom may be found "when 'faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions' ") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (second alteration in original)).

**\*7** Here, even affording the SAC a liberal construction, Plaintiff has not alleged that the challenged conduct was taken pursuant to a municipal policy or custom. (See SAC, generally.) Nor are there any factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against the Town of Southampton.

## 5. Claims Against Powers

Plaintiff also seeks to impose Section 1983 liability on his court-appointed defense attorney, Powers, in the underlying state court criminal case. However, court-appointed "attorneys are generally not 'state actors' for purposes of § 1983." O'Donoghue v. U.S. Soc. Sec. Admin.,

828 F. App'x 784, 787 (2d Cir. 2020) (citing Rodriguez v. Weprin, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983.")); see also Pappas v. Lorintz, No. 19-3103, —— F. App'x ——, 2020 WL 6066083, at *3 (2d Cir. Oct. 15, 2020) (affirming dismissal of constitutional claims against a private lawyer because lawyer was not a state actor, not acting under color of state law, and not subject to a § 1983 claim) (citing McGugan v. Aldana-Bernier, 752 F.3d 224, 229 (2d Cir. 2014)). Accordingly, because Powers is not a state actor, Plaintiff's Section 1983 claims against her are not plausible, compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## 6. Claims Against Officer Lawston and the John/Jane Does

Plaintiff complains that Officer Lawston, Jane Doe, and John Doe 2 denied his requests to use the restroom while Plaintiff was awaiting his arraignment at the SJ Court. (See SAC at 6-8.) After repeated requests, Officer Lawston allegedly said Plaintiff could use the restroom and, as Plaintiff proceeded to do so, he was "pulled by Lawston" and not permitted to use the restroom. (Id. at 7.) Instead, Plaintiff was accused of trying to escape. (See id. at 7-8.) Plaintiff protested by jumping on top of the seating arrangement and refusing to come down until he was permitted to use the restroom. (See id.) He eventually "gave up the protest but would not sit." (Id.) Jane Doe is alleged to have pointed a taser at Plaintiff, threatening to use it on him. (See id. at 8.) Plaintiff also describes that a John Doe Defendant and Officer Lawston used "unnecessary roughness" by twisting his arm and digging a knee into his back. (See id.) Although Plaintiff alleges that he was in "pain", he does not claim any injuries other than "mental damages" and "depression". (Id. at 8, 11.)

"Courts in this district have consistently found that the temporary deprivation of the right to use the toilet, absent serious physical harm or serious risk of contamination, does not rise to the level of an objective constitutional violation." Cooper v. Marrero, No. 11-CV-9260, 2013 WL 2529723, at *4 (S.D.N.Y. June 11, 2013) (collecting cases: Walker v. Dep't of Corr. Serv., No. 11-CV-0993, 2012 WL 527210, at *2 (S.D.N.Y. Feb. 14, 2012) (no constitutional violation where prisoner was denied right to use bathroom for 80 minutes); Jones v. Marshall, No. 08-CV-0562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (same, 90 minutes);

Whitted v. Lazerson, No. 96-CV-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (no constitutional violation where prisoner had to wait 90 minutes to use bathroom and urinated and defecated in his pants); Odom v. Keane, No. 95-CV-9941, 1997 WL 576088, at *4–5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (no constitutional violation where plaintiff was deprived of a working toilet for 10 hours, nor where he could not flush his toilet between 9 p.m. and 7 a.m. for a period of several months)). Here, Plaintiff's sparse allegations do not allege a constitutional deprivation regarding his delayed access to the restroom. Indeed, although Plaintiff alleges that his initial requests for restroom access were denied, he expressly alleged that "he did not pee on himself" and does not allege anything more than de minimis discomfort. (SAC at 8 and generally.) Accordingly, Plaintiff has not alleged a plausible Section 1983 claim arising from the alleged delay in restroom access. Such claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**\*8** Conversely and though sparsely pled, at this early stage and affording Plaintiff's pro se pleading a liberal interpretation, the Court declines to sua sponte dismiss Plaintiff's remaining excessive force claims against Officer Lawston and John Doe 1 and John Doe 2. [4] Accordingly, the Court will order service of the Summonses and the SAC upon Officer Lawston, John Doe 1 and John Doe 2. Without more information, however, the USMS will not be able to effect service of the Summonses and the SAC on the John Doe Defendants. Since the Second Circuit has held that district courts must provide pro se litigants with reasonable assistance in investigating the identity of such "John Doe" defendants, see Valentin v. Dinkins, 121 F.3d 72, 75–76 (2d Cir. 1997), the Clerk of the Court will be directed to serve a copy of the SAC, together with this Order, upon the Town Attorney for the Town of Southampton. Upon said service, the Town Attorney will be directed to attempt to ascertain the full names of the unidentified John Doe Defendants identified in the SAC as allegedly having interacted with Plaintiff at the SJ Court in February 2014. Thereafter, and within thirty (30) days of the date that this Order is served upon him or her, the Town Attorney will be ordered to provide the Court and Plaintiff with the names and address(es) where the John Doe Defendants can be served.

[4]     It is unclear from Plaintiff's submission whether the challenged conduct is attributable to John Doe 1, John Doe 2, or both. Given Plaintiff's allegations that he was placed face down on the floor while

his arm was twisted and a knee was pressed into his back, in an abundance of caution and affording the pro se pleading a liberal construction, the Court declines to sua sponte dismiss Plaintiff's claims against John Doe 1 and John Doe 2.

Once the information regarding the John Doe Defendants is provided to the Court by the Town Attorney, Plaintiff's SAC shall be deemed amended to reflect the full names of these Defendants, a Summons shall be issued as to each Defendant, and the USMS are to serve each of them. The Town Attorney need not undertake to defend or indemnify these individuals at this juncture. This Order merely provides a means by which Plaintiff may properly name and serve these Defendants as instructed by the Second Circuit in Valentin.

<u>CONCLUSION</u>

Accordingly and for the reasons articulated herein, **IT IS HEREBY ORDERED** that Plaintiff's:

1. Claims against the SJ Court, Justice Wilson, the Police Department, Powers, and Jane Doe are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B);

2. Excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 based upon the denial of access to the restroom are DISMISSED; and,

3. Remaining excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 shall proceed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall:

4. Issue Summonses and forward such Summonses and the SAC, together with this Memorandum and Order, to the USMS for service;

5. Serve a copy of the SAC, together with this Memorandum and Order, upon the Town Attorney for the Town of Southampton; and

6. Mail a copy of this Memorandum and Order to the pro se Plaintiff at his address of record; and

**IT IS FURTHER ORDERED** that the Town Attorney:

7. shall attempt to ascertain the full names of the unidentified Defendants who are identified in the SAC as John Doe 1 and John Doe 2 and who are alleged to

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

have interacted with Plaintiff at the SJ Court in February 2014 as is described in the SAC; and

8. within thirty (30) days of the date that this Memorandum and Order is served upon him or her, shall provide the Court and Plaintiff with the names and address(es) where the John Doe Defendants can be served.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

**SO ORDERED**.

**All Citations**

Slip Copy, 2021 WL 260102

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  8

613 F.Supp.3d 712
United States District Court, W.D. New York.

UNITED STATES of America Relator

Nyanchiew Sabat Gachgatwech, [1] Plaintiff,

v.

Loran M. BOMMER, et al., Defendants.
United States of America Relator
Nyanchiew Sabat Gachgatwech, Plaintiff,

v.

Family Court Division of Erie County, et al., Defendants.

[1]      Plaintiff purports to bring both actions as a relator
on behalf of the United States. However, Plaintiff
does not provide, nor could the Court locate,
any basis for Plaintiff's authority to bring suit in
such a capacity. Accordingly, the Court construes
Plaintiff's claims as being brought on behalf of
herself, in her individual capacity.

1:19-CV-00823 EAW, 1:19-cv-01016 EAW
|
Filed April 21, 2020

**Synopsis**
**Background:** Pro se plaintiff brought two actions,
purportedly alleging civil rights violations, one challenging
her eviction, and the other challenging removal of her son
from her custody and seeking return of two vehicles that had
been towed. Plaintiff moved to proceed in forma pauperis in
both actions.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held
that:

[1] district court would grant plaintiff's motions for in forma
pauperis status;

[2] to the extent plaintiff's claims were premised on her rights
as a "sovereign citizen," those claims were frivolous and
failed to state a claim;

[3] district court did not have subject-matter jurisdiction over
pro se plaintiff's landlord-tenant and child custody disputes;

[4] plaintiff failed to allege any facts that would support an
inference that the towing of her vehicles violated her federal
rights;

[5] allegations that one judge wrongfully removed her son
from her custody and that another judge ordered that plaintiff
undergo a mental health evaluation, failed to allege that
judges or support magistrate acted in clear absence of all
jurisdiction, as required to overcome their judicial immunity;
and

[6] plaintiff failed to plausibly allege any constitutional
deprivation caused by or occurring pursuant to an official
custom or policy of county, as required to hold county liable
under § 1983.

Motions granted.

**Procedural Posture(s):** Motion to Proceed In Forma
Pauperis.

West Headnotes (31)

**[1]**    **Costs, Fees, and Sanctions** 🔑 Persons
Entitled to Proceed in Forma Pauperis

District court would grant pro se plaintiff's
motions for in forma pauperis status, with respect
to her two actions, purportedly alleging civil
rights violations, one challenging her eviction,
and the other challenging removal of her son
from her custody and seeking return of two
vehicles that had been towed; plaintiff submitted
affirmations of poverty in support of her motions,
and met the statutory requirements for in forma
pauperis status. 28 U.S.C.A. § 1915(a)(1).

**[2]**    **Costs, Fees, and Sanctions** 🔑 Application to
Proceed in Forma Pauperis

The court is required to conduct an initial
screening of complaints filed by civil litigants
proceeding in forma pauperis, to ensure that
the case goes forward only if it meets certain
requirements. 28 U.S.C.A. § 1915.

**[3]** **Costs, Fees, and Sanctions** 🔑 Material Considered; Evidence

In evaluating a complaint filed by a civil litigant proceeding in forma pauperis, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. 28 U.S.C.A. § 1915.

**[4]** **Costs, Fees, and Sanctions** 🔑 Frivolous or Malicious Litigation

Upon conducting initial screening of a complaint filed by a civil litigant proceeding in forma pauperis, a court must dismiss the case if the court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.A. § 1915(e)(2)(B).

**[5]** **Costs, Fees, and Sanctions** 🔑 Frivolous or Malicious Litigation

To the extent pro se plaintiff's civil rights claims, challenging her eviction and the removal of her son from her custody and seeking return of two vehicles that had been towed, were premised on her rights as a "sovereign citizen," those claims were frivolous and failed to state a claim, thus warranting dismissal under in forma pauperis statute. 28 U.S.C.A. § 1915(e)(2)(B).

1 Case that cites this headnote

**[6]** **Federal Courts** 🔑 State or federal matters in general

**Federal Courts** 🔑 Domestic relations; families and children

District court did not have subject-matter jurisdiction over pro se plaintiff's landlord-tenant and child custody disputes.

**[7]** **Courts** 🔑 Particular Cases and Contexts

To the extent pro se plaintiff sought review of previous state judicial proceedings relating to her

eviction and removal of her son from her custody, such review was barred by the *Rooker-Feldman* doctrine.

**[8]** **Courts** 🔑 Federal-Court Review of State-Court Decisions; Rooker-Feldman Doctrine

The long-standing *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts.

**[9]** **Courts** 🔑 Federal-Court Review of State-Court Decisions; Rooker-Feldman Doctrine

Courts consistently apply the *Rooker-Feldman* doctrine when dismissing matters arising from summary process or eviction proceedings in a state court.

**[10]** **Courts** 🔑 Particular Cases and Contexts

Courts routinely dismiss cases involving child custody orders on the basis that such actions are barred by the *Rooker-Feldman* doctrine.

**[11]** **Automobiles** 🔑 Parking or standing

Pro se plaintiff failed to allege any facts that would support an inference that the towing of her vehicles violated her federal rights; plaintiff alleged that her two vehicles were towed by the city police, under the city court, but did not provide further details as to the circumstances in which her vehicles were towed.

**[12]** **Social Security** 🔑 Execution, levy, attachment, garnishment, or other legal process

Pro se plaintiff's allegation that she was owed a refund on her social security account transaction, and request that the court stop all public servants conducting commercial transaction on her social security number, failed to provide a sufficient factual basis for such claim.

**[13]** **Municipal Corporations** 🔑 Capacity to sue or be sued in general

Pro se plaintiff could not assert a claim against police department, as department was an administrative arm of the city, and did not have its own legal identity.

2 Cases that cite this headnote

**[14]** **Municipal Corporations** 🔑 Capacity to sue or be sued in general

A police department is an administrative arm of the municipal corporation and cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.

2 Cases that cite this headnote

**[15]** **Federal Courts** 🔑 Courts

To the extent pro se plaintiff sought to assert claims against city court or county court, such claims were barred by the New York State Unified Court System's Eleventh Amendment immunity; city court and county court were part of the New York State Unified Court System. U.S. Const. Amend. 11.

3 Cases that cite this headnote

**[16]** **Judges** 🔑 Liabilities for official acts
**Justices of the Peace** 🔑 Judicial acts

Judges and support magistrates are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities.

1 Case that cites this headnote

**[17]** **Judges** 🔑 Liabilities for official acts

Allegations that the judge acted in bad faith or with malice do not pierce the protection of judicial immunity.

**[18]** **Judges** 🔑 Liabilities for official acts
**Justices of the Peace** 🔑 Judicial acts

Pro se plaintiff's allegations that one judge wrongfully removed her son from her custody and that another judge ordered that plaintiff undergo a mental health evaluation, failed to allege that judges or support magistrate acted in clear absence of all jurisdiction, as required to overcome their judicial immunity.

1 Case that cites this headnote

**[19]** **Judges** 🔑 Liabilities for official acts

A judge will not be deprived of judicial immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

1 Case that cites this headnote

**[20]** **Public Employment** 🔑 Judicial immunity

Judicial immunity applies to government officials for their acts that assist a judge in the performance of his or her judicial duties.

1 Case that cites this headnote

**[21]** **Clerks of Courts** 🔑 Liabilities for negligence or misconduct

In the State of New York, a county clerk's duties include those of a state-court clerk, for purposes of judicial immunity. N.Y. Const. art. 6, § 6; N.Y. County Law § 525(1).

**[22]** **Clerks of Courts** 🔑 Liabilities for negligence or misconduct

To the extent pro se plaintiff's claims against county clerk, alleging that county clerk's office and district attorney's office ignored case which was brought to their offices regarding violations by an agency under their supervision, were based on the clerk's performance of a function closely associated with the judicial process, county clerk was entitled to judicial immunity.

**[23]**  **Federal Courts** 🔑 **Other particular entities and individuals**

Pro se plaintiff's complaint contained no allegations concerning the New York State Department of State, although it listed Department as a defendant, and thus, district court could not discern whether plaintiff alleged claims that were not subject to immunity under the Eleventh Amendment. U.S. Const. Amend. 11.

**[24]**  **Federal Courts** 🔑 **Suits Against States; Eleventh Amendment and Sovereign Immunity**

**Federal Courts** 🔑 **Waiver by State; Consent**

**Federal Courts** 🔑 **By constitution or statute**

The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such suit or an express statutory waiver of immunity. U.S. Const. Amend. 11.

**[25]**  **District and Prosecuting Attorneys** 🔑 **Liabilities for official acts, negligence, or misconduct**

A prosecutor is entitled to absolute immunity for performing prosecutorial activities that are intimately associated with the judicial phase of the criminal process.

**[26]**  **District and Prosecuting Attorneys** 🔑 **Liabilities for official acts, negligence, or misconduct**

Generally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity; most other activities are characterized as administrative or investigative and, thus, merit less protection.

**[27]**  **District and Prosecuting Attorneys** 🔑 **Liabilities for official acts, negligence, or misconduct**

District court was unable to discern the substance of pro se plaintiff's allegation that county clerk's office and county district attorney's office ignored case which was brought to their offices regarding violations by an agency under their supervision, and thus, could not determine whether plaintiff's claim related to the district attorney's office's prosecutorial tasks, for which district attorney was entitled to absolute immunity, as opposed to investigative tasks.

**[28]**  **Civil Rights** 🔑 **Governmental Ordinance, Policy, Practice, or Custom**

**Civil Rights** 🔑 **Issues, proof, and variance**

To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. 42 U.S.C.A. § 1983.

**[29]**  **Civil Rights** 🔑 **Governmental Ordinance, Policy, Practice, or Custom**

Pro se plaintiff failed to plausibly allege any constitutional deprivation caused by or occurring pursuant to an official custom or policy of county, as required to hold county liable under § 1983. 42 U.S.C.A. § 1983.

**[30]**  **Civil Rights** 🔑 **Acts of officers and employees in general; vicarious liability and respondeat superior in general**

Municipalities are not subject to § 1983 liability solely on the basis of respondeat superior. 42 U.S.C.A. § 1983.

**[31]**  **Federal Civil Procedure** 🔑 **Effect of amendment**

An amended complaint is intended to completely replace the prior complaint in the action, and

thus it renders the original complaint of no legal effect.

**Attorneys and Law Firms**

**\*715** United States of America Relator Nyanchiew Sabat Gachgatwech, Buffalo, NY, pro se.

## INTRODUCTION

ELIZABETH A. WOLFORD, United States District Judge

**\*\*1** *Pro se* plaintiff Nyanchiew Sabat Gachgatwech ("Plaintiff") filed two actions, purportedly alleging civil rights violations—*United States of America Relator Nyanchiew Sabat Gachgatwech v. Bommer, et al.*, No. 1:19-cv-00823-EAW (the "Bommer Action") and *United States of America Relator Nyanchiew Sabat Gachgatwech v. Family Court Division of Erie County, et al.*, No. 1:19-cv-01016 EAW (the "Family Court Action"). (Dkt. B-1; Dkt. F-1).[2] Plaintiff has also filed motions to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and affirmations of poverty in support thereof. (Dkt. B-2; Dkt. F-2). Because the Complaints in each of these actions suffer from similar defects, the Court has considered them together.

[2]     References to numbered docket entries prefaced with "B" refer to documents filed in the Bommer Action, and references to numbered docket entries prefaced with an "F" refer to documents filed in the Family Court Action.

**\*716** The Court has reviewed Plaintiff's motions for *in forma pauperis* status and they are granted. The Court has also reviewed Plaintiff's Complaints (Dkt. B-1; Dkt. F-1) as required by 28 U.S.C. § 1915(e)(2) and finds that Plaintiff's claims must be dismissed. However, Plaintiff will be granted an opportunity to remedy certain of the defects as discussed below.

## BACKGROUND

The following facts are taken from Plaintiff's Complaints. (Dkt. B-1; Dkt. F-1). Although Plaintiff's allegations are disjointed and difficult to discern, as is required at this stage

of the proceedings, the Court treats Plaintiff's factual claims as true.

### I. Bommer Action

In the Bommer Action, Plaintiff asserts claims against defendants Loran M. Bommer ("Bommer"), Sabrie Mouss ("Mouss"), and the Buffalo City Court (collectively, the "Bommer Defendants"). (Dkt. B-1). Plaintiff rented a property for two and a half years from Mouss. (*Id.* at 4). Plaintiff requested Mouss make repairs to damaged items in the property. (*Id.*). However, Mouss never made the repairs. (*Id.*). Plaintiff alleges that Bommer and Mouss "conspire[d] against [Plaintiff's] business name[, and] refused to provide [her with a] landlord statement." (*Id.*). Sometime thereafter, Mouss, through his or her counsel Bommer, instituted eviction proceedings against Plaintiff. (*See id.*). On June 19, 2019, a warrant was issued to evict Plaintiff from the property. (*Id.* at 7).

Plaintiff alleges that she was not properly served as her office was closed when Bommer "served the unsigned [petition] by [the] [j]udge." (*Id.*). Plaintiff alleges that the Buffalo City Court "document" ordering her eviction was an illegal order because it did not list the name or signature of the issuing judge. (*Id.* at 4). Plaintiff further alleges that "[her] office did not get a chance to be present in a court of law." (*Id.*). The gravamen of Plaintiff's Complaint appears to be that she was wrongfully evicted from the property without appropriate process of law. (*Id.* at 5 ("All I need is for the court to see the facts. The service was illegal. No proper [service]. These parties [were] agents of United States. All thing is legal, if not legal is illegal. We must not be lawless people.")).

### II. Family Court Action

**\*\*2** In the Family Court Action, Plaintiff asserts claims against defendants Family Court Division of Erie County ("Erie County Family Court"), Erie County, Buffalo City Court, New York State Department of State, Erie County Family Court Judge Mary G. Carney, Erie County Family Court Support Magistrate John J. Aman, Erie County Clerk Michael P. Kearns, Erie County District Attorney John J. Flynn, and Buffalo City Court Judges Betty Calvo-Torres and Debra Givens (collectively, the "Family Court Defendants"). (Dkt. B-1 at 2-3).

Plaintiff alleges that Judge Carney removed Plaintiff's son from her custody "without [a] lawful claim." (*Id.* at 5). Plaintiff also alleges that the Erie County Clerk's Office

and the Erie County District Attorney's Office "ignored the case." (*Id.*). Plaintiff further alleges that her two vehicles were towed by "the Buffalo City Police, under Buffalo City Court," and that the Buffalo City Police and the New York State Police issued false arrest warrants. (*Id.*). Plaintiff further alleges that despite no "ev[i]dence of measurable disease," Judge Givens ordered Plaintiff undergo a mental health evaluation by an unlicensed doctor at the Erie County Mental Health Clinic. (*Id.*).

 **\*717**  Based on these allegations, Plaintiff asks the Court to return her son and vehicles. (*Id.* at 6). Plaintiff also requests that the Court order the removal of the restriction on Plaintiff's "social security number account credits to discharges public and private debt," and that the Court stop "public servants conducting commercial transactions on [Plaintiff's] social security number." (*Id.*).

## DISCUSSION

### I. Plaintiff's Motions for *In Forma Pauperis* Status are Granted

 **[1]**  Plaintiff's motions for *in forma pauperis* status and affirmations of poverty in support thereof have been reviewed in accordance with 28 U.S.C. § 1915(a)(1). Plaintiff has met the statutory requirements for *in forma pauperis* status and permission to proceed *in forma pauperis* is granted. The Court now turns to its obligation to screen Plaintiff's Complaints pursuant to 28 U.S.C. § 1915.

### II. Legal Standard

 **[2]**    **[3]**    **[4]**  "Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at \*2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, No. 6:17-CV-06121(MAT), 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017). In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005).

### III. Plaintiff's Claims Based upon "Sovereign Citizenship"

 **[5]**  Plaintiff's submissions and the allegations contained therein are characteristic of claims by "sovereign citizens." For example, Plaintiff refers to her name as a "trademark name," repeatedly refers to other individuals as "corporations," and claims to be "the sovereign power and tribunal of record" for her own "sovereign nation state." (*See, e.g.*, Dkt. F-1 at 7-9, 18).

The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). "The 'sovereign citizen' belief system has been described by other courts as 'completely without merit,' 'patently frivolous,' *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), and having 'no conceivable validity in American law,' *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)." *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at \*10 (N.D.N.Y. July 24, 2019). Accordingly, to the extent that Plaintiff's claims are premised on her rights as a "sovereign citizen," those claims are dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV. Plaintiff's Claims Based on Her Eviction and Child Custody Proceedings

 **\*\*3**    **[6]**  Liberally construing Plaintiff's Complaints, it appears that Plaintiff requests  **\*718**  the Court to review the validity of her eviction and child custody proceedings. However, the Court does not have subject-matter jurisdiction over landlord-tenant and child custody disputes. *See Rosquist v. St Marks Realty Assoc., LLC*, No. 08-CV-2764 (NGG), 2008 WL 2965435, at \*2 (E.D.N.Y. Aug. 1, 2008) (citing cases holding federal courts do not have jurisdiction over residential landlord-tenant matters); *Torres v. Family Court/Administration for Children's Servs.*, No. 01 CIV. 4351(RWS), 2001 WL 1111510, at \*1-2 (S.D.N.Y. Sept. 20, 2001) ("Torres' claims against [the Administration for Children's Services] and the Family Court fall within the ambit of cases excluded by *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because the

gravamen of her claim involves child custody—an area at the core of the domestic relations exception.").

 **[7]**    **[8]** Further, to the extent that Plaintiff seeks review of previous state judicial proceedings, such review is barred by the *Rooker*-*Feldman* doctrine. The long-standing *Rooker*-*Feldman* doctrine "provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Morrison v. City of N.Y.*, 591 F.3d 109, 112 (2d Cir. 2010) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

 **[9]**    **[10]** "[C]ourts consistently apply the *Rooker*-*Feldman* doctrine when dismissing matters arising from summary process or eviction proceedings in a state court." *Ratcliffe v. Liberty Home Equity*, No. 3:19-CV-01842 (KAD), 2019 WL 6135446, at *2 (D. Conn. Nov. 19, 2019) (collecting cases). Courts also routinely dismiss cases involving child custody orders on the basis that such actions are barred by the *Rooker*-*Feldman* doctrine. *See Hagy v. New York State Supreme Court Justice Joan B. Lobis*, No. 09 Civ. 0879(SCR) (PED), 2010 WL 1789920, at *3 (S.D.N.Y. Jan. 4, 2010) (collecting cases). The Court sees no reason to depart from this precedent here.

Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims arising out of her eviction and child custody proceedings and, thus, dismisses such claims without prejudice. *See Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) ("[T]he *Rooker*-*Feldman* doctrine implicates federal courts' subject matter jurisdiction, rather than the substantive merits of a case. And where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice." (citation and quotation omitted)). Moreover, because a more fulsome pleading could not cure this defect, the Court does not grant leave to amend these claims.

## V. Plaintiff's Remaining Claims

 **[11]**    **[12]** Plaintiff also complains that her two vehicles were towed by "Buffalo City Police, under Buffalo City Court." (Dkt. F-1 at 5). However, Plaintiff does not provide further details as to the circumstances in which her vehicles were towed, and so no fact-finder could conclude that the towing was a violation of Plaintiff's federal rights. Plaintiff also alleges that she is owed a "refund" on her "social security account transaction – counterfeit security" (*id.* at

4), and requests the Court to stop "all public servants conducting commercial transaction on [Plaintiff's] social security number" (*id.* at 5). Based on these sparse and disjointed allegations, the Court is unable to discern the factual basis of Plaintiff's remaining claims. Accordingly, Plaintiff's claims must be dismissed for failure to state a claim.

Plaintiff's claims are further subject to dismissal as she either does not allege the **\*719** personal involvement of individual Defendants or seeks to assert claims against Defendants that either cannot be sued or are immune from suit. However, as outlined below, Plaintiff is granted leave to amend claims against certain Defendants.

### A. Buffalo City Police

 **\*\*4**    **[13]**    **[14]** Plaintiff lists the Buffalo City Police as a defendant. However, "[a] police department is an administrative arm of the municipal corporation" and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999); *see also Boans v. Town of Cheektowaga*, 5 F. Supp. 3d 364, 373 (W.D.N.Y. 2014) ("Because a police department is an administrative arm of the municipal corporation, a police department does not exist separate and apart from the municipality and does not have its own legal identity and, thus, cannot sue or be sued." (quotation omitted)); *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued."). Accordingly, to the extent that Plaintiff seeks to assert a claim against the Buffalo City Police, such claim is dismissed with prejudice.

### B. Buffalo City Court and Erie County Family Court

 **[15]** Plaintiff also lists the Buffalo City Court as a defendant. However, "[t]he Buffalo City Court is ... a part of the New York State Unified Court System." *Lockridge v. Buffalo City Court*, No. 18-CV-834, 2019 WL 1557828, at *2 (W.D.N.Y. Apr. 10, 2019) (citing *Brown v. Paterson*, No. 10 Civ. 5833(PAC)(HBP), 2011 WL 7429454, at *10 (S.D.N.Y. Dec. 27, 2011)). The New York State Unified Court System "is protected by Eleventh Amendment sovereign immunity" and, thus, is "immune from suit." *Gollomp v. Spitzer*, 568 F.3d 355, 367 (2d Cir. 2009). Consequently, to the extent that Plaintiff seeks to assert a claim against the Buffalo City Court, a part

of the New York State Unified Court System, such claim is dismissed with prejudice.

For the same reason, Plaintiff's claim against the Erie County Family Court must also be dismissed. *See Dyer v. Family Court*, No. 16-cv-6876 (BMC)(RLM), 2016 WL 7494864, at *2 (E.D.N.Y. Dec. 28, 2016) ("[A]ny claims against the Family Court, a court that is part of the New York State Unified Court System, must be dismissed because it is entitled to sovereign immunity as guaranteed by the Eleventh Amendment."); *Amaker v. State of N.Y. Cty. of New York Family Court*, No. 11-cv-4815 (KAM), 2011 WL 4916702, at *2 (E.D.N.Y. Oct. 17, 2011) ("The New York State Unified Court System, of which the family court is a part, is entitled to Eleventh Amendment sovereign immunity.").

### C. Judges Mary G. Carney, Betty Calvo-Torres, and Debra Givens, and Support Magistrate John J. Aman

[16] [17] Plaintiff also lists Support Magistrate John J. Aman, Erie County Family Court Judge Mary G. Carney, and Buffalo City Court Judges Betty Calvo-Torres and Debra Givens as defendants. However, judges and support magistrates are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Parent v. New York*, 786 F. Supp. 2d 516, 533-34 (S.D.N.Y. 2011) (dismissing claims against both a judge and support magistrate on the basis of judicial immunity). Allegations **\*720** that the judge acted in bad faith or with malice (which are not present here) do not pierce the protection of immunity. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to § 1983. *See Pierson*, 386 U.S. at 547, 87 S.Ct. 1213.

[18] [19] The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Id.* at 356-57, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)); *see also Maestri v. Jutkofsky*, 860 F.2d 50 (2d Cir. 1988) (finding no immunity where town justice issued arrest warrant for conduct which took place within neither his town nor an adjacent town, thereby acting in the

absence of all jurisdiction). The Complaint alleges that Judge Carney wrongfully removed Plaintiff's son from her custody, and that Judge Givens ordered Plaintiff undergo a mental health evaluation. (Dkt. F-1 at 5). The Complaint contains no allegations concerning Judges Calvo-Torres and Support Magistrate Aman. Plaintiff makes no allegations that any of these Defendants acted in clear absence of all jurisdiction, and so her claims against them are subject to dismissal. However, to the extent that Plaintiff can plausibly allege, if true, that these Defendants acted in clear absence of all jurisdiction, Plaintiff will be permitted to replead her claims against these Defendants.

### D. Erie County Clerk Michael P. Kearns

**\*\*5** [20] [21] Plaintiff lists Erie County Clerk Michael P. Kearns as a defendant. "[Judicial immunity] also applies to government officials for their acts that assist a judge in the performance of his or her judicial duties." *Hudson v. Forman*, No. 19-CV-1830 (CS), 2019 WL 1517581, at *3 (S.D.N.Y. Apr. 8, 2019) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). "In the State of New York, a County Clerk's duties include those of a state-court clerk." *Id.* (citing N.Y. Cons. Art. VI, § 6(e), N.Y. County Law § 525(1)); *see also Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. 2005) (holding that pursuant to state law, the Bronx County Clerk's "primary function is to serve as a clerk of the Supreme Court of Bronx County, a state court" (internal quotation marks and citation omitted)).

[22] Here, the Complaint only alleges the following regarding the Erie County Clerk's office: "Erie County Clerk office and Erie County District Attorney Office. These two offices ignored the case which was brought to their offices regarding violation done by one of the agency under their supervisor administration on or about 2011 until current time." (Dkt. F-1 at 5). If the complained of action was a result of the County Clerk's performance of a function closely associated with the judicial process, the County Clerk would be entitled to judicial immunity. *See Hudson v. Forman*, No. 19-CV-9637 (CM), 2019 WL 6312004, at *3-4 (S.D.N.Y. Nov. 25, 2019) (finding the county clerk defendant entitled to absolute judicial immunity "for following court procedure regarding certification of the record for appeal"); *Hudson*, 2019 WL 1517581, at *3 (finding the county clerk defendant entitled to judicial immunity for refusing to issue the plaintiff a **\*721** summons and to certify the plaintiff's record on appeal).

However, to the extent that Plaintiff can plausibly allege, if true, a cognizable claim against the County Clerk—not arising out of his performance of a function closely associated with the judicial process—Plaintiff will be permitted to replead her claim against this Defendant.

### E. New York State Department of State

**[23]** **[24]** Plaintiff lists the New York State Department of State as a defendant. The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Here, Plaintiff's Complaint contains no allegations concerning the New York State Department of State. As such, the Court cannot discern whether Plaintiff alleges claims that are not subject to immunity under the Eleventh Amendment. Accordingly, Plaintiff's claim against the New York State Department of State is dismissed without prejudice. However, Plaintiff will be permitted to amend her complaint to set forth the necessary allegations therein.

### F. District Attorney John J. Flynn

**[25]** **[26]** Plaintiff also lists District Attorney Flynn as a Defendant. However, a prosecutor is entitled to absolute immunity for performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted).

**\*\*6** In *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the United States Supreme Court reaffirmed the following:

> acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which

occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Id.* at 273, 113 S.Ct. 2606. The *Buckley* Court distinguished between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand" and explained that a prosecutor is absolutely immune while performing the former function but not if performing the latter function. *Id.*

**[27]** Here, the Complaint only alleges the following regarding the District Attorney's office: "Erie County Clerk office and Erie County District Attorney Office. These two offices ignored the case which was brought to their offices regarding violation done by one of the agency under their supervisor administration on or about **\*722** 2011 until current time." (Dkt. F-1 at 5). The Court is unable to discern the substance of Plaintiff's allegations and, thus, cannot determine whether Plaintiff's claim relates to the District Attorney's office's prosecutorial tasks as opposed to investigative tasks. However, Plaintiff will be permitted to amend her complaint to set forth the necessary allegations therein.

### G. Erie County

**[28]** Plaintiff lists Erie County as a defendant. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted); *see also Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level,

a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

 [29]   [30]   Here, Plaintiff sets forth no allegations against Erie County, appearing to rely solely on the doctrine of *respondeat superior*. However, municipalities are not subject to § 1983 liability solely on the basis of *respondeat superior*. *Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff has not plausibly alleged a constitutional deprivation was caused by or occurred pursuant to an official custom or policy of Erie County, but will be permitted to amend her complaint to set forth the necessary allegations therein.

## VI. Leave to Amend

 **7   To the extent Plaintiff may have plausible claims in connection with the towing of her vehicle or "social security account transaction – counterfeit security," Plaintiff is granted leave to file an amended complaint in the Family Court Action (No. 1:19-cv-01016 EAW) **by May 22, 2020**. Plaintiff is not required to file an amended complaint—but if she fails to do so, her remaining claims will be dismissed without prejudice. Plaintiff is further advised that should she file an amended complaint, she must include specific allegations as to each Defendant's personal involvement in connection with her claims. The Court will enclose with this Order instructions for filing an amended complaint, and the civil complaint form to be used in a non-prisoner context.

 [31]   Plaintiff is also advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's amended complaint must include all of the allegations against Defendants, such that the amended complaint may stand alone as the sole complaint in the action.

## CONCLUSION

For the reasons set forth above, Plaintiff's motions to proceed *in forma pauperis* are granted. The Court dismisses Plaintiff's claims in connection to her eviction and child custody proceedings without prejudice for lack of subject matter jurisdiction. Consequently, the Bommer Action (No. 1:19-CV-00823 EAW) is dismissed in its entirety and the Clerk of Court is directed to close the case.

In addition, with respect to the remaining claims in the  *723 Family Court Action (No. 1:19-CV-01016 EAW), Plaintiff's claims based upon "sovereign citizenship," and her claims against the Buffalo City Police, Buffalo City Court, and Erie County Family Court are dismissed with prejudice. Plaintiff is granted leave to file an amended complaint, as directed above, **by May 22, 2020**, in which she must include the necessary allegations regarding her claims. If Plaintiff fails to file an amended complaint by this date, her remaining claims will be dismissed with prejudice and the Clerk of Court is directed to close the case without further order of the Court.

SO ORDERED.

## All Citations

613 F.Supp.3d 712, 2020 WL 1963159

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4392743
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Manuel P. ASENSIO, individually; Manuel P.
Asensio as the parent of E.A., a minor child, Plaintiff,
v.
Janet DIFIORE, Chief Judge of New York State; Letitia
James, Attorney General of New York State; Barbara
Underwood; Andrew M. Cuomo, Governor of New York
State; Adetokunbo O. Fasanya; New York County Family
Court Magistrate Judge; Emilie Marie Bosak, Defendants.

No. 18-CV-10933 (RA)
|
Signed 09/13/2019

**Attorneys and Law Firms**

Manuel P. Asensio, New York, NY, pro se.

Jonathan Conley, NYS Office of the Attorney General, New
York, NY, for Defendants Janet DiFiore, Barbara Underwood,
Andrew M. Cuomo, Adetokunbo O. Fasanya.

Rachel Ambats, The Law Office of Rachel Ambats, PLLC,
Brooklyn, NY, for Defendant Emilie Marie Bosak.

Emilie Marie Bosak, New York, NY, pro se.

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

**\*1** Plaintiff Manuel Asensio, appearing *pro se*, commenced
this action on behalf of himself and his minor child, E.A.,
challenging various state court proceedings relating to E.A.'s
custody. He asserts claims under 18 U.S.C. § 241, and 42
U.S.C. §§ 1983, 1985, and 1986, against Defendants Janet
DiFiore, Chief Judge of New York State; Letitia James,
Attorney General of New York; Barbara Underwood, the
former Attorney General of New York; Andrew Cuomo,
Governor of New York; Adetokunbo Fasanya, New York
County Family Court Magistrate Judge (together, the "State
Defendants"); and Emilie Marie Bosak, Asensio's ex-wife.[1]
Before the Court are the State Defendants' motion to dismiss,
Defendant Bosak's motion to dismiss, and Asensio's renewed
requests for the undersigned's recusal. For the following

reasons, Defendants' motions to dismiss are granted, and
Asensio's motions are denied.

[1]     As explained further below, the Court assumes for
purposes of this Opinion that Asensio brings his
claims against the State Defendants in both their
official and individual capacities. Because Letitia
James succeeded Barbara Underwood as Attorney
General of New York after the Complaint was
filed, Letitia James is added as a party with respect
to Asensio's official capacity claims, pursuant to
Fed. R. Civ. P. 25(d). *See, e.g., Correction Officers
Benev. Ass'n v. Kralik*, No. 04 Civ. 2199(PGG),
2009 WL 856395, at \*5 (S.D.N.Y. Mar. 26, 2009).

**FACTUAL BACKGROUND**[2]

[2]     The facts in this section, which are assumed to
be true for purposes of this motion, are drawn
from Plaintiff's Complaint, its attachments, and the
record in the state court proceedings of which the
Court takes judicial notice. *See Roth v. Jennings*,
489 F.3d 499, 509–510 (2d Cir. 2007). In light of
Plaintiff's *pro se* status, the Court also considers
factual allegations made in Plaintiff's numerous
oppositions to Defendant's motion to dismiss.
*See* Dkts. 61–71, 73–75, and 78; *Washington
v. Westchester County Dep't of Corr.*, No. 13
Civ. 5322(KPF), 2015 WL 408941, at \*1 n.1
(S.D.N.Y. Jan. 30, 2015). The Court refers to the
ECF pagination of Plaintiff's filings for ease of
reference.

Familiarity with the substance of the underlying state court
proceedings and their complicated procedural history is
presumed. The Court reviews only those facts necessary to
resolving the instant motions.

This case arises from various post-divorce custody
proceedings in New York Family Court between Asensio
and his ex-wife, Defendant Bosak. Specifically, after the
New York Supreme Court granted Asensio and Bosak a
judgment of divorce in August 2013, Asensio filed multiple
petitions in New York Family Court, seeking, among other
things, modifications to the custody arrangements of E.A.
*See* Compl. at 6, 38 n. 7; Barnett Aff. ¶ 3. Defendant
Magistrate Judge Fasanya, who presided over some of these
petitions, issued a number of orders directing Asensio to pay

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

Bosak's attorney's fees, as well as the fees of an attorney who Judge Fasanya appointed to represent E.A. *See* Compl. at 4, 6, 24. Asensio thereafter unsuccessfully appealed many of those orders in the New York State Court System, until he was ultimately barred from bringing any further litigation challenging the propriety of his Family Court proceedings, absent prior permission. *See Asensio v. Fasanya*, Index No. 158837/2017 (Sup. Ct. N.Y. Cnty. June 8, 2018) (Doc. 119). Asensio now comes to this Court essentially alleging that his lack of success in New York State Court is the result of a broader conspiracy between Judge Janet DiFiore, Judge Fasanya and Bosak, to violate his constitutional rights—and to which the Attorney General and the Governor have turned a blind eye. The allegations against each of the Defendants, all of which are frivolous, are nonetheless reviewed in further detail below.

## I. Magistrate Judge Fasanya

 **\*2** Asensio's claims against Judge Fasanya largely arise in the first instance from a May 15, 2014 proceeding the judge held to address certain of Asensio's then-pending custody petitions. *Id.* at 24; *see also* Lipton Aff. Ex. A, *Asensio v. Bosak*, Index No. 153776/2017 (Sup. Ct. N.Y. Cnty. July 29, 2018) (Doc. 83). Asensio alleges that Judge Fasanya deprived him of due process at that hearing by, among other things, "ignor[ing] [his] attorney's legal objections." Compl. at 19. Although not entirely clear from the Complaint, those objections appear to have been directed to Judge Fasanya's appointment of a lawyer, Ms. Restivo, to represent the interests of E.A. in the ongoing custody proceedings. *See id.* Asensio contends that Judge Fasanya lacked "jurisdiction or authority" to appoint Ms. Restivo, and that he did so in cooperation with Bosak and her attorney. *Id.* at 28, 63. Asensio further alleges that "[i]t was obvious"—although he does not explain why—that Judge Fasanya had had "*ex parte* communications with Defendant Bosak's counsel." *Id.* at 24.

Since May 15, 2014, and in response to the alleged collusion that occurred on that date between Judge Fasanya, Bosak, her attorney, and Ms. Restivo, Asensio has "been prosecuting his complaints against Defendant Fasanya," "within the Unified Court System." *Id.* at 34, 62. As a result, Asensio maintains that Judge Fasanya has since retaliated against him in numerous ways. *See id.* at 20, 59 (alleging that Judge Fasanya's "actions against [Asensio] since May 15, 2014 ... have been deliberate and malicious one-sided fabrications, executed to retaliate against him").

Judge Fasanya's first alleged retaliatory act was his issuance of orders directing Asensio to pay at least a portion of Ms. Restivo's legal fees in connection with her representation of E.A. Asensio further asserts that Judge Fasanya had "no authority, right, or discretion to obligate [him] ... to agree to Ms. Restivo's hourly rate or the time she spends on the case." *Id.* at 67; *see also id.* at 20 (accusing Judge Fasanya of "fabricat[ing] ... arbitrary and unauthorized ... 'interim' fees for Ms. Restivo, contempt orders and summary 'pay or be arrest[ed]' orders to collect these fees"); *id.* at 67 (alleging that Judge Fasanya "use[d] thirteen (13) contempt and arrest orders to force [Asensio] to pay ... \$99,153.22,"). In Asensio's view, Judge Fasanya "is required by law to have New York County pay Ms. Restivo's bill ... not the Plaintiff." *Id.*

Next, Asensio alleges that Judge Fasanya retaliated against him by issuing a so-called interim custody suspension order on January 15, 2016, which he claims the judge "fabricated" with Bosak. *Id.* at 9; *see also id.* at 68 (asserting that the suspension order was "based on ... Bosak's false story-telling[.]"). Asensio also alleges that, on the same day, Judge Fasanya forced him "to see his daughter under the supervision of Richard Spitzer," a social worker of "Comprehensive Family Services," pursuant to an alleged plan between Judge Fasanya and Bosak's counsel "to suspend [Asensio's] parenting access without evidence, charges, hearing, decision or reasoning." *Id.* at 62.

Then, as an allegedly "punitive follow-up" to the January 15, 2016 Order, and "retaliatory act" against Asensio's complaints against Fasanya, the judge issued an order requiring Asensio to pay Bosak's legal fees in the amount of \$33,000. *Id.* at 74. Asensio acknowledges that the order was "based on a finding that [his] petitions were frivolous," but claims that the finding had "no basis in the record." *Id.* at 74; *see also id.* at 63, 76 (noting that "[t]he UCS and the State of New York have ignored and refused to review Defendant Fasanya's ... order entered on January 21, 2016, granting Defendant Bosak a \$33,701.50 legal fee award"). Asensio also asserts that Judge Fasanya has unconstitutionally deprived him of his due process rights by ordering him to pay over \$200,000 in fees. *See id.* at 18 ("Fasanya has unilaterally manufactured processes sixteen (16) times to commit unconstitutional seizures of money from Plaintiff totaling ... \$226,090.22."). The most recent order to pay fees (or alleged "seizure") "occurred on July 16, 2018 when Defendant Fasanya ... forced the Plaintiff to pay \$62,912.82 to Defendant Bosak's attorneys." *Id.*

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 73 of 106
Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)
2019 WL 4392743

**\*3** Asensio further asserts that Judge Fasanya unlawfully incarcerated him on June 30, 2017, for failing to comply with the judge's fee orders. *See id.* at 75 (describing the incarceration as "deliberately and maliciously in derogation of New York State law."). Asensio maintains that Judge Fasanya held him "in contempt of court at the conclusion of a contempt hearing on ... orders to show cause to enforce payment of Ms. Restivo's fees." *Id.* at 74. He further claims that he had secured the necessary surety bond to "secure an automatic statutory stay" of the contempt order, but that he was precluded from filing a notice of appeal of the order. *See id.* (accusing Judge Fasanya of denying Asensio's purported "right for an automatic stay and right to purge the alleged contempt ... and order[ing] [that] the Plaintiff be turned over to the department of corrections."). Asensio then alleges that "the Appellate Division for the First Department ... and the Court of Appeals refused to entertain [his] application for leave to appeal the contempt and incarceration order[.]" *Id.* at 75.

Lastly, Asensio refers to the Judge Fasanya's May 2, 2018 "Decision and Order on Default." *Id.* at 69. Although Asensio does not articulate the basis or contents of the order, he states that it "can only be viewed as a fraud on the court and the judicial system[.]" *Id.* at 77.

## II. Emilie Bosak

Asensio's allegations against Bosak, which are stated in less detail than those against Judge Fasanya, arise from the purported "collusion" between the two in connection with the May 15, 2014 hearing, the January 15, 2016 interim suspension order, and Judge Fasanya's numerous attorney's fees orders discussed above. In essence, Asensio alleges that Judge Fasanya's actions taken against him in his post-divorce proceedings is the result of a broader conspiracy between the judge and Bosak to violate his civil rights. Asensio asserts, for instance, that Bosak colluded with Judge Fasanya to "fabricate evidence, charges, and records, [and] to make fraudulent calendaring decisions[.]" Pl.'s Mem. Opp. at 1 (Dkt. 71). In addition, although he does not mention it in his Complaint, Asensio later alleges that Defendant Bosak conspired with Judge Fasanya at a much earlier date—December 13, 2013—to cause Asensio to be falsely arrested. *See* Pl.'s Aff. at 2 (Dkt. 62). The details of the purported conspiracy and the arrest are not specified.

## III. Chief Judge DiFiore

Asensio's claims against Judge DiFiore are similarly predicated on Judge Fasanya's alleged misconduct, and Judge DiFiore's purported failure to remedy such harm. More broadly, Asensio claims that Judge DiFiore's alleged conspiracy with Judge Fasanya—to permit the entry of the various fee orders against Asensio, among other things—is a component of what he dubs Judge DiFiore's "prohibited and impermissible domestic relations process." Compl. at 1. As part of this so-called "process," Asensio alleges that Judge DiFiore has "ignore[d] the law" to "maliciously create income" for lawyers appointed by New York judges ("18-B lawyers"). *Id.* at 4 (asserting that "the imposition of attorney's fees ... and appointments of unnecessary attorneys for children in ... post-divorce judgment custody violation cases" is a "central component" of DiFiore's "domestic relations process"). Other components of this process, Asensio contends, include DiFiore's "sanctioning" of Fasanya's "collusion" with Bosak, by permitting Fasanya to issue the interim suspension order. *Id.* at 3; *see also id.* at 14 (alleging that Judge DiFiore "has protected Defendant Fasanya from the Plaintiff's complaints," including by "deliberately refrain[ing] from ... regulat[ing] Defendant Fasanya's acts[.]").

According to Asensio, the reason Judge DiFiore has been able to engage in this purported "domestic relations process" is because of the domestic relations exception to the federal courts' subject matter jurisdiction under Article III of the U.S. Constitution—which he refers to as the "DRE" and which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "Without the cover provided by the DRE," Asensio posits, DiFiore could not have "conceal[ed]" her supposedly unlawful conduct. Compl. at 2. In other words, Asensio argues that DiFiore has been relying on the DRE as a shield to protect her from liability for her acts. Asensio thus purports to challenge "the federal courts' use of the so-called domestic relations exception." *Id.* at 5. It might seem, then, that Asensio is asking this Court to overturn the domestic relations exception as a legal doctrine. In Asensio's view, the doctrine has emboldened Chief Judge DiFiore to unconstitutionally permit family court judges to appoint attorneys for children in post-custody proceedings, and to order parents to pay for those attorneys' fees. The Complaint, however, makes no such request—instead, it seeks millions of dollars in punitive and compensatory damages against Defendants for allegedly violating Asensio's constitutional rights.

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 74 of 106

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

**\*4**  Separately, Asensio alleges that, on December 5, 2016, DiFiore improperly dismissed his prior complaint against Judge Fasanya and directed him "to the normal appellate practice ... without any review or consideration." *Id.* at 66; *see also id.* at 21 (noting that on December 5, 2016, "Defendant DiFiore arbitrarily ... fabricated a blanket protection order that banned all of the Plaintiff's actions against Defendant Fasanya.").

## IV. The Attorney General, the Governor, and Underwood

With respect to Defendants James, Underwood, and Cuomo, Asensio alleges that they have been "maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against" Plaintiff and E.A. *Id.* at 16; *see also id.* at 21 (stating that these defendants have "deliberately and wrongfully abstained from exercising the inherent duties of their official positions ... to monitor ... and prosecute Defendant DiFiore for her malicious actions against ... Plaintiff"). As with Judge DiFiore, Asensio blames the domestic relations exception to federal subject matter jurisdiction for giving these defendants "unrestricted authority to allow the [C]hief [J]udge to violate [his] rights." *Id.* at 25.

### PROCEDURAL BACKGROUND

Asensio commenced this action on November 21, 2018. On December 14, 2018, he filed a letter requesting, among other things, that the Court schedule a pre-trial conference and hold oral argument on Defendants' then-anticipated motions to dismiss. *See* Dkt. 12. After granting Defendants' subsequent requests for extensions of time to file the motions—which contest in part the Court's subject matter jurisdiction to hear Asensio's claims—the Court stayed the remainder of the case pending resolution of the motions and denied the requests in Asensio's December 14, 2018 letter. *See* December 17, 2018 Order (Dkt. 24). For the reasons provided in the Court's January 18, 2019 Order, Dkt. 31, the Court also denied Asensio's subsequent requests that the Court vacate its prior orders and that the undersigned recuse herself.

On February 1 st and again on February 13, 2019, the Court denied Asensio's renewed requests for recusal. *See* Dkts. 40, 42. The Court then granted Asensio's first request for an extension to file his opposition to Defendants' motions to dismiss. Dkt. 52. On April 17 th, Asensio filed a complaint

against Chief Justice Roberts of the United States Supreme Court, Chief Judge Katzmann of the United States Court of Appeals for the Second Circuit, and the undersigned, based in part on this Court's management of the case. *See* Dkt. 53-1. On the same day, Asensio again requested that the undersigned recuse herself. *See id.* The Court denied the request in its April 18, 2019 Order. Dkt. 55. As explained in that Order, it is well-established that "a judge is not required to recuse ... herself simply because a litigant before the judge has filed suit or made a complaint against ... her." *Jenkins v. Sladkus*, No. 04 Civ. 1595(LAK), 2004 WL 1238360, at \*1 (S.D.N.Y. June 3, 2004). Otherwise, litigants would be given carte-blanche to engage in endless "judge-shopping." *See Salten v. Cty. of Suffolk*, No. 08-CV-5294 (SJF)(AKT), 2012 WL 3260266, at \*2 (E.D.N.Y. Aug. 6, 2012). The Court subsequently granted Asensio's multiple requests for additional time to oppose Defendants' motions. *See* Dkts. 56, 58, 72.

On June 5, 2019, nearly two weeks before the State Defendants had filed their June 17 th reply to Asensio's opposition, he requested leave to file a sur-reply. Despite the Court not having ruled on the request, Asensio filed a sur-reply on June 17 th. On July 8 th, the Court declined to exercise ancillary jurisdiction over a separate fee dispute that had arisen between Defendant Bosak, who is now proceeding *pro se*, and her former counsel. On July 9 th, July 18 th, August 20 th, August 21 st, and September 11 th, Asensio filed additional letters requesting that the undersigned recuse herself.

### LEGAL STANDARDS

**\*5**  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 75 of 106

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

An action is frivolous when either: "(1) the factual contentions are clearly baseless ...; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").

## DISCUSSION

### I. Claims on Behalf of E.A.

As a threshold matter, Asensio's *pro se* status precludes him from asserting claims on behalf of E.A. in this action. "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). It follows that a non-attorney parent cannot bring a *pro se* case on behalf of his or her child in federal court. *See, e.g.*, *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Given that Asensio does not purport to be an attorney, his claims asserted on behalf of E.A. are dismissed without prejudice.

### II. Claims under 18 U.S.C. § 241

Asensio's first cause of action is brought against Defendants DiFiore, Fasanya, and Bosak, pursuant to 18 U.S.C. § 241, for allegedly conspiring to violate his "civil and due process rights[.]" Compl. at 29. But "nothing in the language or structure of § 241 suggests that Congress intended to create a private right of action under that section[.]" *Storm-ggink v. Gottfried*, 409 Fed. App'x 426, 427 (2d Cir. 2011) (citing cases). Indeed, 18 U.S.C. § 241 is a criminal statute and a private citizen, like Asensio, "lacks a judicially cognizable

interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981). Asensio's claims under 18 U.S.C. § 241 are, therefore, dismissed for lack of standing. *See id.*

### III. Claims under 42 U.S.C. §§ 1983, 1985, 1986

Asensio's remaining claims seek compensatory and punitive damages from all Defendants for alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986. With respect to the State Defendants, it is not clear to the Court whether Asensio intends to bring these claims against them in their official, as opposed to individual, capacities. On the one hand, the conduct for which Asensio seeks to hold them liable largely (if not entirely) occurred in the context of their official functions; on the other, Asensio is seeking punitive damages from each of them which are only available in individual capacity suits, and Defendants have raised both official and individual capacity defenses. *See Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995) (concluding that defendant officials were being sued in their individual capacities because the complaint sought punitive damages, "which are not available against the state," and the defendants had asserted a qualified immunity defense which is "unavailable in an [an] official capacity suit[ ]"). Out of deference to Asensio's *pro se* status, the Court will construe his claims as being asserted against Defendants in both their official and individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993). In any event, Asensio's claims must be dismissed in their entirety.

### A. Official Capacity Claims

 **\*6** "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The immunity "extends beyond the states themselves to state agents ... that are, effectively, arms of a state." *Id.* Such state agents include the New York Attorney General, the New York Governor, and New York state judges when acting in their official capacities. *See Abdullah-Sadiq v. Behringer*, No. 17-CV-0270(TPG), 2017 WL 5508478, at *2 (S.D.N.Y. Feb. 27, 2017); *New York State Court Clerks Ass'n. v. Unified Court System of the State of New York*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014).

Here, New York has not waived its Eleventh Amendment immunity to being sued in federal court. Nor did Congress abrogate the state's immunity in enacting 42 U.S.C. §§ 1983,

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 76 of 106

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

1985, or 1986. *See Gasparik v. Stony Brook Univ.*, No. CV-05-3817(SJF)(ARL), 2007 WL 2026612, at \*4 (E.D.N.Y. July 9, 2007) (citing cases), *appeal dismissed*, 296 Fed. App'x 151 (2d Cir. 2008). And Asensio's allegations against the State Defendants concern conduct occurring in their official capacities—namely, the entry of judicial orders by Judge Fasanya (and at least one by Judge DiFiore), as well as the alleged failure of the Attorney General and Governor "to abstain[ ] from exercising the inherent duties of their official positions." Compl. at 2. Accordingly, Asensio's official capacity claims against the State Defendants are barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction. *See Graziosac v. New York City*, 29 Fed. App'x 691, 693 (2d Cir. 2002).

### B. Individual Capacity Claims

To the extent Asensio's claims against the State Defendants under 42 U.S.C. §§ 1983, 1985, and 1986 can be construed to be seeking damages from them in their individual capacities, those claims also fail. The claims against Judges DiFiore and Fasanya are barred by the doctrine of judicial immunity; the claims against former Attorney General Underwood are barred by the doctrine of prosecutorial immunity; and the claims against Governor Cuomo are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### 1. Chief Judge DiFiore and Judge Fasanya

"As early as 1872, the Supreme Court recognized that it was a general principle of the highest importance ... that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). Were judges required to face the fear "that unsatisfied litigants may hound [them] with litigation charging malice or corruption[,]" this would result in "intimidation" rather than "principled and fearless decisionmaking," *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, for decades courts have held that judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity can only be overcome when a judge takes actions "in the complete absence of all jurisdiction" or when the judge's actions are "nonjudicial." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). When a judge, however, has taken "the challenged action [when] he had jurisdiction over the subject matter before

him," and the "action in question" was "judicial in nature," he —or she—is immune from liability for damages. *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005).

\*7 That is the case here. Asensio's allegations against Judge Fasanya are predicated on his conduct at the May 15, 2014 proceeding over which he presided, his appointment of E.A.'s attorney and social worker, his January 15, 2016 suspension order, and his orders requiring Asensio to pay the legal fees of E.A.'s and Bosak's attorneys. Despite Asensio's repeated assertions that Judge Fasanya "fabricated" these proceedings and orders, Asensio makes no plausible argument that Judge Fasanya lacked subject matter jurisdiction over Asensio's petitions against Bosak. In particular, Judge Fasanya clearly had jurisdiction to issue the January 15, 2016 suspension order, *see* N.Y. Fam. Ct. Act § 651(b), N.Y. Dom. Rel. Law § 240; to appoint E.A.'s attorney and social worker, *see id.* §§ 241–249, N.Y. Fam. Ct. Act § 651; and to order Asensio to pay E.A.'s and Bosak's attorneys' fees, *see* N.Y. Dom. Rel. Law § 237.

Asensio similarly fails to adequately allege that these acts were not judicial in nature. An act is judicial in nature when "it is a function normally performed by a judge," and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Each of Judge Fasanya's orders that Asensio addresses in his Complaint are the result of quintessential judicial acts—namely, the application of law and the exercise of judgment. *See Tarter v. State*, 68 N.Y.2d 511, 518–19 (1986). [3] The same goes for Asensio's allegations against Judge DiFiore with respect to her December 5, 2016 Order purportedly prohibiting him from filing further petitions against Judge Fasanya. Likewise, the allegations regarding Judge Fasanya's conduct over proceedings where Asensio appeared constitute judicial acts. *See Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at \*5 (S.D.N.Y. Feb. 7, 2019) (citing cases recognizing that presiding over hearings is a judicial act), *appeal dismissed*, No. 19-365, 2019 WL 3774562 (2d Cir. 2019). This result remains the same even in the face of Asensio's allegations that Judge Fasanya, Bosak, her counsel, and E.A.'s counsel colluded during the custody proceedings because "[t]he cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). Asensio's claims against Judge Fasanya are thus dismissed as barred by the doctrine of judicial immunity, as are Asensio's claims against Judge DiFiore. [4]

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 77 of 106

**Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)**

2019 WL 4392743

3   The Second Circuit also looks to state law to determine whether an act is judicial in nature. *See Huminski*, 396 F.3d at 76.

4   Even assuming, *arguendo*, that Judge DiFiore's purported "sanctioning of," or "failure to supervise," Judge Fasanya's allegedly unlawful conduct could be considered administrative as opposed to judicial acts, those allegations are frivolous. They also fail to state a claim for relief under § 1983, because (1) Asensio has not plausibly alleged that Judge Fasanya acted unlawfully in the first place, for the reasons explained above, and (2) "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam)).

Moreover, Asensio's allegations that DiFiore and Fasanya conspired with Bosak—to the extent such conduct could be considered "non-judicial" in nature and thus outside the scope of judicial immunity—do not suffice to state a conspiracy claim under § 1985(2) or § 1985(3).[5] *See L.K. v. Sewanhaka Central High School Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016). To support a claim for a conspiracy under section § 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Rodriguez v. City of New York*, No. 05 Civ. 10682(PKC)(FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). Asensio's conclusory and vague allegations that Judge DiFiore "direct[ed] the entry of 63 false judgments" in state actions that he filed against the Chief Judge based on her alleged "cooperation" with Fasanya and Bosak—and that Judge DiFiore and Fasanya conspired to "maliciously fabricat[e] processes to prevent the Plaintiff from having contact with his daughter," Compl. at 27—lack the requisite factual basis to state a § 1985 claim. *See Dubois v. City of White Plains*, No. 16-cv-0771 (NSR), 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018). Finally, because "a § 1986 claim must be predicated on a valid § 1985 claim," Asensio's § 1986 claim against DiFiore and Fasanya also fails. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Thus, to the extent they are not barred by judicial immunity, Asensio's §§ 1985 and 1986 claims against the two judges are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

5   Although Asensio does not specify what provision of § 1985 he seeks to invoke, the Court does not construe his Complaint as asserting a claim under § 1985(1), because that provision "only applies to conspiracies intended to interfere with ... federal officers, not state officers." *Cobbs v. City of Newburgh – City Council*, No. 09 Civ. 3800 (LMS), 2012 WL 12884367, at *9 (S.D.N.Y. Nov. 19, 2012), *aff'd*, 546 Fed. App'x 34 (2d Cir. 2013).

### 2. Former Attorney General Underwood

**\*8**  It is well-settled that "prosecutors are entitled to absolute immunity when accused of a failure to investigate." *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 n.1 (S.D.N.Y. July 13, 2016) (citing cases), *aff'd*, 714 Fed. App'x 60 (2d Cir. 2018). The claims against Underwood are exclusively premised on such accusations, specifically, her asserted decision to "abstain[ ] from exercising the inherent duties of [her] official positions ... to prosecute Defendant DiFiore for her malicious actions against ... Plaintiff," and thereby "permit[ting] other judges and non-judicial personnel ... to deny the Plaintiff process." Compl. at 21, 57. Underwood is thus immune from Asensio's claims arising from those decisions, which are, accordingly, dismissed.

### 3. Governor Cuomo

Asensio's allegations against Cuomo also fail state a claim for relief under 42 U.S.C. §§ 1983, 1985, and 1986. Asensio alleges that Cuomo ignored twelve of Asensio's complaints concerning Judge DiFiore's December 5, 2016 Order; and, as with Underwood, that he abstained "from exercising the inherent duties of [his] official positions," and cooperated with Judge DiFiore to permit other judges to "commit acts of wrongdoing" against Asensio. These allegations "rise to the level of the irrational" and plainly fall short of stating a claim for a deprivation of Asensio's constitutional rights. *Abdullah-Sadiq*, 2017 WL 5508478, at *2. The claims against Cuomo are thus dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### C. Claims Against Emilie Bosak

Finally, Asensio's claims against Defendant Bosak similarly fail. To state a claim under 42 U.S.C. § 1983, a plaintiff must first show that "the defendant was a state actor, i.e., acting

Case 3:23-cv-00263-DNH-TWD    Document 10    Filed 05/04/23    Page 78 of 106

**Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)**

2019 WL 4392743

under color of state law," when she committed the alleged constitutional violation. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). The actions of a private citizen, like Bosak, may constitute state action only when "there is such a close nexus between the State and the challenged action that ... private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009). This nexus may exist where, as Asensio alleges, the private actor "conspire[d] ... with a state official to violate the plaintiff's constitutional rights." *Osipova v. Dinkins*, 907 F. Supp. 94, 96 (S.D.N.Y. 1995).

But to state a claim against a private party on a such a § 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Asensio's conclusory allegations that Bosak engaged in "collusion, conspiracy, and cooperation" with Judge Fasanya to "fabricate charges and evidence against [him]," so as to have Ms. Restivo and Mr. Spitzer appointed as E.A.'s attorney and social worker, are plainly insufficient to support a finding that Bosak has acted under "color of state law." *See Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 Fed. App'x 9, 10 (2d Cir. 2013). For that same reason, any allegations that Bosak conspired with any of the State Defendants to violate Asensio's constitutional rights cannot state a claim under § 1985, and Asensio's § 1986 claim against Bosak fails as a result. *See Brown*, 221 F.3d at 341. Asensio's claims against Bosak are, therefore, dismissed.

## IV. Recusal

As previously noted, the Court has denied Plaintiff's multiple prior requests for the undersigned's recusal. *See* Jan. 18, 2019 Order (Dkt. 31); Feb. 01, 2019 Order (Dkt. 40); Feb. 13, 2019 Order (Dkt. 42); April 18, 2019 Order (Dkt. 55). Because Plaintiff has identified no new legal or factual basis warranting recusal in his renewed recusal requests of June

12th, July 9th, July 18th, August 20th, August 21st, and September 11th (*see* Dkts. 94, 102, 103, 106, 107, 108) those requests are also denied.

## V. Leave to Amend

**\*9** "District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at \*5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill*, 657 F.3d at 122–24). Where, as here, "[t]he problem with [a plaintiff's] causes of action is substantive," such that "better pleading will not cure it," amendment is futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to replead is thus denied. [6]

[6]    Defendants also moved to dismiss the Complaint on grounds that the claims were barred by the domestic relations exception, the doctrines of *res judicata* and *Rooker-Feldman*, and that some claims were barred by the statute of limitations as well. In light of the Court's dismissal of Asensio's claims on the grounds cited above, the Court need not address Defendants' alternative grounds for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiff's requests for the undersigned's recusal are DENIED. The Clerk of Court is directed to terminate all pending motions, to close this case, and to mail a copy of this Order to Plaintiff and Defendant Bosak.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2019 WL 4392743

---

**End of Document**        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2341544
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,
v.
Richard RIVERA, et al., Defendants.

1:22-cv-560 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** On May 26, 2022, Alisha Clark Walker ("Plaintiff"),
proceeding *pro se*, filed a Complaint against Judge
Richard Rivera, Judge Jill Kehn, Judge Anthony McGinty,
Leslie Silva, Douglas Broda, and the Averill Park School
District (collectively, "Defendants"). (Dkt. No. 1.) Plaintiff
simultaneously moved to proceed *in forma pauperis* ("IFP").
(Dkt. No. 2.) Having reviewed Plaintiff's motion to proceed
IFP, the undersigned GRANTS the motion for purposes of this
review. *See id.* The undersigned now considers the sufficiency
of the allegations set forth in the Complaint under 28 U.S.C.
§ 1915(e). For the reasons discussed below, the undersigned
recommends that the Court dismiss Plaintiff's Complaint in
its entirety with leave to amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]

[1]     The following recitation of facts is drawn from
the Complaint, which the Court accepts as true for
purposes of initial review. *See, e.g., LaTouche v.
Rockland County*, No. 22-CV-1437 (LTS), 2022
WL 953111, at \*1 (S.D.N.Y. Mar. 29, 2022);
*Walker v. City of New York*, No. 20-CV-5240 (PKC)
(LB), 2021 WL 1838277, at \*1 n.1 (E.D.N.Y. May
7, 2021).

Invoking this Court's jurisdiction under 28 U.S.C. § 1331
and § 1343, Plaintiff purports to advance several causes of
action under 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1
at 4.) Plaintiff's allegations arise out of orders and events
stemming from New York State Family Court Proceedings
in Rensselaer County involving a child custody dispute. *See
generally id.* at 1-3, 9-12. [2] Plaintiff accordingly brings this
action against New York State Family Court Judges Richard
Rivera, Jill Kehn, and Anthony McGinty, as well as Leslie
Silva, a private attorney, Douglas Broda, a Rensselaer County
Attorney for the Child ("AFC"), and the Averill Park School
District (collectively, "Defendants"). *Id.* at 2-3.

[2]     On June 2, 2022, Plaintiff filed another action in
this Court stemming from the same New York
State Family Court proceeding. *See* Case No. 1:22-
cv-581, Dkt. No. 1.

In general, Plaintiff claims "the policies, practices,
procedures, and standards established and/or maintained
by Defendant/s [sic] violate the Right to Free speech,
the Right to Assemble under the First Amendment, and
the Due Process and Equal Protection clauses of the
Fourteenth Amendments to the U.S. Constitution." *Id.* at 4;
*see also id.* at 6 (claiming Defendants violated Plaintiff's
"rights to her children, due process of law, and First
Amendment rights of Freedom of Speech and the Right to
Peacefully Assemble"). Stated differently, Plaintiff "contends
Defendants' policies, practices, procedures, and standards
are gender-based, unconstitutional, have a disparate impact
on women, and violate women's [New York State] entitled
equal economic, property ownership, and custody rights
in contested Judgment of Custody Orders when domestic
violence ("DV") exists." *Id.* at 8. Plaintiff accordingly
advances six causes of action against Defendants. *See id.* at
12-31.

Through the first cause of action, Plaintiff claims Defendants
acted in concert to violate her freedom of speech. *See id.* at
12-16. According to Plaintiff, Defendants violated the First
Amendment by supporting and issuing a New York State
Family Court order that prevented her from posting on social
media about the ongoing custody dispute. *See id.* Plaintiff
also claims Defendants violated the First Amendment by
supporting and issuing a New York State Family Court order
that prevented her from disseminating documents about the
ongoing custody dispute at her children's school district. *See
id.* In her second cause of action, Plaintiff claims Defendants
violated her First Amendment right to peacefully assemble

by supporting and issuing a New York State Family Court order that prevented her from "disseminating documents or information at any location in the children's school district and/or faculty administration." *Id.* at 16-17. By her third cause of action, Plaintiff claims Defendants unconstitutionally deprived her of her right to raise her children by applying discriminatory policies and legal standards. *Id.* at 19-21. Through her fourth cause of action, Plaintiff claims she has "been discriminated against by the Defendants" because she is "an advocate for sexual abuse [sic] against children (#savethechildren) and women affected by legal abuse by the system and their spouses." *Id.* at 22. In her fifth cause of action, Plaintiff claims Judge Rivera, Judge McGinty, Judge Kehn, and AFC Broda "used their positions of power to intentionally inflict harm and pain on me." *Id.* at 23. By her sixth cause of action, Plaintiff claims Defendants "routinely engaged in sex bias, often causing [her] to endure worse legal treatment by the abusive husband." *Id.* at 26.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at \*1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [3]

[3]    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims

are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because the claims are frivolous, it fails to state a claim upon which relief may be granted, and many Defendants are immune. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

## A. Private Individuals

Plaintiff purports to bring this action against Silva, a private attorney, and Broda, an AFC, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) Plaintiff does not explain or distinguish which of her causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. *See generally id.* at 12-31. The undersigned accordingly considers whether *any* of Plaintiff's causes of action state a claim for relief under 42 U.S.C. § 1983 against Silva and Broda. *See Sealed Plaintiff*, 537 F.3d at 191.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g., Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's § 1983 claims against Silva and Broda are inadequately pled because she has failed to allege they acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Silva and Broda acted in concert with state actors do not constitute plausible allegations that they acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Moreover, Silva cannot be sued under 42 U.S.C. § 1983, as [i]t is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *see also Agron v. Douglas W. Dunham, Esq. & Assocs.*, No. 02 CIV.10071(LAP), 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor.") (collecting cases). Broda cannot be sued under 42 U.S.C. § 1983 either—"although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise

independent professional judgment on behalf of the clients they represent." *Parent*, 786 F. Supp. 2d at 538; *see also Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015); *see, e.g., DeRouseau v. Fam. Ct., Westchester Cnty.*, No. 21-CV-8716 (LTS), 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."). The undersigned accordingly recommends dismissing all of plaintiff's § 1983 claims against Silva, the private attorney, and Broda, the AFC, on the grounds that they are inadequately pled and frivolous. *See* 28 U.S.C. § 1915(e) (2)(B); *see also Livingston*, 141 F.3d at 437.

## B. Immune Defendants

**\*4** Judge Rivera, Judge Kehn, and Judge McGinty are all immune from suit. 28 U.S.C. § 1915(e)(2)(B)(iii). Through her various causes of action, Plaintiff complains of rulings these Judges made and orders they issued while performing their duties as New York State Family Court Judges. (*See generally* Dkt. No. 1 at 6, 11-31.) However, because Plaintiff advanced no allegation suggesting Judge Rivera, Judge Kehn, or Judge McGinty acted outside the scope of their positions or without jurisdiction, the doctrine of judicial immunity applies. *See id.; see also Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018). This doctrine immunizes the judges from the causes of action Plaintiff asserts under both 42 U.S.C. § 1983 and § 1985. *See, e.g., Deem v. DiMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (affirming the dismissal of plaintiff's claims, asserted under 42 U.S.C. § 1983 and § 1985, where "Judge Gordon-Oliver was ... clearly entitled to juridical immunity"); *Komatsu v. City of New York*, No. 1:20-CV-6510 (LLS), 2020 WL 8641274, at *3 (S.D.N.Y. Oct. 22, 2020), *aff'd*, No. 20-3676-CV, 2021 WL 6060603 (2d Cir. Dec. 20, 2021) ("Plaintiffs claims under [42 U.S.C. § 1983, § 1985, and § 1986] against Justice Bannon and Defendant Vaughan, in their individual capacities, are barred under the doctrine of judicial immunity."); *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *6 (S.D.N.Y. Sept. 13, 2019) (concluding claims asserted under 42 U.S.C. § 1983 and § 1985 against "Judges DiFiore and Fasanya [we]re barred by the doctrine of judicial immunity"). The undersigned accordingly recommends that the Court dismiss all claims against Judge Rivera, Judge Kehn, and Judge McGinty on the grounds that the judges are immune, and the claims are frivolous. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii); *see Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is "frivolous" for purposes [of the *in forma pauperis* statute].").

### C. Failure to State a Claim under 42 U.S.C. § 1983 and § 1985

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983 and § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] First, Plaintiff has not provided "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). As explained above, to prevail on a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) that someone deprived her of a federal right, and (2) that the person who deprived her of that right acted under color of state law. *Velez*, 401 F.3d at 84. Plaintiff advanced the general claim that Defendants violated her First and Fourteenth Amendment rights through the use of unconstitutional "policies, practices, procedures, and standards." (Dkt. No. 1 at 4.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Defendants' conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Furthermore, Plaintiff failed to advance non-conclusory factual allegations in support of her third, fourth, fifth, and sixth causes of action clarifying who did what, when they did it, how that action or inaction caused her injury, and what right or rights it violated. (Dkt. No. 1 at 19-31.) These causes of action fail to give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2). Because Plaintiff failed to plausibly allege that one of the Defendants violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under § 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.") (collecting cases).

---

[4] Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 12-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983 or § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

**\*5** Second, to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g.*, *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

Here, Plaintiff failed to advance any factual allegations suggesting Defendants targeted and discriminated against her

on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Defendants discriminated against her and "routinely engag[ed] in sex bias," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 22, 26.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege the Defendants agreed (i.e., had a meeting of the minds) to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 4, 13.) Plaintiff advanced the general allegation that Defendants acted in concert during the custody dispute before the New York State Family Court, but made no factual allegations indicating Defendants agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Defendants violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Defendants acted in concert, without more, does not give rise to the inference that Defendants agreed to engage in unlawful conduct against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 12-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation").) Plaintiff alleged in conclusory fashion that Defendants violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 12-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of

action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

[5]      The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 20.) That claim fails, however, because Plaintiff did not allege she is or was an employee of one of the Defendants, and she did not allege any employment discrimination. *See, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

**D. Jurisdiction**

**\*6** Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks declaratory and injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody

Case 3:23-cv-00263-DNH-TWD    Document 10    Filed 05/04/23    Page 84 of 106

dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 EAW, 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

*7 Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments,

and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendants from continuing their illegal acts," a "permanent restraining order," and a declaration that "the Defendants' actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation

was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 2341544

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805477
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Richard RIVERA et al., Defendants.

1:22-CV-560
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On May 26, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendants violated her civil rights in connection with a child custody dispute. Dkt. No 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims—which are asserted against

various participants in underlying state court child custody proceedings—were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 2805477

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2962884
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Jose CORREA, Plaintiff,
v.
MCLEOD, et al., Defendants.

No. 3:17cv1059 (VLB)
|
Signed 07/11/2017

### INITIAL REVIEW ORDER

VANESSA L. BRYANT, UNITED STATES DISTRICT
JUDGE

*1 On June 29, 2017, the Plaintiff, Jose Correa, an inmate
currently confined at MacDougall-Walker Correctional
Institution in Suffield, Connecticut, filed a complaint pursuant
to 42 U.S.C. § 1983 against Correction Officer McLeod,
Lieutenant Lindsey, Correction Officer Ortyl, Correction
Officer Heinberg, Correction Officer Weir, Correction Officer
Daigle, Correction Officer Pinar, Correction Officer Beaulier,
Correction Officer Cassidy, Correction Officer Boudreau,
Correction Officer Carasquillo, Administrator Cournoyer,[1]
Deputy Warden Mulligan, Lieutenant Perylo, and Dr. Wright.
The Plaintiff is suing each defendant in his or her individual
and official capacities for violations of his Fourth, Fifth,
Eighth, and Fourteenth Amendment rights. He is seeking
declaratory, injunctive, and monetary relief. For the reasons
that follow, his complaint will be dismissed in part.

[1]    The ECF docketing system lists this defendant
       as "Courneyer." Upon information and belief, the
       correct spelling of this defendant's last name is
       "Cournoyer."

### I. Factual Allegations
On February 27, 2016, at approximately 4:00 p.m., the
Plaintiff was in the 3-East day room at Northern for
recreation, when correctional officers searched through his
cell and "wreck[ed]" his legal papers. Frustrated, the plaintiff
threw a plastic container at Correction Officer McLeod,
hitting him on the left side of his face. The Plaintiff
immediately lied face-down on the ground in submission.
Nevertheless, Correction Officer John Doe proceeded to

punch and kick the Plaintiff in the ribs. The Plaintiff
was then placed in restraints, and multiple John Doe officers
continuously beat the plaintiff and "bang[ed]" his head
against the concrete floor. Lieutenants Lindsey and Guimond
then sprayed a chemical agent in the Plaintiff's face.
Afterward, the Plaintiff was denied a shower to wash off the
chemical agent, and was also denied medical care and food.
Officers also continued to harass him.

At 4:45 p.m., Officer Boudreau "called in a false code,"
claiming that the Plaintiff was attempting to damage his
restraints, which prompted Lieutenant Perylo to deploy
another chemical agent on the Plaintiff and call him names.
Once again, the Plaintiff was denied a shower to wash off the
agent and was continuously harassed.

The Plaintiff wrote multiple inmate request forms and
grievances seeking medical attention, but no one responded.
The Plaintiff later learned that the correctional officers at
Northern were reading his legal mail and telling other inmates
his charges, which the Plaintiff believed put him in danger.

### II. Standard of Law
Pursuant to 28 U.S.C. § 1915A, this Court must review
prisoner civil complaints and dismiss any portion of the
complaint that is frivolous or malicious, that fails to state
a claim upon which relief may be granted, or that seeks
monetary relief from a defendant who is immune from
such relief. Although detailed allegations are not required,
the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon
which they are based and to demonstrate a right to relief.
Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009). The plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face." Bell
Atlantic, 550 U.S. at 570. Nevertheless, it is well-established
that "[p]ro se complaints 'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'
" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013)
(quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,
474 (2d Cir. 2006)).

### III. Analysis
*2 The Plaintiff claims that the officers and staff at Northern
violated his Fourth Amendment rights by unlawfully
searching his cell, reading his mail, and using excessive force
against him, violated his Eighth Amendment right against

**Correa v. McLeod, Not Reported in Fed. Supp. (2017)**

2017 WL 2962884

cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm, violated his Fifth Amendment rights, and unlawfully discriminating against him on the basis of his race.

### A. Personal Involvement

"It is well settled ... that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In addition, the plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The only Defendants mentioned in the Plaintiff's statement of facts are Lieutenant Perylo, Lieutenant Guimond, Lieutenant Lindsey, Correction Officer McLeod, Correction Officer Boudreau, and several unnamed correction officers identified only as John Does. Thus, aside from these individuals, all claims against Defendants listed in this action are DISMISSED for lack of personal involvement.

Moreover, the Plaintiff does not explain how Officer McLeod was involved in the attack or denial of care thereafter. He only alleges that McLeod was hit in the face by the plastic container thrown by the Plaintiff. Therefore, the claims against Officer McLeod are also DISMISSED.

### B. Claims Against Defendants in their Official Capacities

To the extent that the Plaintiff seeks money damages from the Defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

All such claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

### C. Fourth Amendment Claims

The Plaintiff claims that the Defendants violated his Fourth Amendment rights in three ways: (1) searching his cell; (2) reading his mail; and (3) using excessive force against him. A prisoner has no reasonable expectation of privacy in his prison cell. *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Smith v. Woods*, 219 Fed.Appx. 110, 111 (2d Cir. 2007). The interception of a prisoner's mail does not violate the Fourth Amendment where the officer(s) had "good" or "reasonable" cause to inspect it. *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998). Moreover, the Plaintiff has not specified which, if any, of the Defendants were involved in the interception of his mail. Therefore, his first two Fourth Amendment claims are DISMISSED for failure to state a claim.

**\*3** The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998). To establish a Fourth Amendment excessive force claim, the Plaintiff must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene (*id.* at 396) and "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

With respect to his third Fourth Amendment claim, the Plaintiff alleges that Lieutenant Lindsey, Lieutenant Guimond, Lieutenant Perylo, Officer Boudreau, and several John Doe corrections officers used excessive force on him after he threw a plastic container at Officer McLeod by physically assaulting him and spraying him with chemical agents despite his submission to their authority. Based on these allegations, the Plaintiff has stated a plausible excessive force claim against those Defendants. Thus, the Court will permit his Fourth Amendment claim to proceed against Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers.

### D. Fifth Amendment Claims

Case 3:23-cv-00263-DNH-TWD    Document 10    Filed 05/04/23    Page 89 of 106

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

The Plaintiff claims that the defendants violated his Fifth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. Therefore, his Fifth Amendment claim is DISMISSED for failure to state a claim.

E. Eighth Amendment Claims

The Plaintiff claims that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson*, 468 U.S. at 526-27. To state a claim for deliberate indifference to safety or failure to protect from harm, the plaintiff must show that the alleged conduct is sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999). The defendants must have been aware that the plaintiff faced an excessive risk to his health and safety and ignored that risk. *See Farmer*, 511 U.S. at 837. To determine whether the plaintiff faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

"An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *West v. Atkins*, 487 U.S. 42, 54 (1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[T]he State has a constitutional obligation, under the Eighth Amendment, to those whom it has incarcerated." *West*, 487 U.S. at 54. To state a claim for deliberate indifference to a serious medical need, an inmate must show both that his medical need was serious and that the defendants acted or failed to provide adequate medical care with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation

marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983 (*see id.* at 280) nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 Fed.Appx. 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

**\*4** The Plaintiff's allegations that he was assaulted and sprayed with a chemical agent while he was submissive and not resisting the Defendant's authority state plausible Eighth Amendment claims against the remaining Defendants for deliberate indifference to his safety. Thus, his Eighth Amendment claims will proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe corrections officers.

The Plaintiff has not alleged which prison officials denied his repeated requests for showers to wash off the chemical agents, medical care and food. Thus, he has failed to state a claim for deliberate indifference based on the denial of those requests. Plaintiff's deliberate indifference to medical needs claim is DISMISSED for failure to allege sufficient personal involvement.

F. Fourteenth Amendment Claims

The Plaintiff claims the Defendants violated his Fourteenth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. He that the Defendants discriminated against him on the basis of his race but does not support that claim with any facts. Therefore, the Plaintiff's Fourteenth Amendment claim is DISMISSED for failure to state a claim.

G. Request for Declaratory Relief

Declaratory relief is a vehicle for resolving the relative legal rights of parties to an actual controversy. "The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, 28 U.S.C.A. § 2201, styled 'creation of a remedy,' provides that in a case of actual controversy a competent court may declare the rights and other legal relations of a party whether or not further relief is, or could be, sought. This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Comm'n*

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

*of Utah v. Wycoff Co.*, 344 U.S. 237, 239 (1952) (internal quotations omitted). It serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, 10 Civ. 2291, 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1988).

The plaintiff's legal rights, outlined above, are clear and well established. The questions presented here are not whether the plaintiff has certain rights, but rather whether those rights have been denied. Thus the plaintiff asks the court to apply the facts of this case to the law and not to determine the legal rights of the parties, and declaratory judgment is inappropriate.

Relatedly, Plaintiff's request for declaratory relief concerns only past actions. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

Finally, declaratory judgment is a special proceeding which is available where other remedies do not exist. "A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case. *Public Service Comm'n of Utah*, 344 U.S. at 243 (discussing commentary to Fed. R. Civ. P. 57). In this case, 42 U.S.C. 1983 affords a remedy and thus a declaratory judgment is not authorized by statute. For the foregoing reasons, the request for declaratory relief is DISMISSED.

## ORDERS

**\*5** (1) All claims against Defendants McLeod, Ortyl, Heinberg, Weir, Daigle, Pinar, Carrasquillo, Beaulier, Cassidy, Cournoyer, Mulligan, Perylo, and Wright are DISMISSED. All claims against Defendants in their official capacities for monetary damages are DISMISSED.

(2) Because the Plaintiff has not identified the John Doe correction officers by their true names, the Clerk is not able to serve a copy of the complaint on those Defendants in their individual capacities. The Plaintiff must, within ninety (90) days of the date of this order, conduct discovery and file a notice indicating the first and last name of those Defendants. If the Plaintiff files the notice, the Court will direct the Clerk to effect service of the complaint on those Defendants in their individual capacities. If the Plaintiff fails to identify those Defendants within the time specified, the claims against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

(3) The Plaintiff's Fourth Amendment excessive force claim may proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and any John Doe officers properly and timely identified.

(4) The Plaintiff's Fifth Amendment claim is DIMISSED.

(5) The Plaintiff's Eighth Amendment claim for deliberate indifference to safety and/or failure to protect will proceed against Defendants Lindsey, Guimond, Perylo, Boudreau, and those John Doe officers properly and timely identified.

(6) The Plaintiff's Fourteenth Amendment claim is DISMISSED.

(7) The Plaintiff's request for declaratory relief is DISMISSED.

(8) Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers in their official capacities by delivering one copy of the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(9) The Clerk shall verify the current work addresses for Defendants Lindsey, Guimond, Perylo, and Boudreau with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each Defendant at the confirmed address within twenty-one (21) days of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 91 of 106

**Correa v. McLeod, Not Reported in Fed. Supp. (2017)**

2017 WL 2962884

Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(10) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(11) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(12) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**\*6** SO ORDERED this 11th day of July, 2017 at Hartford, Connecticut.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2962884

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Acosta v. City of New York, Not Reported in F.Supp.2d (2012)
Case 3:23-cv-00263-DNH-TWD Document 10 Filed 05/04/23 Page 92 of 106

2012 WL 1506954

2012 WL 1506954
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Anthony ACOSTA, Plaintiff,

v.

CITY OF NEW YORK, Inspector Michael Harrington, in
his individual and professional capacity, Police Officers
Michael Mazzilli and Police Officers "John Does" in
their individual and professional capacities, Defendants.

No. 11 Civ. 856(KBF).
|
April 26, 2012.

MEMORANDUM & ORDER

KATHERINE B. FORREST, District Judge.

**\*1** Plaintiff Anthony Acosta, a self-described Hispanic male and former police officer with the New York City Police Department ("NYPD"), brings this action against defendants the City of New York (the "City"), Inspector Michael Harrington (in his individual and professional capacities), Police Officer Michael Mazzilli (in his individual and professional capacities), and an unspecified number of John Doe police officers. [1] Plaintiff alleges that as part of, and subsequent to, a 2008 altercation that occurred while plaintiff was off-duty, defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law ("NYSHRL"), New York State Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8–107 et seq., the use of excessive force in violation of 42 U.S.C. § 1983, and were acting under color of state law pursuant to unlawful policies in violation of Monell v. Department of Social Services, 438 U.S. 658 (1978).

---

[1]    Plaintiff lists certain "John Doe" police officer defendants in the caption of the Amended Complaint-and makes certain allegations against them. (See, e.g., Am. Compl. ¶ 14.) However, plaintiff has not identified those officers and there is no indication that plaintiff has attempted to ascertain their identities from the City. No service

has been effectuated on those John Does and thus, they are not properly before this Court. Accordingly, the Court only construes plaintiff s claims against those defendants who were properly served.

The City of New York along with defendants Harrington and Mazzilli have moved to dismiss plaintiff s Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted.

FACTUAL BACKGROUND [2]

---

[2]    For purposes of deciding the instant motions, the Court accepts as true all well-pleaded allegations in plaintiff's Amended Complaint and draws all reasonable inferences in plaintiff's favor. See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001).

       In connection with plaintiff's opposition to the motion, plaintiff submitted various documents not referenced in, or integral to, the Amended Complaint. (See Decl. of Rocco G. Avallone in Opp'n to Mot. to Dismiss (Dkt. No. 22) Exs. B–G.) Consideration of such documents is inappropriate on a motion to dismiss, see DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.2010), and the Court has not done so in connection with deciding the instant motion.

On December 17, 2008 at approximately 11:05 p.m., plaintiff, at that time a uniformed member of the NYPD with the rank of Sergeant, was exiting a restaurant and bar near 1490 First Avenue in New York City, while off duty. (Am. Compl.

(Dkt. No. 18) ¶¶ 15, 16, 18.) After plaintiff entered his own car, through his car window he witnessed a separate vehicle strike an individual. (Id. ¶ 18.) Plaintiff exited his car to investigate and, in the process of trying to protect an allegedly "dark skinned and possible [sic ] Hispanic" cab driver from "being attacked by several [intoxicated] off duty police officers from the 19th Precinct," was struck by a 2 x 4 piece of wood by a John Doe police officer. (Id.) Plaintiff then identified himself (presumably to the John Doe police officer) as a police officer. (Id. ¶ 18.)

2012 WL 1506954

Plaintiff alleges that Captain Pla from the 19th Precinct,[3] one of the NYPD officers at the scene of the incident, failed to take any action to protect either (a) plaintiff, who was attempting to take the 2 x 4 away from one of the John Doe off-duty police officers, or (b) the "dark skinned cab driver." (Am.Compl.¶ 19.) Plaintiff finally wrestled the 2 x 4 into his possession, after which an NYPD vehicle arrived at the scene. (*Id.* ¶ 21.) At that time, plaintiff purportedly identified himself as a police officer, and attempted to inform the "plain clothes" police officers about the car accident and altercation between the cab driver and the off-duty police officers. (*Id.*)

3    At all times relevant to the complaint, plaintiff was with the 30th Precinct. (Am.Compl.¶ 10.)

Plaintiff then purportedly approached Officer Mazzilli, identified himself as a police officer, and informed him of the altercation between the off-duty police officers and the cab driver-and pointed out the off-duty officers. (Am Compl. ¶ 23.) In response, defendant Mazzilli allegedly yelled at plaintiff to remove his hands from his pockets, grabbed plaintiff's wrist, pushed plaintiff s hands into his pockets, but then maneuvered plaintiff's elbow to try to remove plaintiff's hands from his pockets. (*Id.* ¶¶ 24–25.) At that time, plaintiff again informed defendant Mazzilli that he was an on-duty police officer,[4] to which Mazzilli responded that he did not care, punched plaintiff in the chest, threw plaintiff to the ground, and handcuffed plaintiff's left wrist. (*Id.* ¶¶ 25–26.)

4    Plaintiff alleges that he told defendant Mazzilli, "I'm a Sergeant. I'm on the job." (Am.Compl.¶ 25) despite the fact that plaintiff alleges earlier in the Amended Complaint that he was off-duty at the time of the alleged altercation (*id.* ¶ 18).

*2 Defendant Mazzilli then attempted to handcuff plaintiff's right arm behind his back but could not due to limited mobility resulting from a prior surgery. (Am.Compl.¶¶ 26–27.) Plaintiff allegedly pleaded with Mazzilli to stop, explained the problem with his right arm, and requested that two sets of handcuffs be used; Mazzilli obliged. (*Id.* ¶ 27.) A "plain clothes" John Doe police officer subsequently inquired if plaintiff was armed, and, upon learning he was not, removed both sets of handcuffs and placed plaintiff in an SUV. (*Id.* ¶ 29.) Thereafter, plaintiff was transported to the 19th Precinct for interrogation. (*Id.* ¶ 30 .)

Plaintiff alleges that defendant Inspector Michael Harrington approached him prior to his interrogation, informed him that

he was not a subject of the investigation of the assault against the cab driver, but that he should lie during questioning regarding both what had occurred between the John Doe officers and the cab driver and what had occurred between plaintiff and Officer Mazzilli. Harrington then allegedly provided plaintiff with the version of the story he should tell to protect the off-duty police officers. (Am.Compl.¶¶ 31, 34–35.) According to plaintiff, Harrington provided his directives in front of two Sergeants–Mulvey and Cosmo-who allegedly were delegates from the Sergeants Benevolent Association. (*Id.* ¶¶ 32, 34.) Plaintiff informed Sergeants Mulvey and Cosmo of what had occurred, after which Mulvey informed plaintiff that it was inadvisable to go to the hospital for his purported injuries because the investigators "were looking to suspend Plaintiff" and a hospital visit would make plaintiff look "uncooperative and guarantee a suspension." (*Id.* ¶¶ 32, 33.) Based on that information, plaintiff allegedly did not seek medical attention subsequent to his interrogation. (*Id.* ¶ 33.)

Plaintiff, however, purportedly informed defendant Harrington that he would refuse to provide the story that Harrington had requested he give. (Am.Compl.¶ 31.) It is alleged, however, that "defendants" never interviewed the John Doe police officers who had seen the altercation between Mazzilli and plaintiff. (*Id.* ¶ 44.) Mulvey then spoke to Harrington and informed plaintiff that plaintiff was going to be placed on "Modified status;" he was placed on such status shortly thereafter. (*Id.* ¶ 36.) The Amended Complaint does not contain an explanation of the meaning of being placed on modified status.

Plaintiff alleges that he was also "issued Charges and Specifications" on August 18, 2009, and October 29, 2009, for failing to lie during his interrogation "to protect the white police officers" who were involved in the December 17, 2008 altercation with the cab driver. (*Id.* ¶ 38.) Plaintiff does not explain what charges or specifications were issued against him, or what it means to have charges and specifications issued. Then, on January 8, 2010, plaintiff alleges that he was placed in "Level II discipline monitoring" for approximately nine months. (*Id.* ¶ 39.) Again, plaintiff fails to explain what Level II discipline monitoring is or what precisely that meant in the context of plaintiff's job as an NYPD Sergeant.

*3 Plaintiff retired on October 2011—over two years later than he allegedly planned to retire. (Am.Compl.¶¶ 40, 41.) Plaintiff allegedly could not retire in March 2009 when planned because he purportedly could not obtain a "Good Guy" letter based on his placement on Level II status. (*Id.*

¶ 41.) Plaintiff also alleges that he had to forfeit a private security job, with a purported $140,000 annual salary, that he "had lined up" without the "Good guy" letter. (*Id.*) Plaintiff also alleges damages associated with failing to obtain overtime or special assignments based upon his modified and Level II statuses. (*Id.* ¶ 43.) It is further alleged that "defendants" continued their retaliation in unspecified ways through October 2011 because plaintiff would not accept a penalty for the charges. (*Id.* ¶ 45.)

PROCEDURAL HISTORY

Plaintiff commenced this action on November 23, 2011. (Dkt. No. 1.) On January 3, 2012, defendants requested a pre-motion conference related to an anticipated motion to dismiss plaintiff's original complaint, in response to which the Court set a briefing schedule. (Dkt. No. 10.) Defendants moved to dismiss the original complaint on January 18, 2012. (Dkt. No. 12.)

The Court held the initial pretrial conference in this matter on January 27, 2012. (*See* Dkt. No. 14.) At that conference, the Court informed plaintiff's counsel that plaintiff could withdraw his original complaint and file an amended complaint, taking into consideration defendants' motion to dismiss, or proceed on his original complaint and, if such complaint was found defective, any dismissal would be with prejudice. (*See id.*) In addition, the Court notified plaintiff's counsel at the conference that, given that plaintiff had been given notice of the defects in the original complaint from defendants' motion to dismiss the original complaint, plaintiff would be given a single chance to amend the complaint. In other words, the Court stated that if defects remained in any amended complaint, any dismissal would be with prejudice —*i.e.,* without leave to amend.

Plaintiff elected to amend his complaint (Dkt. No. 15), and filed the Amended Complaint on February 10, 2012 (*see* Dkt. No. 18). Plaintiff asserts claims under 42 U.S.C. § 1983 against the City and defendants Harrington and Mazzilli for racial discrimination, hostile work environment, and excessive force (Count One),[5] for violations of Title VII against the City (Count Two), New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* against all defendants (Count Three), New York City Human Rights Law, N.Y. City Admin. Code § 8–107 *et seq.* against all defendants (Count Four), 42 U.S.C. § 1983 for violations of constitutional rights under *Monell v. Department of Social Services,* 438 U.S. 658

(1978), against the City (Count Five), and 42 U.S.C. § 1981 for discrimination and retaliation (Count Six).

5    Plaintiff's claims are asserted in conclusory fashion, bur defendants-and the Court-construed them as broadly as possible on this motion to ensure that all potential claims were encapsulated by this decision.

Defendants filed the instant motion to dismiss on March 1, 2012, plaintiff opposed the motion on March 21, 2012, and the motion was fully briefed as of March 28, 2012. (Dkt.Nos.19, 21, 23.)

DISCUSSION

I. LEGAL STANDARD

**\*4** To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Twombly,* 550 U.S. at 570). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.* If the court can infer no more than "the mere possibility of misconduct" from the factual averments-in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. *Twombly,* 550 U.S. at 570; *Starr,* 592 F.3d at 321 (quoting *Iqbal,* 129 S.Ct. at 1950).

As an initial matter, plaintiff's claims fail because they do not meet the standard promulgated by *Twombly* and *Iqbal*. In particular, plaintiff's Amended Complaint is, as Judge McMahon recently put it, "a recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad

Case 3:23-cv-00263-DNH-TWD   Document 10   Filed 05/04/23   Page 95 of 106
Acosta v. City of New York, Not Reported in F.Supp.2d (2012)
2012 WL 1506954

happened to me at work; (3) therefore, it happened because I am (insert name of protected class)," *Bermudez v. The City of New York,* 783 F.Supp.2d 560, 581 (S.D.N.Y.2011). But the *sine qua non* of a race-based discrimination or retaliation claim is that discrimination or retaliation was *because of race.* As discussed further below, plaintiff fails to connect the dots between the alleged adverse actions and his membership in a protected class. The Court will address each of plaintiff's claims, including his excessive force and *Monell* claims, *seriatim.*

## II. EMPLOYMENT DISCRIMINATION

### A. CLAIMS UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1983, and NYSHL

Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting analysis set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The same applies to claims of employment discrimination pursuant to 42 U.S.C. § 1983 and the NYSHL. *See Spiegel v. Schulmann,* 604 F.3d 72, 80 (2d Cir.2010) (N.Y.SHRL); *Boykin v. KeyCorp.,* 521 F.3d 202, 213 (2d Cir.2008) ( § 1983). Under that framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must demonstrate (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002); *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000) ( § 1983).

**\*5** However, the *McDonnell–Douglas* test is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N .A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). An "employment discrimination plaintiff need not plead a prima facie case of discrimination" on this motion; instead, as long as the complaint gives the defendant "fair notice" of the plaintiff's claim, "the grounds upon which it rests" and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies Rule 8 fa) of the Federal Rules of Civil Procedure. *Boykin,* 521 F.3d at 214–16. Of course, "[t]he *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Jackson v. New York St. Dep't of Labor,* No. 09 Civ. 6608, 2012 WL 843631, at \*2 (S.D.N.Y. Mar.12, 2012) (quotation marks and citation omitted).

Although plaintiff does allege an "adverse" employment action—*i.e.,* that he was denied overtime and special assignments based on his Level II and modified status (Am.Compl.¶ 43)—he fails to raise a plausible inference that the action was taken on account of his race or national origin. Rather, plaintiff specifically alleges that the adverse employment action—being placed on modified status and Level II discipline monitoring—resulted from him refusing to "lie" when he was interrogated about the incident between the John Doe police officers and the cab driver. (*See* Am. Compl. ¶¶ 31, 35, 36, 38 ("In retaliation for failing to follow Defendant Harrington's unlawful directive regarding testifying falsely during Plaintiff's interrogation, ... Plaintiff was issued Charges and Specifications ...".) Plaintiff does not connect the fact that he is Hispanic to any of the alleged adverse actions taken against him other than alleging that the John Doe officers were white. (*See* Am. Compl. ¶ 38.) That is fatal to his discrimination claims. *See Int'l B'hood of Teamsters v. U.S.,* 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Plaintiff attempts to show that he was treated differently than the John Doe officers by intimating that "defendants" did not question the John Doe officers about the altercation between plaintiff and Mazzilli. (*Id.* ¶ 44.) Plaintiff does not make any allegations about what the John Doe defendants were or were not told to say about the incident. Nor does plaintiff allege that the officers did *not* face disciplinary charges or changed "status" as a result of the incident between themselves and the cab driver. Indeed, plaintiff specifically alleges that he was told that if he did not lie, "some NYPD officers would get disciplined." (*Id.* ¶ 35.)

The Amended Complaint's allegations provide the distinct impression that plaintiff faced the alleged adverse action due to his purported failure to lie to protect other NYPD officers—not based upon his race. Even assuming the truth of those allegations, as the Court must on this motion, it does not provide any basis for the Title VII, sections 1983 and 1981, and NYSHRL claims asserted here. *See Iqbal,* 129 S.Ct. at 1949. In other words, the Amended Complaint fails to advance a plausible claim for disparate treatment under those statutes. Accordingly, those claims are dismissed.

### B. NYCHRL

**\*6** Although employment discrimination claims under the NYCHRL are "to be evaluated separately from counterpart claims brought under Title VII," *Kolenovic v. ABM Indus. Inc.,* 361 Fed. Appx. 246, 248 (2d Cir.2010), to effectuate

the statute's "uniquely broad and remedial" purpose, *Kaur v. New York City Health & Hosp. Corp.,* 688 F.Supp.2d 317, 339 (S.D.N.Y.2010) (quotation marks omitted); *see also Price v. Cushman & Wakefield, Inc.,* 808 F.Supp.2d 670, 688 (S.D.N.Y.2011) ("Claims under the City HRL must be given an independent liberal construction." (quotation marks, citation, and alterations omitted)), claims of employment discrimination under the NYCHRL likewise are subject to the *McDonnell–Douglas* burden-shifting analysis, *see Spiegel,* 604 F.3d at 80; *Pilgram v. McGraw–Hill Cos.,* 599 F.Supp.2d 462, 468 (S.D.N.Y.2009) ("[T]he standard for all Title VII, section 1981, [NYSHRL] and [NY]CHRL employment discrimination claims is the same."); *Fowler v. Scores Holding Co., Inc.,* 677 F.Supp.2d 673, 682 (S.D.N.Y.2009). "[A]t a minimum, employment discrimination claims [under NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal* ....*" Goodman v. Port Auth. of* New York & New Jersey, No. 10 Civ. 8352, 2012 WL 664531, at *16 (S.D.N.Y. Feb.29, 2012).

Plaintiff's NYCHRL employment discrimination claim fails under both *McDonnell–Douglas* and *Twombly/Iqbal* for the same reason as its federal and state counterparts–*i.e.,* the absence of allegations connecting the purported adverse employment actions to plaintiff's race. As discussed in connection with the Court's analysis of plaintiff's employment discrimination claims under federal and state law, there is no plausible inference that plaintiff's placement on modified status or Level II disciplinary monitoring resulted from his race. Rather, plaintiff's own allegations state that plaintiff was subjected to adverse actions because he failed to lie to protect other NYPD officers, as instructed by defendant Harrington. (*See, e.g.,* Am. Compl. ¶¶ 31, 35, 36, 38.) Accordingly, even under the NYCHRL's liberal construction, plaintiff's employment discrimination claim under NYCHRL is dismissed.

C. RACE DISCRIMINATION UNDER 42 U.S.C. § 1981 Section 1981 of chapter 42 of the United States Code provides,

> All persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a).

Claims of employment discrimination under section 1981 are analyzed under the same framework as discrimination claims under Title VII and section 1983. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004); *see also Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000) (§ 1981); *Jermott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996) ( § 1983).

**\*7** Where a defendant is a state actor, claims may only lie under 42 U.S.C. § 1983 for violations of rights under 42 U.S.C. § 1981. *Jett v.* Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Gladwin v. Possi,* 403 Fed. Appx. 603, 604–05 (2d Cir.2010) (the plaintiff's " § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983" (citing *Jett,* 491 U.S. at 735)).

Here, to the extent that plaintiff seeks to assert claims against defendants Harrington and Mazzilli in their official capacity or against the City, those claims are analyzed under section 1983 and are dismissed for the reasons set forth in Part II.A., *supra.* To the extent that plaintiff seeks to bring claims against them under section 1981, the claims are dismissed against the City and against Harrington and Mazzilli in their official capacity. *Bermudez,* 783 F.Supp.2d at 576.

II. HOSTILE WORK ENVIRONMENT

A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL
Under federal and New York state law, a hostile work environment claim is sufficiently plead where the complaint alleges that the plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation marks and citations omitted); *see also Patterson,* 375 F.3d at 227; *Kumaga v.* New York City Sch. Constr. Auth., 27 Misc.3d 1207(a), 2010 WL 1444513, at *8 (N.Y.Sup.Ct. Apr.2, 2010) (N.Y.SHRL). In looking at the totality of the circumsirancers, a court may also consider certain factors, among others, to determine whether

2012 WL 1506954

a work environment is "hostile"—*e.g.,* the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's "work performance." *Harris,* 510 U.S. at 23.

The question of "hostility" of a work environment is both subjective—*i.e.,* did the plaintiff find it hostile-and objective—*i.e.,* would a reasonable person have found it hostile. *Harris,* 510 U.S. at 21–22. The "hostility," however, must be borne of "animus towards [the plaintiff] as a result of [his] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper,* 281 F.Supp.2d 689, 704 (S.D.N.Y.2003). Severity is a hallmark of a hostile work environment claim. Such claims "are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonitrol Mgmt. Corp.,* No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006).

The rubric just described applies similarly to hostile work environment claims under 42 U.S.C. §§ 1981 and 1983, and the NYSHRL. *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 § 2d Cir.2006); *Ferraro v. Kellwood Co.,* 440 F.3d 96, 99 (2d Cir.2006).

  **\*8** As with plaintiff's employment discrimination claims, the hostile work environment claims under Title VII, 42 U.S.C. § 1983, and NYSHRL fail because there are no allegations that any animus subjective or objective stemmed from plaintiff's "membership in a protected class." Merely using the words "Hispanic" in reference to himself and "white" in reference to the John Doe police officers in his Amended Complaint does not create a plausible inference of hostility based upon race or national origin. *See Bermudez,* 783 F.Supp.2d at 581. There is simply nothing alleged to demonstrate that race factored into defendants' alleged actions. Thus, the hostile work environment claims under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL are dismissed.

  **B. NYCHRL**
The NYCHRL's "liberal construction" lowers the standard for a hostile work environment claim brought under its auspices. *Bermudez,* 783 F.Supp.2d at 579; *see also Farrugia v. N.* Shore Univ. Hosp., 13 Misc.3d 740, 820 N.Y.S.2d 718, 724 (N.Y.Sup.Ct.2006) ("The New York City Human Rights Law was intended to be more protective than the state and federal counterpart."); *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir.2009) ("claims under the [NYCHRL] must be given an independent liberal

construction" (quotation marks omitted)). A "hostile work environment" for purposes of the NYCHRL is one where there is "differential treatment" period. *Williams v. New York City Housing Auth.,* 61 A.D.3d 62, 77, 872 N.Y.S.2d 27 (1st Dep't 2009). In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class. *Id.* Questions of "severity" or "pervasiveness" go to damages only-not to liability. *Id.* at 76, 872 N.Y.S.2d 27.

As discussed above, plaintiff fails to allege that he was treated differently from the John Doe police officers. There are, as mentioned, no allegations that the John Doe police officers did not face disciplinary charges or were not placed on modified status. The Amended Complaint states in conclusory fashion only that plaintiff believed that the John Doe police officers were not questioned in connection with the altercation. (Am.Compl.¶ 44.) But there are no allegations that any questioning—or lack thereof—was based on race. Accordingly, the Amended Complaint fails to state a hostile work environment claim under the NYCHRL.

## III. RETALIATION

  A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL
Plaintiff also asserts that defendants retaliated against him based upon his participation in a protected activity—*i.e.,* speaking the truth—in violation of Title VII, 42 U.S.C. §§ 1981 & 1983, [6] and the NYSHRL. Claims of retaliation "under those" statutes are generally analyzed in the same way, with the same standards of liability. *See Schiano,* 445 F.3d at 608 (Title VII & NYSHRL); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107 (2d Cir.2004) (§ 1983); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38 (2d Cir.1984) (§ 1981).

[6]   Because plaintiff has abandoned his First Amendment claim, the claim for retaliation under section 1983 may not lie concurrently with one under Title VII. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993).

  **\*9** A plaintiff adequately states a claim for deprivation of equal protection rights stemming from retaliation for complaining about discrimination pursuant section 1983 where the complaint alleges the plaintiff suffered a "materially adverse employment action," which was "causally connected" to the plaintiff's engaging in a

"protected activity." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007); *Bermudez,* 783 F.Supp.2d at 575. A plaintiff engages in a protected activity when he "oppose [s] any practice made an unlawful employment practice by Title VII, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Bermudez,* 783 F.Supp.2d at 575 (quotation marks and alterations omitted).

An adverse employment action is one that materially and adversely alters the terms and conditions of employment. *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 446 (23 Cir.1999). A "materially adverse change is, for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.*

Here, plaintiff argues in his opposition to the motion to dismiss that the protected activity in which he engaged was "complaining to the uniformed officers at the scene and at 19th Precinct regarding the actions of Harrington, Mazzilli, and P.O. John Does regarding his unequal and discriminatory treatment on account of his race, national origin...." (Mem. Of Law in Opp'n to Defs.' Mot. To Dismiss the Am. Compl. (Dkt. No. 21) at 18.) However, no such allegation appears in the Amended Complaint. It is axiomatic that a complaint cannot be amended by assertions made in an opposition brief. *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F.Supp.2d 371, 432 (S.D.N.Y.2001). Thus, plaintiff's assertion in his opposition cannot form the basis for any allegations of protected activity. And without any alleged protected activity, the claims under Title VII, 42 U.S.C §§ 1981 and 1983, and the NYSHRL must fail. *See Patane,* 508 F.3d at 112.

The only protected activity alleged in the complaint is plaintiff's filing of charges with the EEOC. (*See* Am. Compl. ¶ 6.)[7] That filing occurred on January 22, 2010.(*Id.*) The closest in time "adverse action" taken against plaintiff–*i.e.,* the January 8, 2010 placement of plaintiff on Level II discipline monitoring–occurred *prior* to the EEOC filing, though. (*Id.* ¶ 39.)[8] The Level II discipline monitoring thus cannot be "causally connected" to the filing of the EEOC charges such that there is a basis for a retaliation claim. *Cf. Butts v. New York City Dep't of Housing Preservation & Dev.,* 307 Fed. Appx. 596, 599 (2d Cir.2009) ("The plaintiff can establish the causal connection indirectly by showing that the protected

activity was closely *followed* by discrimination ..." (emphasis added)).

[7]     Plaintiff's refusal to "lie" to "protect" other NYPD officers does not constitute a "protected activity" for purposes of a retaliation claim. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) ( "The term 'protected activity' refers to actions taken to protest or oppose statutorily prohibited discrimination.").

[8]     Plaintiff asserts in wholly conclusory fashion that "[d]efendants continued to retaliate against [him] up until his retirement in October 2011...." (Am.Compl.¶ 45.) That allegation does not come close to meeting the standard set forth in *Twombly* or *Iqbal* and thus, the Court will not credit it on this motion.

***10** Accordingly, without any allegations in the Amended Complaint supporting a protected activity and an adverse employment action, plaintiff's retaliation claims fail under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL. *See Desir v. City of* New York, 453 Fed. Appx. 30, 35 (2d Cir.2011).

**B. NYCHRL**

As with discrimination and hostile work environment claims under the NYCHRL, claims of retaliation under the NYCHRL must be evaluated separately from its federal and state counterparts to effectuate the statute's "uniquely broad and remedial purpose." *See Loeffler,* 582 F.3d at 278; *accord Melie v. EVCI/TCI College Admin.,* 374 Fed. Appx. 150, 153–54 (2d Cir.2010). The same analysis employed for retaliation claims under Title VII and NYSHRL applies to retaliation claims under the NYCHRL. *Anderson v. Davis Polk & Wardwell LLP,* —– F.Supp.2d ——, 2012 WL 734120, at *13 (S.D.N.Y. Mar.6, 2012). Even though the standard for a NYCHRL retaliation claim is "broader" or "lower" than the same claim under its federal or state counterparts, plaintiff's failure to establish a causal connection between any protected activity and an adverse employment action likewise dooms plaintiff's retaliation claim under the NYCHRL. *See Dixon v. Int'l Federation of Accountants,* 416 Fed. Appx. 107, 110 n. 1 (S.D.N.Y.2011).

**IV. EXCESSIVE FORCE IN VIOLATION OF** 42 U.S.C. § 1983

Plaintiff asserts that defendant Mazzilli used excessive force against him in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. A claim for excessive force in violation of the Fourth Amendment is analyzed with objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Stephenson v. Doe,* 332 F.3d 68, 77 (2d Cir.2003). That standard

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham,* 490 U.S. at 396. "Not every push or shove" amounts to a Fourth Amendment violation. *Id.* Indeed, a "de minimus use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101 105 (2d Cir.2005). Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim. *Wims v. N.Y.C. Police Dep't,* No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). Such injury need not be severe, however. *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff alleges that Officer Mazzilli pushed his wrist into his pocket, punched him in the chest, threw him to the ground face first, forcibly handcuffed his left arm, and attempted to manipulate his right arm into handcuffs as well. (Am.Compl.¶¶ 25–26.) It is further alleged that after plaintiff informed defendant Mazzilli of a prior surgery which rendered plaintiff's right arm unable to be fully brought behind his back, Mazzilli used a second set of handcuffs "so that [plaintiff's] right arm would not have to be pulled back." (*Id.* ¶ 27.)

**\*11** As an initial matter, the handcuffing itself cannot support plaintiff's excessive force claim. *Wims,* 2011 WL 2946369, at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."). More importantly, plaintiff does not allege "any specific or identifiable physical or mental harm beyond [ ] conclusory assertion[s] which, standing alone, [are] insufficient under

*Twombly* and *Iqbal.*" *Id.* (*See* Am. Compl. ¶¶ 32 (plaintiff informed Sergeants Mulvey and Cosmo that he "was injured and wanted medical attention"), 33 ("Plaintiff chose to wait until after being interrogated to seek medical attention"), 46 (plaintiff "suffered emotional and physical damages" "[a]s a result of these incidents").) That failure dooms plaintiff's excessive force claim. Accordingly, it must be dismissed. [9]

[9]       In *Wims,* the court dismissed the excessive force claim despite the "liberal construction" accorded to complaints filed by *pro se* plaintiffs. 2011 WL 2946369, at * 1, 5. The failure to allege a specific and identifiable injury is more egregious here where plaintiff is represented by counsel, where plaintiff was "on notice" of the deficiency related to the failure to allege a specific and identifiable injury (*see* Mem. Of Law in Support of Defs. Mot. To Dismiss Compl. (Dkt. No. 13) at 22), and where the complaint has been amended once at plaintiff's own election subsequent to that "notice."

## V. *MONELL* CLAIM

To state a claim for municipal liability under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff must allege that " 'policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation.' " *Missel v. Ctny. of Monroe,* 351 Fed. Appx. 543, 545 (2d Cir.2009) (quoting *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006)). A *Monell* claim can survive a motion to dismiss where the plaintiff

> make[s] factual allegations that support a plausible inference that the constitutional violation took place pursuant to either a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.

*Id.*

Plaintiff has failed to set forth factual allegations that would support a plausible inference that the City's "policies" or "customs" caused Harrington's—or even Mazzilli's-alleged

violations of plaintiff's rights. The complaint is similarly devoid of allegations regarding any policy promulgated by the City requiring NYPD police officers to "lie" to "protect" other NYPD officers when they commit constitutional or NYPD-regulations violations.

Plaintiff alleges that the "City of New York failed to train its police officers as to display a deliberate indifference to the constitutional rights [of] those within the City of New York." (Am.Compl.¶ 71.) But that allegation standing alone does not create a plausible inference that any of Harrington's and Mazzilli's complained-of violations-regardless of whether those violations relate to plaintiff's claim for disparate treatment, hostile work environment, or retaliation were made pursuant to any City-mandated policy. That allegation is merely a recitation of the element of the cause of action-something the Court cannot credit on this motion. *Iqbal,* 129 S.Ct. at 1949. Accordingly, the *Monell* claim must be dismissed.

CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is GRANTED.

**\*12**  Because plaintiff elected to amend the complaint in response to defendants' motion to dismiss the original complaint where nearly identical arguments to those raised on this motion, having the benefit of the Court's explicit admonition that any pleading deficiencies would be deemed with prejudice on a subsequent motion to dismiss, plaintiff's request for leave to amend is DENIED. Accordingly, the dismissal of the Amended Complaint is with prejudice.

The Clerk of Court is directed to terminate any pending motions and terminate this action. Judgment is to be entered for defendants the City of New York, Michael Harrington, and Michael Mazzilli.

SO ORDERED:

IN RE ADULT FILM COPYRIGHT INFRINGEMENT LITIGATION

This Document Relates to:

11 Civ. 7564(KBF)

11 Civ. 7999(KBF)

11 Civ. 8172(KBF)

11 Civ. 9550(KBF)

11 Civ. 9618(KBF)

11 Civ. 9688(KBF)

11 Civ. 9689(KBF)

11 Civ. 9703(KBF)

11 Civ. 9705(KBF)

11 Civ. 9706(KBF)

11 Civ. 0129(KBF)

11 Civ. 1077(KBF)

11 Civ. 1169(KBF)

Master Case No. 11 Civ. 7564

*MEMORANDUM & ORDER*

On March 13, 2012, this Court issued an order stating, in part, that plaintiffs shall identify Doe defendants, who have requested to proceed anonymously, by IP address and Doe number only—*i.e.,* plaintiffs must not reveal the identity of these Doe defendants in public filings. On April 18, 2012, in contravention of this order, plaintiff in Member Case No. 11 Civ. 9706 named a Doe defendant-who had submitted a request to proceed anonymously that was received by plaintiff-in a public filing. [1]  This document has been removed by the Court.

[1]     Counsel shall broadly construe filings by *pro se* plaintiffs and err on the side of interpreting filings as requests to proceed anonymously when there is any indication that they might be such requests.

Should counsel for plaintiffs again disobey a Court order in this consolidated action, plaintiffs may be subject to sanctions including dismissal of their actions pursuant to Federal Rule of Civil Procedure 41(b).

Plaintiff is directed to mail this Order to the Doe defendant named in plaintiff's filing.

**Acosta v. City of New York, Not Reported in F.Supp.2d (2012)**

2012 WL 1506954

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1506954

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Alvarez v. County of Orange, N.Y.,   S.D.N.Y.,   March 25, 2015

2011 WL 2946369
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michael WIMS, Plaintiff,

v.

The NEW YORK CITY POLICE
DEPARTMENT, 52ND Precinct Bronx Narcotics
Division, Detective D. Roberts, Sergeant E.
Beckel, Sergeant A. Capato, Defendants.

No. 10 Civ. 6128(PKC).
|
July 20, 2011.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Michael Wims, proceeding *pro se,* brings this action against the New York City Police Department ("NYPD"), the 52nd Precinct Bronx Narcotics Division ("PBND"), Detective David Roberts, Sergeant E. Beckel and Sergeant A, Capato pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, excessive force and violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, arising out of his arrest on December 10, 2009. Defendants have moved to dismiss the Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss is granted.

BACKGROUND

Plaintiff filed the Complaint on August 17, 2010. (Docket # 1.) He alleges that at approximately 10:00 a.m. on December 10, 2009, he was leaving his residence at 1880 Valentine Avenue Bronx, New York, when he was confronted by several detectives. (Compl.¶ 7.) According to the Complaint, the detectives physically and mentally "brutalized" him, "antagonize[d]" him and "[taunted] [him] with firearms and harsh yet vulgar language and racial slurs." (*Id.*) Plaintiff asserts that he was not shown a search warrant. (Compl.¶ 7.) Plaintiff also claims that the detectives "physical[ly] brutalized [him] through harsh and racially motivated [g]estures and comments." (*Id.* at p. 4.) Lastly, plaintiff asserts that the detectives did not read him his *Miranda* rights. (*Id.* at 3.)

The detectives searched plaintiff's apartment and found in the apartment two loaded firearms and a controlled substance. (*See* Francolla Decl., "B.") Plaintiff was subsequently arrested and charged with Criminal Possession of a Weapon in the Second Degree and Criminal Possession in the Fifth Degree With Intent to Sell. (*Id.*) On December 21, 2009, plaintiff entered a plea of guilty to Attempted Criminal Possession of a Weapon in the Second Degree. (*See* Francolla Decl., "C.")

DISCUSSION

I. *Motion to Dismiss Pursuant to Rule 12(b)(6)*
A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam). A plaintiff's *pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

Rule 8(a) (2), Fed.R.Civ.P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P ., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). " ' Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

**\*2** The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal

conclusion couched as a factual allegation. *Id.* Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See Int'l Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 72 (2d Cir.1995). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including arrest reports, criminal complaints, indictments and criminal disposition data. *Vasquez v. City of New York,* 99 Civ. 4606, 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (citations omitted); *see Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

Defendants move to dismiss plaintiff's claims under Rule 12(b) (6), arguing that plaintiff's guilty plea precludes his claims for false arrest and malicious prosecution, that he has failed to state a claim for excessive force, that two of the defendants are non-suable entities and that the defendant officers are entitled to qualified immunity. (Def.Mem.1–2.)

In opposition to defendant's motion, plaintiff has not submitted any legal arguments, but instead has set forth additional facts not alleged in the Complaint.[1] A court may not consider the contents of these documents without converting defendants' motion to dismiss into one for summary judgment. *See, e.g., Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) ("a district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal quotation marks, citations and alteration omitted). However, even if this Court were to generously read the facts set forth in plaintiff's opposition papers as being raised in his Complaint, plaintiff has still failed to state a claim upon which relief can be granted.

[1]    Local Rule 7.1 requires "all motions and all oppositions thereto ... [to] be supported by memorandum of law.... Failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." Here, the plaintiff did not submit a memorandum of law in opposition to defendants' motion to dismiss; rather plaintiff submitted a statement of facts. While the Court notes the

deficiency in the form of plaintiff's opposition, this Court has "broad discretion to determine whether to overlook a party's failure to comply with local rules ... and [n]othing in ... the Civil Rules of the Southern District requires a court to punish a party for noncompliance." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 108 n. 2 (2d Cir.2006) (internal quotation marks omitted) (citations omitted).

## II. *Plaintiff's Section 1983 Claims*

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law. 42 U.S.C. § 1983; *see Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Here, plaintiff's claims are predicated on allegations that he was falsely arrested, maliciously prosecuted, subjected to excessive force and deprived of rights, privileges and immunities guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments. The Court will examine each of these claims in turn.

### A. *False Arrest*

**\*3** Plaintiff's section 1983 claim for unconstitutional false arrest fails because plaintiff pled guilty to one of the crimes for which he was arrested.[2] *Cameron v. Fogarty,* 806 F.2d 380, 386–87 (2d Cir.1986) (holding that "a person who has been convicted of the crime for which he was arrested is barred from recovering" under section 1983 for a claim for false imprisonment or malicious prosecution, "sometimes colloquially called an action for 'false arrest' "). "Since a guilty plea is the equivalent of a conviction, a guilty plea will also bar a § 1983 false arrest claim." *Hernandez v. City of New York,* No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004).

[2]    The state prosecution of an individual is a matter of public record, of which a court may take judicial notice. *Shmueli v. City of New York,* 424 F.3d 231, 233 (2d Cir.2005). This Court takes judicial notice of plaintiff's conviction by guilty plea.

Here, plaintiff was arrested for, and initially charged with, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Controlled Substance in the Fifth Degree With Intent to Sell. (*See* Francolla Decl., Exhibit "B."). He pled guilty to Attempted Criminal Possession of a Weapon in the Second Degree, in satisfaction of all

charges against him. That plaintiff pled guilty to only one of the two initial charges—and to a lesser charged offense—nevertheless precludes recovery under section 1983 for false arrest. *See, e.g., Allison v. Farrell,* No. 97 Civ. 2247, 2002 WL 88380, at *4 (S.D.N.Y. Jan. 22, 2002) ("[I]t is of no moment that [plaintiff] pled guilty to a lesser charge arising out of the events that took place on the day of his arrest.") (citations omitted); *Papeskov v. Brown,* No. 97 Civ. 5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) ("[A] plea of guilty, even to a charge lesser than that for which the plaintiff was arrested, bars a § 1983 action.") (citations omitted).

Plaintiff has not shown that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). Under *Heck,* a plaintiff is barred from recovering damages under section 1983 if the award would imply the invalidity of plaintiff's conviction. *See Younger v. City of New York,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (dismissing plaintiff's claims for false arrest, false imprisonment and malicious prosecution because, if successful, they would render plaintiff's conviction invalid). Thus, his "guilty plea establishes that there was probable cause for his arrest" and "stands as a complete bar to any claims of false arrest ... and malicious prosecution under Section 1983." *Smith v. P.O. Canine Dog Chas,* No. 036240 KMW DF, 2004 WL 2202564, at *6 (S.D.N.Y. Sept. 28, 2004).

Accordingly, defendants' motion to dismiss plaintiff's claim for false arrest is granted.

### B. *Malicious Prosecution*

Plaintiff's guilty plea negates a required element of his malicious prosecution claim: a showing that the underlying proceeding terminated in his favor. A claim for malicious prosecution brought under section 1983 to vindicate plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable seizure is "substantially the same" as a claim for malicious prosecution under state law. *See Heck,* 512 U.S. at 486–87; *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). To state a claim for malicious prosecution under New York law plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 136 (internal

quotation marks omitted). "Favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action." *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). When a charge is dismissed as part of a plea bargain, the dropped charge is not a favorable termination sufficient to support a malicious prosecution claim. *See Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999) ("[I]f the outcome was the result of a compromise to which the accused agreed ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." (internal quotation marks and citation omitted)). Therefore, plaintiff's guilty plea for Attempted Criminal Possession of a Weapon in the Second Degree in satisfaction of all charges is not a favorable termination on the charge dismissed as part of the plea deal.

**\*4** Based on plaintiff's conviction and failure to show a favorable termination, defendants' motion to dismiss plaintiff's claim for malicious prosecution is granted.

### C. *Excessive Force*

A claim that excessive force was used "in the course of an arrest, investigatory stop or other 'seizure' of a free citizen [is] most properly characterized as invoking the protections of the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 387 (1989). Accordingly, plaintiff's excessive force claim will be analyzed under Fourth Amendment principles.[3]

[3]    In addition to listing a Fourth Amendment violation in his complaint, plaintiff also asserts that the defendants violated the prohibition against the infliction of cruel and "inhumane" punishment, which implicates the Eighth Amendment. (Compl.¶ 5.) Reading the complaint liberally and because he was not then incarcerated pursuant to a judgment of conviction, plaintiff's claim of use of excessive force during his arrest will be deemed to have been asserted under the Fourth and Fourteenth Amendments.

When excessive force is alleged, a court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight." *Id.* at 396. Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

A "de minimis use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993); *see also Rincon v. City of New York,* No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (rejecting claim of excessive force where plaintiff alleged that the officer threw her to the ground, causing her stitches to open and was treated for a swollen leg and wrist, because the force was de minimis). Further, "it is clear that some type of injury is required to prevail on a § 1983 excessive force claim." *Castro v.. County of Nassau,* 739 F.Supp.2d 153, 177 n. 16 (E.D.N.Y.2010). However, an individual does not need to sustain a severe injury to maintain a claim. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff states in his Complaint that he was "[taunted] [ ] with firearms and harsh yet vulgar language and racial slurs." (Compl.¶ 7.) He also asserts the "officers physical[ly] brutalized me through harsh and racially motivated [g]estures and comments." (Compl. p. 4.) No other facts showing injury are set forth in the Complaint. In plaintiff's Affirmation in Opposition to Motion to Dismiss, he claims the officers surrounded his vehicle with "weapons drawn ... [and] were very loud and using profanity." (Docket # 12.) He also asserts he was pulled out of his car and "thrown flat on [his] face unto the filthy ground." (*Id.*)

**\*5** These allegations do not rise to the level of force that is more than de minimis. Merely placing tight handcuffs on a suspect is not enough for an excessive force claim. *See Grant v. City of New York,* 500 F.Supp.2d 211, 217 (S.D.N.Y.2007) ("Frequently, a reasonable arrest involves handcuffing the suspect and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."). Similarly, the verbal abuse, on its own, is not actionable. *See Miro v. City of New York,* No. 95 Civ. 4331, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("[A]n arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim."). Further, it is not excessive for the officers

to draw their guns during the arrest. *See Bolden v. Vill. Of Monticello,* 344 F.Supp.2d 407, 419 (S.D.N.Y 2004) ("[In] executing a search warrant for drugs ... it is reasonable for police officers to enter a residence with guns draw to secure the area and prevent harm to themselves or others.") (citing *Speights v. City of New York,* No. 98 Civ. 4635(NG), 2001 WL 797982 (E.D.N.Y. June 18, 2001)). There is no assertion that having been "thrown flat on [his] face unto the filthy ground" resulted in any specific or identifiable physical or mental injury and harm beyond a conclusory assertion which, standing alone, is insufficient under *Twombly* and *Iqbal. See Castro,* 739 F.Supp.2d at 177.

Therefore, defendants' motion to dismiss plaintiff's claim for excessive force is granted.

### D. *Deprivation of Federal Civil Rights*

Plaintiff also alleges that the defendants violated his Fifth and Sixth Amendment Rights. (Compl.¶ 5.) The Court will examine these remaining claims in turn.

#### 1. *Fifth Amendment*

Plaintiff claims that his Due Process rights were violated because he was not read his *Miranda* rights, and he did not have an attorney during custodial interrogation. The Supreme Court has repeatedly held that *Miranda* warnings and right to counsel are not themselves required by the Constitution but are rather procedural safeguards to insure that a suspect's Fifth Amendment rights are not violated. *See, e.g., J.D.B. v. North Carolina,* 131 S.Ct. 2394, 2401 (2011). The appropriate remedy for the failure to read a suspect his *Miranda* warnings is the exclusion of any self-incriminating evidence, not liability under section 1983. *Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995). Thus, the officers' failure to inform plaintiff of his rights under *Miranda* does not, without more, result in section 1983 liability.

#### II. *Sixth Amendment*

Plaintiff claims that he was subjected to "cruel and inhumane" punishment because the detectives' conduct "was in conflict of departmental procedures." (Compl. p. 4.) Although plaintiff lists this as a Sixth Amendment violation, it appears he intended to assert a violation of the Eighth Amendment. The Sixth Amendment right to counsel would not attach until the Government commits itself to prosecution by initiating adversary judicial proceedings, *Moran v. Burbine,* 475 U.S.

412, 321 (1986). However, plaintiff's complaint alleges only a lack of representation during his initial interrogation before arraignment. (Compl. p. 3.) Similarly, the Eighth Amendment does not attach until after conviction and sentencing, as "it was designed to protect those convicted of crimes." *Ingraham v. Wright,* 430 U.S. 651, 664 (1977). Because these claims concern actions prior to his conviction, plaintiff's Eighth Amendment and Sixth Amendment claims are dismissed.

### III. *The NYPD and PBND Are Not Suable Entities*

**\*6** The NYPD and PBND move to dismiss on the grounds that neither is a suable entity. An entity's capacity to be sued is determined by state law. Fed.R.Civ.P. 17(b). Chapter 17, section 396 of the New York City Charter provides that "all actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law." As agencies of the City of New York, therefore, the NYPD and the PBND are non-suable entities. *See Ximines v. George Wingate High* Sch., 516 F.3d 156, 160 (2d Cir.2008) ( "Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); *East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992) (finding that Police Department, as an agency of the City, and Property Clerk, as a subdivision of the Police Department, are not suable entities).

### IV. *Municipal Liability*

Construing the claims against the NYPD and PBND as having been asserted against the City of New York under 42 U.S.C. § 1983, plaintiff has still failed to state a claim for municipal liability. *"Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Because plaintiffs potential claims against the City of New York depend upon the existence of an independent constitutional violation and as this Court has found that none have been stated, plaintiff's *Monell* claims will be dismissed.

### CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are GRANTED. The Clerk of the Court shall enter judgment in favor of the defendants.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 2946369

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.