UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUINTIN L. WILSON,

                                        Plaintiff,

                                                            3:23-cv-00263-DNH-TWD
v.

SGT. DANIEL FLANDERS et al.,
                                        Defendants.
_____

APPEARANCES:

QUINTIN L. WILSON
  *Plaintiff, pro se*
225323
Broome County Correctional Facility
P.O. Box 2047
Binghamton, NY 13902-2047

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.      **INTRODUCTION**

        On February 28, 2023, Quinton L. Wilson ("Plaintiff") commenced this *pro se* action

against Sgt. Daniel Flanders, Judge Dooley, Judge Joseph F. Cawley, Jr., Alexander Czbeniak,

and Attorney Christopher D. Grace (collectively "Defendants") by filing a form-complaint

pursuant 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis* ("IFP").  (Dkt.

Nos. 1, 4.)  The complaint tenuously alleged Judge Dooley, Judge Cawley, Czebiniak, and Grace

violated his due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth

Amendment rights.  (Dkt. No. 1 at 1-2; Dkt. No. 1-5 at 2-3.)  Plaintiff also loosely alleged a

Fourth Amendment excessive force claim against Sgt. Flanders.  (Dkt. No. 1 at 1; Dkt. No. 1-5 at

2.)

By Order and Report-Recommendation issued May 4, 2023, (the "R&R"), the undersigned granted Plaintiff's IFP application for purposes of initial review,[1] reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), and recommended Plaintiff's claims against Judge Dooley, Judge Cawley, and Czebiniak be dismissed with prejudice and without leave to amend and the remaining claims against Sgt. Flanders and Grace be dismissed with leave to amend.  (Dkt. No. 10.)  On May 17, 2023, the Hon. David N. Hurd, United States District Court Judge, adopted the R&R in its entirety.  (Dkt. No. 12.)

On June 1, 2023, Plaintiff filed an amended complaint reasserting claims against Sgt. Flanders and Grace.  (Dkt. No. 13.)  For the reasons discussed below, the undersigned recommends the Court dismiss Plaintiff's Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983 for unreasonable search and seizure, excessive force, false arrest, and false imprisonment against Sgt. Flanders with leave to amend.  (*See* Dkt. No. 13.)  The undersigned further recommends that the Court dismiss Plaintiff's claims against Grace without leave to amend.  *See id.*

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    Legal Standard

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in

---

[1]  Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP.  *See* 28 U.S.C. § 1915(b)(1).  Additionally, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Thus, it is the Court's responsibility to determine whether Plaintiff may properly maintain a complaint before permitting it to proceed further.

### B.    Summary of the Amended Complaint

Plaintiff lists the following claims against Sgt. Flanders: "4th Amendment unreasonable searches and seizures," "Use of Excessive Force," and "Illegal Detainment."[2]  (Dkt. No. 13 at 2.) He alleges on June 1, 2021, Sgt. Flanders and another officer arrived at Plaintiff's house in Binghamton, NY.  *Id.* at 2.  Plaintiff asked if they had a warrant to which they responded "no." *Id.*  Plaintiff asked them to leave and get a warrant.  *Id.*  When he stood up to go into his house, Sgt. Flanders and his partner at the time "assaulted" Plaintiff.  *Id.*  Plaintiff claims this use of force "caused ankle to swell, and bruised wrist."  *Id.*  Further, when Plaintiff arrived at the police station, he "asked to see Probable Cause."  *Id.*  He was told "we don't have it the District Attorney has it."  *Id.*  He was released 90 days later on a N.Y. Crim. Proc. Law § 190.80 motion. *See* N.Y. Crim. Proc. Law § 190.80 (McKinney).[3]  *Id.*

---

[2]  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3]  N.Y. Crim. Proc. Law § 190.80 provides "Upon application of a defendant who on the basis of a felony complaint has been held by a local criminal court for the action of a grand jury, and who, at the time of such order or subsequent thereto, has been committed to the custody of the sheriff pending such grand jury action, and who has been confined in such custody for a period of more than forty-five days, . . . without the occurrence of any grand jury action or disposition pursuant to subdivision one, two or three of section 190.60, the superior court by which such grand jury was or is to be impaneled must release him on his own recognizance."

Plaintiff lists the following claims against Christopher D. Grace: "Ineffectiveness of Counsel," "Right to Due Process," "Speedy Trial," and "Bail – Punishment." *Id.* Plaintiff alleges since November 22, 2021, Grace has not represented Plaintiff "to the best of his ability." *Id.* Plaintiff has asked Grace to "File motions on [his] behalf VIA Letters, Text messages, and phone calls but all he would tell [Plaintiff] is that these things don't pertain to [Plaintiff]." *Id.* at 2-3. Plaintiff claims he tried to fire Grace but Judge Cawley "let him stay." *Id.* at 3. Plaintiff alleges he asked Grace to get him lower bail "but once again he refused." *Id.* Plaintiff asserts his speedy trial rights were violated while he awaited trial in Broome County Jail for over a year. *Id.* He brought up this concern to Grace but Plaintiff "was ignored." *Id.* Plaintiff's trial took place in March 2023. *Id.*

Previously, Grace had told Plaintiff about a plea deal he was offered, but Plaintiff "declined." *Id.* However, according to Plaintiff, the plea deal "read for the record" was not the same plea deal Grace had conveyed to Plaintiff. *Id.* Plaintiff "was scared" the District Attorney "was still gonna try to give [him] the deal that was put on the record." *Id.* However, he "was never offered another plea and was Forced to trial." *Id.*

At Plaintiff's trial, "There was New Evidence that was told by a witness to the District Attorney who told Judge Cawley and Mr. Grace but he told [Plaintiff] and Failed to put it on the record and this peice of information could've made the Jury's decisions different From what it was." *Id.* Plaintiff also asked Mr. Grace to "ask certain questions" but Mr. Grace refused because "that would be badgering the victim." *Id.* Plaintiff claims "these are things that

could've helped clear [his] name." *Id.* Plaintiff does not request any specific relief in his amended complaint.[4] (*See* Dkt. No. 13.)

### C.    Analysis

Plaintiff brings this action pursuant to § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

To state a cognizable claim under § 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

### 1.    Claims Against Attorney Christopher D. Grace

As previously discussed on review of the original complaint, "private individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful that conduct may be." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotations and citations omitted). A conclusory allegation that a private individual acted in concert with a state

---

[4] In his original complaint, Plaintiff requested $1,000,000 in monetary damages. (Dkt. No. 1 at 2; Dkt. No. 1-1 at 1.)

actor does not constitute a plausible allegation that the private individual acted under color of state law.  *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).  Moreover, attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983.  *See, e.g.*, *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *see also* Dkt. No. 10 at 8-10.

Here, the amended complaint has not cured the deficiencies identified in the R&R.  As such, Plaintiff's Section 1983 claims against Grace are inadequately pled because he has failed to allege Grace acted under color of state law.[5]  *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84.  The undersigned accordingly recommends dismissing all of Plaintiff's Section 1983 claims against Grace without leave to amend on the grounds that they are inadequately pled and frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B), 1915A(b)(1); *see also Livingston*, 141 F.3d at 437; *Walker v. Rivera*, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022), *report and recommendation adopted*, No. 1:22-CV-560, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

### 2.    Claims Against Sgt. Flanders

#### i.    Fourth Amendment Excessive Force

---

[5]  Grace is a private individual who represented Plaintiff during state criminal proceedings.

"The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects . . . . To establish a Fourth Amendment excessive force claim, Plaintiff must show that the force used by the officer was 'objectively unreasonable.'" *Correa v. McLeod*, No. 3:17CV1059 (VLB), 2017 WL 2962884, at *3 (D. Conn. July 11, 2017) (citations omitted).  Determining whether the force is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  A court shall consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the [arrestee] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.  However, "'[n]ot every push or shove' amounts to a Fourth Amendment violation.  Indeed, a '*de minimis* use of force will rarely suffice to state a Constitutional claim.'" *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)).

Moreover, a plaintiff must allege that he sustained an injury from the alleged excessive force.  *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011).  "However, an individual does not need to sustain a severe injury to maintain a claim." *Id*. (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

In the amended complaint, Plaintiff alleges only that Sgt. Flanders "assaulted" him resulting in a swollen ankle and bruised wrist.  (Dkt. No. 13 at 2.)  Rule 8 of the Federal Rules of

Civil Procedure requires a "'short and plain statement'" of a claim, showing that "'the pleader is entitled to relief.'" *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "'simple, concise, and direct,' and must give 'fair notice of the claims asserted.'" *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* As it currently stands, Plaintiff's amended complaint does not describe the alleged use of excessive force with any sufficient detail beyond being "assaulted" by Sgt. Flanders. (*See* Dkt. No. 13 at 2.) Thus, the undersigned recommends dismissal for failure to state a claim. However, mindful of the Second Circuit's direction to provide special solicitude to *pro se* plaintiffs, the Court recommends affording Plaintiff a final opportunity to amend this claim. *See Pearson v. Reid-Robinson*, 632 F. App'x 19, 19 (2d Cir. 2016). Should Plaintiff be permitted leave to amend, he must describe the alleged excessive force in greater detail.

### ii.    Remaining Claims

Plaintiff's complaint loosely alleges Fourth Amendment claims for unreasonable search and seizure, false arrest, and false imprisonment against Sgt. Flanders. At this juncture, however, the Court is unable to determine whether these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Heck* provides when a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. 512 U.S. at 487. Although it is clear that Plaintiff is confined to Broome County Jail, he does not specify whether his current confinement is directly related to the underlying claim, nor the status of any relevant criminal proceeding. (Dkt. No. 13 at 3.) If any criminal action relative to Plaintiff's allegations has since terminated, in order to recover

damages for the purported unreasonable search and seizure, false arrest, and false imprisonment claims, he must set forth that any convictions have been resolved in his favor.[6]  Because Plaintiff has not alleged sufficient facts in this regard, the Court cannot determine whether these claims may survive initial review.  Thus, these claims should be dismissed without prejudice, allowing Plaintiff the opportunity to plead the status of any related underlying criminal proceeding.

To the extent Plaintiff should amend his complaint to show that his claims are not barred by *Heck*, it remains incumbent on him to allege more detailed facts plausibly suggesting he was subject to unreasonable search and seizure, false arrest, and false imprisonment in violation of his constitutional rights.[7]  *See* Fed. R. Civ. P. 8; *Whitfield*, 763 F. App'x at 107.  Here, Plaintiff does not describe with any sufficient detail the circumstances leading to his purported arrest, the charges ultimately brought against him as a result of any arrest, or the status of his criminal proceedings.  (*See* Dkt. No. 13.)  Therefore, as it currently stands, Plaintiff's complaint fails to provide fair notice of the claims he attempts to assert and is replete with conclusory statements and "naked assertions devoid of further factual enhancement" with respect to his claims.  *Iqbal*, 556 U.S. at 678 (internal citations and alterations omitted).

---

[6]  To state false arrest and false imprisonment claims under New York law, a plaintiff must allege that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012).  An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

[7]  The Second Circuit has held that "*Heck* bars a § 1983 claim based on an extant conviction, but it has no apparent application to an anticipated future conviction."  *Stegemann v. Rensselaer Cty. Sheriff's Off.*, 648 F. App'x 73, 76 (2d Cir. 2016) (finding that since plaintiff's criminal trial was still ongoing, civil relief was not categorically barred by the favorable termination rule of *Heck*).  Thus, if Plaintiff's criminal action in this case is still pending, *Heck* would be inapplicable.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that all of Plaintiff's claims against Attorney Christopher D. Grace be **DISMISSED WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED** that Plaintiff's excessive force, unreasonable search and seizure, false arrest, and false imprisonment claims against Sgt. Flanders be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: July 6, 2023
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Case 3:23-cv-00263-DNH-TWD    Document 14    Filed 07/06/23    Page 11 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

2019 WL 4392743
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Manuel P. ASENSIO, individually; Manuel P.
Asensio as the parent of E.A., a minor child, Plaintiff,

v.

Janet DIFIORE, Chief Judge of New York State; Letitia
James, Attorney General of New York State; Barbara
Underwood; Andrew M. Cuomo, Governor of New York
State; Adetokunbo O. Fasanya; New York County Family
Court Magistrate Judge; Emilie Marie Bosak, Defendants.

No. 18-CV-10933 (RA)
|
Signed 09/13/2019

**Attorneys and Law Firms**

Manuel P. Asensio, New York, NY, pro se.

Jonathan Conley, NYS Office of the Attorney General, New
York, NY, for Defendants Janet DiFiore, Barbara Underwood,
Andrew M. Cuomo, Adetokunbo O. Fasanya.

Rachel Ambats, The Law Office of Rachel Ambats, PLLC,
Brooklyn, NY, for Defendant Emilie Marie Bosak.

Emilie Marie Bosak, New York, NY, pro se.

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

**\*1** Plaintiff Manuel Asensio, appearing *pro se*, commenced
this action on behalf of himself and his minor child, E.A.,
challenging various state court proceedings relating to E.A.'s
custody. He asserts claims under 18 U.S.C. § 241, and 42
U.S.C. §§ 1983, 1985, and 1986, against Defendants Janet
DiFiore, Chief Judge of New York State; Letitia James,
Attorney General of New York; Barbara Underwood, the
former Attorney General of New York; Andrew Cuomo,
Governor of New York; Adetokunbo Fasanya, New York
County Family Court Magistrate Judge (together, the "State
Defendants"); and Emilie Marie Bosak, Asensio's ex-wife.[1]
Before the Court are the State Defendants' motion to dismiss,
Defendant Bosak's motion to dismiss, and Asensio's renewed
requests for the undersigned's recusal. For the following

reasons, Defendants' motions to dismiss are granted, and
Asensio's motions are denied.

[1]     As explained further below, the Court assumes for
purposes of this Opinion that Asensio brings his
claims against the State Defendants in both their
official and individual capacities. Because Letitia
James succeeded Barbara Underwood as Attorney
General of New York after the Complaint was
filed, Letitia James is added as a party with respect
to Asensio's official capacity claims, pursuant to
Fed. R. Civ. P. 25(d). *See, e.g.,* *Correction Officers
Benev. Ass'n v. Kralik*, No. 04 Civ. 2199(PGG),
2009 WL 856395, at *5 (S.D.N.Y. Mar. 26, 2009).

**FACTUAL BACKGROUND** [2]

[2]     The facts in this section, which are assumed to
be true for purposes of this motion, are drawn
from Plaintiff's Complaint, its attachments, and the
record in the state court proceedings of which the
Court takes judicial notice. *See* *Roth v. Jennings*,
489 F.3d 499, 509–510 (2d Cir. 2007). In light of
Plaintiff's *pro se* status, the Court also considers
factual allegations made in Plaintiff's numerous
oppositions to Defendant's motion to dismiss.
*See* Dkts. 61–71, 73–75, and 78; *Washington
v. Westchester County Dep't of Corr.*, No. 13
Civ. 5322(KPF), 2015 WL 408941, at *1 n.1
(S.D.N.Y. Jan. 30, 2015). The Court refers to the
ECF pagination of Plaintiff's filings for ease of
reference.

Familiarity with the substance of the underlying state court
proceedings and their complicated procedural history is
presumed. The Court reviews only those facts necessary to
resolving the instant motions.

This case arises from various post-divorce custody
proceedings in New York Family Court between Asensio
and his ex-wife, Defendant Bosak. Specifically, after the
New York Supreme Court granted Asensio and Bosak a
judgment of divorce in August 2013, Asensio filed multiple
petitions in New York Family Court, seeking, among other
things, modifications to the custody arrangements of E.A.
*See* Compl. at 6, 38 n. 7; Barnett Aff. ¶ 3. Defendant
Magistrate Judge Fasanya, who presided over some of these
petitions, issued a number of orders directing Asensio to pay

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

Bosak's attorney's fees, as well as the fees of an attorney who Judge Fasanya appointed to represent E.A. *See* Compl. at 4, 6, 24. Asensio thereafter unsuccessfully appealed many of those orders in the New York State Court System, until he was ultimately barred from bringing any further litigation challenging the propriety of his Family Court proceedings, absent prior permission. *See Asensio v. Fasanya*, Index No. 158837/2017 (Sup. Ct. N.Y. Cnty. June 8, 2018) (Doc. 119). Asensio now comes to this Court essentially alleging that his lack of success in New York State Family Court is the result of a broader conspiracy between Judge Janet DiFiore, Judge Fasanya and Bosak, to violate his constitutional rights—and to which the Attorney General and the Governor have turned a blind eye. The allegations against each of the Defendants, all of which are frivolous, are nonetheless reviewed in further detail below.

## I. Magistrate Judge Fasanya

**\*2** Asensio's claims against Judge Fasanya largely arise in the first instance from a May 15, 2014 proceeding the judge held to address certain of Asensio's then-pending custody petitions. *Id.* at 24; *see also* Lipton Aff. Ex. A, *Asensio v. Bosak*, Index No. 153776/2017 (Sup. Ct. N.Y. Cnty. July 29, 2018) (Doc. 83). Asensio alleges that Judge Fasanya deprived him of due process at that hearing by, among other things, "ignor[ing] [his] attorney's legal objections." Compl. at 19. Although not entirely clear from the Complaint, those objections appear to have been directed to Judge Fasanya's appointment of a lawyer, Ms. Restivo, to represent the interests of E.A. in the ongoing custody proceedings. *See id.* Asensio contends that Judge Fasanya lacked "jurisdiction or authority" to appoint Ms. Restivo, and that he did so in cooperation with Bosak and her attorney. *Id.* at 28, 63. Asensio further alleges that "[i]t was obvious"—although he does not explain why—that Judge Fasanya had had "*ex parte* communications with Defendant Bosak's counsel." *Id.* at 24.

Since May 15, 2014, and in response to the alleged collusion that occurred on that date between Judge Fasanya, Bosak, her attorney, and Ms. Restivo, Asensio has "been prosecuting his complaints against Defendant Fasanya," "within the Unified Court System." *Id.* at 34, 62. As a result, Asensio maintains that Judge Fasanya has since retaliated against him in numerous ways. *See id.* at 20, 59 (alleging that Judge Fasanya's "actions against [Asensio] since May 15, 2014 ... have been deliberate and malicious one-sided fabrications, executed to retaliate against him").

Judge Fasanya's first alleged retaliatory act was his issuance of orders directing Asensio to pay at least a portion of Ms. Restivo's legal fees in connection with her representation of E.A. Asensio further asserts that Judge Fasanya had "no authority, right, or discretion to obligate [him] ... to agree to Ms. Restivo's hourly rate or the time she spends on the case." *Id.* at 67; *see also id.* at 20 (accusing Judge Fasanya of "fabricat[ing] ... arbitrary and unauthorized ... 'interim' fees for Ms. Restivo, contempt orders and summary 'pay or be arrest[ed]' orders to collect these fees"); *id.* at 67 (alleging that Judge Fasanya "use[d] thirteen (13) contempt and arrest orders to force [Asensio] to pay ... \$99,153.22,"). In Asensio's view, Judge Fasanya "is required by law to have New York County pay Ms. Restivo's bill ... not the Plaintiff." *Id.*

Next, Asensio alleges that Judge Fasanya retaliated against him by issuing a so-called interim custody suspension order on January 15, 2016, which he claims the judge "fabricated" with Bosak. *Id.* at 9; *see also id.* at 68 (asserting that the suspension order was "based on ... Bosak's false story-telling[.]"). Asensio also alleges that, on the same day, Judge Fasanya forced him "to see his daughter under the supervision of Richard Spitzer," a social worker of "Comprehensive Family Services," pursuant to an alleged plan between Judge Fasanya and Bosak's counsel "to suspend [Asensio's] parenting access without evidence, charges, hearing, decision or reasoning." *Id.* at 62.

Then, as an allegedly "punitive follow-up" to the January 15, 2016 Order, and "retaliatory act" against Asensio's complaints against Fasanya, the judge issued an order requiring Asensio to pay Bosak's legal fees in the amount of \$33,000. *Id.* at 74. Asensio acknowledges that the order was "based on a finding that [his] petitions were frivolous," but claims that the finding had "no basis in the record." *Id.* at 74; *see also id.* at 63, 76 (noting that "[t]he UCS and the State of New York have ignored and refused to review Defendant Fasanya's ... order entered on January 21, 2016, granting Defendant Bosak a \$33,701.50 legal fee award"). Asensio also asserts that Judge Fasanya has unconstitutionally deprived him of his due process rights by ordering him to pay over \$200,000 in fees. *See id.* at 18 ("Fasanya has unilaterally manufactured processes sixteen (16) times to commit unconstitutional seizures of money from Plaintiff totaling ... \$226,090.22."). The most recent order to pay fees (or alleged "seizure") "occurred on July 16, 2018 when Defendant Fasanya ... forced the Plaintiff to pay \$62,912.82 to Defendant Bosak's attorneys." *Id.*

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

**\*3** Asensio further asserts that Judge Fasanya unlawfully incarcerated him on June 30, 2017, for failing to comply with the judge's fee orders. *See id.* at 75 (describing the incarceration as "deliberately and maliciously in derogation of New York State law."). Asensio maintains that Judge Fasanya held him "in contempt of court at the conclusion of a contempt hearing on ... orders to show cause to enforce payment of Ms. Restivo's fees." *Id.* at 74. He further claims that he had secured the necessary surety bond to "secure an automatic statutory stay" of the contempt order, but that he was precluded from filing a notice of appeal of the order. *See id.* (accusing Judge Fasanya of denying Asensio's purported "right for an automatic stay and right to purge the alleged contempt ... and order[ing] [that] the Plaintiff be turned over to the department of corrections."). Asensio then alleges that "the Appellate Division for the First Department ... and the Court of Appeals refused to entertain [his] application for leave to appeal the contempt and incarceration order[.]" *Id.* at 75.

Lastly, Asensio refers to the Judge Fasanya's May 2, 2018 "Decision and Order on Default." *Id.* at 69. Although Asensio does not articulate the basis or contents of the order, he states that it "can only be viewed as a fraud on the court and the judicial system[.]" *Id.* at 77.

## II. Emilie Bosak

Asensio's allegations against Bosak, which are stated in less detail than those against Judge Fasanya, arise from the purported "collusion" between the two in connection with the May 15, 2014 hearing, the January 15, 2016 interim suspension order, and Judge Fasanya's numerous attorney's fees orders discussed above. In essence, Asensio alleges that Judge Fasanya's actions taken against him in his post-divorce proceedings is the result of a broader conspiracy between the judge and Bosak to violate his civil rights. Asensio asserts, for instance, that Bosak colluded with Judge Fasanya to "fabricate evidence, charges, and records, [and] to make fraudulent calendaring decisions[.]" Pl.'s Mem. Opp. at 1 (Dkt. 71). In addition, although he does not mention it in his Complaint, Asensio later alleges that Defendant Bosak conspired with Judge Fasanya at a much earlier date—December 13, 2013—to cause Asensio to be falsely arrested. *See* Pl.'s Aff. at 2 (Dkt. 62). The details of the purported conspiracy and the arrest are not specified.

## III. Chief Judge DiFiore

Asensio's claims against Judge DiFiore are similarly predicated on Judge Fasanya's alleged misconduct, and Judge DiFiore's purported failure to remedy such harm. More broadly, Asensio claims that Judge DiFiore's alleged conspiracy with Judge Fasanya—to permit the entry of the various fee orders against Asensio, among other things—is a component of what he dubs Judge DiFiore's "prohibited and impermissible domestic relations process." Compl. at 1. As part of this so-called "process," Asensio alleges that Judge DiFiore has "ignore[d] the law" to "maliciously create income" for lawyers appointed by New York judges ("18-B lawyers"). *Id.* at 4 (asserting that "the imposition of attorney's fees ... and appointments of unnecessary attorneys for children in ... post-divorce judgment custody violation cases" is a "central component" of DiFiore's "domestic relations process"). Other components of this process, Asensio contends, include DiFiore's "sanctioning" of Fasanya's "collusion" with Bosak, by permitting Fasanya to issue the interim suspension order. *Id.* at 3; *see also id.* at 14 (alleging that Judge DiFiore "has protected Defendant Fasanya from the Plaintiff's complaints," including by "deliberately refrain[ing] from ... regulat[ing] Defendant Fasanya's acts[.]").

According to Asensio, the reason Judge DiFiore has been able to engage in this purported "domestic relations process" is because of the domestic relations exception to the federal courts' subject matter jurisdiction under Article III of the U.S. Constitution—which he refers to as the "DRE" and which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "Without the cover provided by the DRE," Asensio posits, DiFiore could not have "conceal[ed]" her supposedly unlawful conduct. Compl. at 2. In other words, Asensio argues that DiFiore has been relying on the DRE as a shield to protect her from liability for her acts. Asensio thus purports to challenge "the federal courts' use of the so-called domestic relations exception." *Id.* at 5. It might seem, then, that Asensio is asking this Court to overturn the domestic relations exception as a legal doctrine. In Asensio's view, the doctrine has emboldened Chief Judge DiFiore to unconstitutionally permit family court judges to appoint attorneys for children in post-custody proceedings, and to order parents to pay for those attorneys' fees. The Complaint, however, makes no such request—instead, it seeks millions of dollars in punitive and compensatory damages against Defendants for allegedly violating Asensio's constitutional rights.

Case 3:23-cv-00263-DNH-TWD   Document 14   Filed 07/06/23   Page 14 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)
2019 WL 4392743

**\*4** Separately, Asensio alleges that, on December 5, 2016, DiFiore improperly dismissed his prior complaint against Judge Fasanya and directed him "to the normal appellate practice ... without any review or consideration." *Id.* at 66; *see also id.* at 21 (noting that on December 5, 2016, "Defendant DiFiore arbitrarily ... fabricated a blanket protection order that banned all of the Plaintiff's actions against Defendant Fasanya.").

### IV. The Attorney General, the Governor, and Underwood

With respect to Defendants James, Underwood, and Cuomo, Asensio alleges that they have been "maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against" Plaintiff and E.A. *Id.* at 16; *see also id.* at 21 (stating that these defendants have "deliberately and wrongfully abstained from exercising the inherent duties of their official positions ... to monitor ... and prosecute Defendant DiFiore for her malicious actions against ... Plaintiff"). As with Judge DiFiore, Asensio blames the domestic relations exception to federal subject matter jurisdiction for giving these defendants "unrestricted authority to allow the [C]hief [J]udge to violate [his] rights." *Id.* at 25.

### PROCEDURAL BACKGROUND

Asensio commenced this action on November 21, 2018. On December 14, 2018, he filed a letter requesting, among other things, that the Court schedule a pre-trial conference and hold oral argument on Defendants' then-anticipated motions to dismiss. *See* Dkt. 12. After granting Defendants' subsequent requests for extensions of time to file their motions—which contest in part the Court's subject matter jurisdiction to hear Asensio's claims—the Court stayed the remainder of the case pending resolution of the motions and denied the requests in Asensio's December 14, 2018 letter. *See* December 17, 2018 Order (Dkt. 24). For the reasons provided in the Court's January 18, 2019 Order, Dkt. 31, the Court also denied Asensio's subsequent requests that the Court vacate its prior orders and that the undersigned recuse herself.

On February 1 st and again on February 13, 2019, the Court denied Asensio's renewed requests for recusal. *See* Dkts. 40, 42. The Court then granted Asensio's first request for an extension to file his opposition to Defendants' motions to dismiss. Dkt. 52. On April 17 th, Asensio filed a complaint

against Chief Justice Roberts of the United States Supreme Court, Chief Judge Katzmann of the United States Court of Appeals for the Second Circuit, and the undersigned, based in part on this Court's management of the case. *See* Dkt. 53-1. On the same day, Asensio again requested that the undersigned recuse herself. *See id.* The Court denied the request in its April 18, 2019 Order. Dkt. 55. As explained in that Order, it is well-established that "a judge is not required to recuse ... herself simply because a litigant before the judge has filed suit or made a complaint against ... her." *Jenkins v. Sladkus*, No. 04 Civ. 1595(LAK), 2004 WL 1238360, at \*1 (S.D.N.Y. June 3, 2004). Otherwise, litigants would be given carte-blanche to engage in endless "judge-shopping." *See Salten v. Cty. of Suffolk*, No. 08-CV-5294 (SJF)(AKT), 2012 WL 3260266, at \*2 (E.D.N.Y. Aug. 6, 2012). The Court subsequently granted Asensio's multiple requests for additional time to oppose Defendants' motions. *See* Dkts. 56, 58, 72.

On June 5, 2019, nearly two weeks before the State Defendants had filed their June 17 th reply to Asensio's opposition, he requested leave to file a sur-reply. Despite the Court not having ruled on the request, Asensio filed a sur-reply on June 17 th. On July 8 th, the Court declined to exercise ancillary jurisdiction over a separate fee dispute that had arisen between Defendant Bosak, who is now proceeding *pro se*, and her former counsel. On July 9 th, July 18 th, August 20 th, August 21 st, and September 11 th, Asensio filed additional letters requesting that the undersigned recuse herself.

### LEGAL STANDARDS

**\*5** "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

Case 3:23-cv-00263-DNH-TWD   Document 14   Filed 07/06/23   Page 15 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

An action is frivolous when either: "(1) the factual contentions are clearly baseless ...; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").

## DISCUSSION

### I. Claims on Behalf of E.A.
As a threshold matter, Asensio's *pro se* status precludes him from asserting claims on behalf of E.A. in this action. "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). It follows that a non-attorney parent cannot bring a *pro se* case on behalf of his or her child in federal court. *See, e.g.*, *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Given that Asensio does not purport to be an attorney, his claims asserted on behalf of E.A. are dismissed without prejudice.

### II. Claims under 18 U.S.C. § 241
Asensio's first cause of action is brought against Defendants DiFiore, Fasanya, and Bosak, pursuant to 18 U.S.C. § 241, for allegedly conspiring to violate his "civil and due process rights[.]" Compl. at 29. But "nothing in the language or structure of § 241 suggests that Congress intended to create a private right of action under that section[.]" *Storm-ggink v. Gottfried*, 409 Fed. App'x 426, 427 (2d Cir. 2011) (citing cases). Indeed, 18 U.S.C. § 241 is a criminal statute and a private citizen, like Asensio, "lacks a judicially cognizable

interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981). Asensio's claims under 18 U.S.C. § 241 are, therefore, dismissed for lack of standing. *See id.*

### III. Claims under 42 U.S.C. §§ 1983, 1985, 1986
Asensio's remaining claims seek compensatory and punitive damages from all Defendants for alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986. With respect to the State Defendants, it is not clear to the Court whether Asensio intends to bring these claims against them in their official, as opposed to individual, capacities. On the one hand, the conduct for which Asensio seeks to hold them liable largely (if not entirely) occurred in the context of their official functions; on the other, Asensio is seeking punitive damages from each of them which are only available in individual capacity suits, and Defendants have raised both official and individual capacity defenses. *See Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) (concluding that defendant officials were being sued in their individual capacities because the complaint sought punitive damages, "which are not available against the state," and the defendants had asserted a qualified immunity defense which is "unavailable in an [an] official capacity suit[ ]"). Out of deference to Asensio's *pro se* status, the Court will construe his claims as being asserted against Defendants in both their official and individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993). In any event, Asensio's claims must be dismissed in their entirety.

### A. Official Capacity Claims
 **\*6** "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The immunity "extends beyond the states themselves to state agents ... that are, effectively, arms of a state." *Id.* Such state agents include the New York Attorney General, the New York Governor, and New York state judges when acting in their official capacities. *See Abdullah-Sadiq v. Behringer*, No. 17-CV-0270(TPG), 2017 WL 5508478, at \*2 (S.D.N.Y. Feb. 27, 2017); *New York State Court Clerks Ass'n. v. Unified Court System of the State of New York*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014).

Here, New York has not waived its Eleventh Amendment immunity to being sued in federal court. Nor did Congress abrogate the state's immunity in enacting 42 U.S.C. §§ 1983,

Case 3:23-cv-00263-DNH-TWD   Document 14   Filed 07/06/23   Page 16 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

1985, or 1986. *See Gasparik v. Stony Brook Univ.*, No. CV-05-3817(SJF)(ARL), 2007 WL 2026612, at \*4 (E.D.N.Y. July 9, 2007) (citing cases), *appeal dismissed*, 296 Fed. App'x 151 (2d Cir. 2008). And Asensio's allegations against the State Defendants concern conduct occurring in their official capacities—namely, the entry of judicial orders by Judge Fasanya (and at least one by Judge DiFiore), as well as the alleged failure of the Attorney General and Governor "to abstain[ ] from exercising the inherent duties of their official positions." Compl. at 2. Accordingly, Asensio's official capacity claims against the State Defendants are barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction. *See Graziosac v. New York City*, 29 Fed. App'x 691, 693 (2d Cir. 2002).

### B. Individual Capacity Claims

To the extent Asensio's claims against the State Defendants under 42 U.S.C. §§ 1983, 1985, and 1986 can be construed to be seeking damages from them in their individual capacities, those claims also fail. The claims against Judges DiFiore and Fasanya are barred by the doctrine of judicial immunity; the claims against former Attorney General Underwood are barred by the doctrine of prosecutorial immunity; and the claims against Governor Cuomo are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### 1. Chief Judge DiFiore and Judge Fasanya

"As early as 1872, the Supreme Court recognized that it was a general principle of the highest importance ... that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). Were judges required to face the fear "that unsatisfied litigants may hound [them] with litigation charging malice or corruption[,]" this would result in "intimidation" rather than "principled and fearless decisionmaking," *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, for decades courts have held that judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity can only be overcome when a judge takes actions "in the complete absence of all jurisdiction" or when the judge's actions are "nonjudicial." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). When a judge, however, has taken "the challenged action [when] he had jurisdiction over the subject matter before

him," and the "action in question" was "judicial in nature," he —or she—is immune from liability for damages. *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005).

**\*7** That is the case here. Asensio's allegations against Judge Fasanya are predicated on his conduct at the May 15, 2014 proceeding over which he presided, his appointment of E.A.'s attorney and social worker, his January 15, 2016 suspension order, and his orders requiring Asensio to pay the legal fees of E.A.'s and Bosak's attorneys. Despite Asensio's repeated assertions that Judge Fasanya "fabricated" these proceedings and orders, Asensio makes no plausible argument that Judge Fasanya lacked subject matter jurisdiction over Asensio's petitions against Bosak. In particular, Judge Fasanya clearly had jurisdiction to issue the January 15, 2016 suspension order, *see* N.Y. Fam. Ct. Act § 651(b), N.Y. Dom. Rel. Law § 240; to appoint E.A.'s attorney and social worker, *see id.* §§ 241–249, N.Y. Fam. Ct. Act § 651; and to order Asensio to pay E.A.'s and Bosak's attorneys' fees, *see* N.Y. Dom. Rel. Law § 237.

Asensio similarly fails to adequately allege that these acts were not judicial in nature. An act is judicial in nature when "it is a function normally performed by a judge," and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Each of Judge Fasanya's orders that Asensio addresses in his Complaint are the result of quintessential judicial acts—namely, the application of law and the exercise of judgment. *See Tarter v. State*, 68 N.Y.2d 511, 518–19 (1986). [3] The same goes for Asensio's allegations against Judge DiFiore with respect to her December 5, 2016 Order purportedly prohibiting him from filing further petitions against Judge Fasanya. Likewise, the allegations regarding Judge Fasanya's conduct over proceedings where Asensio appeared constitute judicial acts. *See Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at \*5 (S.D.N.Y. Feb. 7, 2019) (citing cases recognizing that presiding over hearings is a judicial act), *appeal dismissed*, No. 19-365, 2019 WL 3774562 (2d Cir. 2019). This result remains the same even in the face of Asensio's allegations that Judge Fasanya, Bosak, her counsel, and E.A.'s counsel colluded during the custody proceedings because "[t]he cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). Asensio's claims against Judge Fasanya are thus dismissed as barred by the doctrine of judicial immunity, as are Asensio's claims against Judge DiFiore. [4]

Case 3:23-cv-00263-DNH-TWD   Document 14   Filed 07/06/23   Page 17 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

3    The Second Circuit also looks to state law to determine whether an act is judicial in nature. *See Huminski*, 396 F.3d at 76.

4    Even assuming, *arguendo*, that Judge DiFiore's purported "sanctioning of," or "failure to supervise," Judge Fasanya's allegedly unlawful conduct could be considered administrative as opposed to judicial acts, those allegations are frivolous. They also fail to state a claim for relief under § 1983, because (1) Asensio has not plausibly alleged that Judge Fasanya acted unlawfully in the first place, for the reasons explained above, and (2) "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam)).

Moreover, Asensio's allegations that DiFiore and Fasanya conspired with Bosak—to the extent such conduct could be considered "non-judicial" in nature and thus outside the scope of judicial immunity—do not suffice to state a conspiracy claim under § 1985(2) or § 1985(3). 5 *See L.K. v. Sewanhaka Central High School Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016). To support a claim for a conspiracy under section § 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Rodriguez v. City of New York*, No. 05 Civ. 10682(PKC)(FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). Asensio's conclusory and vague allegations that Judge DiFiore "direct[ed] the entry of 63 false judgments" in state actions that he filed against the Chief Judge based on her alleged "cooperation" with Fasanya and Bosak—and that Judge DiFiore and Fasanya conspired to "maliciously fabricat[e] processes to prevent the Plaintiff from having contact with his daughter," Compl. at 27—lack the requisite factual basis to state a § 1985 claim. *See Dubois v. City of White Plains*, No. 16-cv-0771 (NSR), 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018). Finally, because "a § 1986 claim must be predicated on a valid § 1985 claim," Asensio's § 1986 claim against DiFiore and Fasanya also fails. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Thus, to the extent they are not barred by judicial immunity, Asensio's §§ 1985 and 1986 claims against the two judges are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

5    Although Asensio does not specify what provision of § 1985 he seeks to invoke, the Court does not construe his Complaint as asserting a claim under § 1985(1), because that provision "only applies to conspiracies intended to interfere with ... federal officers, not state officers." *Cobbs v. City of Newburgh – City Council*, No. 09 Civ. 3800 (LMS), 2012 WL 12884367, at *9 (S.D.N.Y. Nov. 19, 2012), *aff'd*, 546 Fed. App'x 34 (2d Cir. 2013).

### 2. Former Attorney General Underwood

**\*8** It is well-settled that "prosecutors are entitled to absolute immunity when accused of a failure to investigate." *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 n.1 (S.D.N.Y. July 13, 2016) (citing cases), *aff'd*, 714 Fed. App'x 60 (2d Cir. 2018). The claims against Underwood are exclusively premised on such accusations, specifically, her asserted decision to "abstain[ ] from exercising the inherent duties of [her] official positions ... to prosecute Defendant DiFiore for her malicious actions against ... Plaintiff," and thereby "permit[ting] other judges and non-judicial personnel ... to deny the Plaintiff process." Compl. at 21, 57. Underwood is thus immune from Asensio's claims arising from those decisions, which are, accordingly, dismissed.

### 3. Governor Cuomo

Asensio's allegations against Cuomo also fail state a claim for relief under 42 U.S.C. §§ 1983, 1985, and 1986. Asensio alleges that Cuomo ignored twelve of Asensio's complaints concerning Judge DiFiore's December 5, 2016 Order; and, as with Underwood, that he abstained "from exercising the inherent duties of [his] official positions," and cooperated with Judge DiFiore to permit other judges to "commit acts of wrongdoing" against Asensio. These allegations "rise to the level of the irrational" and plainly fall short of stating a claim for a deprivation of Asensio's constitutional rights. *Abdullah-Sadiq*, 2017 WL 5508478, at *2. The claims against Cuomo are thus dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### C. Claims Against Emilie Bosak

Finally, Asensio's claims against Defendant Bosak similarly fail. To state a claim under 42 U.S.C. § 1983, a plaintiff must first show that "the defendant was a state actor, i.e., acting

Case 3:23-cv-00263-DNH-TWD    Document 14    Filed 07/06/23    Page 18 of 46

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

under color of state law," when she committed the alleged constitutional violation. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). The actions of a private citizen, like Bosak, may constitute state action only when "there is such a close nexus between the State and the challenged action that ... private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009). This nexus may exist where, as Asensio alleges, the private actor "conspire[d] ... with a state official to violate the plaintiff's constitutional rights." *Osipova v. Dinkins*, 907 F. Supp. 94, 96 (S.D.N.Y. 1995).

But to state a claim against a private party on a such a § 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Asensio's conclusory allegations that Bosak engaged in "collusion, conspiracy, and cooperation" with Judge Fasanya to "fabricate charges and evidence against [him]," so as to have Ms. Restivo and Mr. Spitzer appointed as E.A.'s attorney and social worker, are plainly insufficient to support a finding that Bosak has acted under "color of state law." *See Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 Fed. App'x 9, 10 (2d Cir. 2013). For that same reason, any allegations that Bosak conspired with any of the State Defendants to violate Asensio's constitutional rights cannot state a claim under § 1985, and Asensio's § 1986 claim against Bosak fails as a result. *See Brown*, 221 F.3d at 341. Asensio's claims against Bosak are, therefore, dismissed.

## IV. Recusal

As previously noted, the Court has denied Plaintiff's multiple prior requests for the undersigned's recusal. *See* Jan. 18, 2019 Order (Dkt. 31); Feb. 01, 2019 Order (Dkt. 40); Feb. 13, 2019 Order (Dkt. 42); April 18, 2019 Order (Dkt. 55). Because Plaintiff has identified no new legal or factual basis warranting recusal in his renewed recusal requests of June

12th, July 9th, July 18th, August 20th, August 21st, and September 11th (*see* Dkts. 94, 102, 103, 106, 107, 108) those requests are also denied.

## V. Leave to Amend

**\*9** "District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at \*5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill*, 657 F.3d at 122–24). Where, as here, "[t]he problem with [a plaintiff's] causes of action is substantive," such that "better pleading will not cure it," amendment is futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to replead is thus denied. [6]

[6]    Defendants also moved to dismiss the Complaint on grounds that the claims were barred by the domestic relations exception, the doctrines of *res judicata* and *Rooker-Feldman*, and that some claims were barred by the statute of limitations as well. In light of the Court's dismissal of Asensio's claims on the grounds cited above, the Court need not address Defendants' alternative grounds for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiff's requests for the undersigned's recusal are DENIED. The Clerk of Court is directed to terminate all pending motions, to close this case, and to mail a copy of this Order to Plaintiff and Defendant Bosak.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4392743

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2341544
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,
v.
Richard RIVERA, et al., Defendants.

1:22-cv-560 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** On May 26, 2022, Alisha Clark Walker ("Plaintiff"),
proceeding *pro se*, filed a Complaint against Judge
Richard Rivera, Judge Jill Kehn, Judge Anthony McGinty,
Leslie Silva, Douglas Broda, and the Averill Park School
District (collectively, "Defendants"). (Dkt. No. 1.) Plaintiff
simultaneously moved to proceed *in forma pauperis* ("IFP").
(Dkt. No. 2.) Having reviewed Plaintiff's motion to proceed
IFP, the undersigned GRANTS the motion for purposes of this
review. *See id.* The undersigned now considers the sufficiency
of the allegations set forth in the Complaint under 28 U.S.C.
§ 1915(e). For the reasons discussed below, the undersigned
recommends that the Court dismiss Plaintiff's Complaint in
its entirety with leave to amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]

[1]    The following recitation of facts is drawn from
the Complaint, which the Court accepts as true for
purposes of initial review. *See, e.g.*, *LaTouche v.
Rockland County*, No. 22-CV-1437 (LTS), 2022
WL 953111, at \*1 (S.D.N.Y. Mar. 29, 2022);
*Walker v. City of New York*, No. 20-CV-5240 (PKC)
(LB), 2021 WL 1838277, at \*1 n.1 (E.D.N.Y. May
7, 2021).

Invoking this Court's jurisdiction under 28 U.S.C. § 1331
and § 1343, Plaintiff purports to advance several causes of
action under 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1
at 4.) Plaintiff's allegations arise out of orders and events
stemming from New York State Family Court Proceedings
in Rensselaer County involving a child custody dispute. *See
generally id.* at 1-3, 9-12. [2] Plaintiff accordingly brings this
action against New York State Family Court Judges Richard
Rivera, Jill Kehn, and Anthony McGinty, as well as Leslie
Silva, a private attorney, Douglas Broda, a Rensselaer County
Attorney for the Child ("AFC"), and the Averill Park School
District (collectively, "Defendants"). *Id.* at 2-3.

[2]    On June 2, 2022, Plaintiff filed another action in
this Court stemming from the same New York
State Family Court proceeding. *See* Case No. 1:22-
cv-581, Dkt. No. 1.

In general, Plaintiff claims "the policies, practices,
procedures, and standards established and/or maintained
by Defendant/s [sic] violate the Right to Free speech,
the Right to Assemble under the First Amendment, and
the Due Process and Equal Protection clauses of the
Fourteenth Amendments to the U.S. Constitution." *Id.* at 4;
*see also id.* at 6 (claiming Defendants violated Plaintiff's
"rights to her children, due process of law, and First
Amendment rights of Freedom of Speech and the Right to
Peacefully Assemble"). Stated differently, Plaintiff "contends
Defendants' policies, practices, procedures, and standards
are gender-based, unconstitutional, have a disparate impact
on women, and violate women's [New York State] entitled
equal economic, property ownership, and custody rights
in contested Judgment of Custody Orders when domestic
violence ("DV") exists." *Id.* at 8. Plaintiff accordingly
advances six causes of action against Defendants. *See id.* at
12-31.

Through the first cause of action, Plaintiff claims Defendants
acted in concert to violate her freedom of speech. *See id.* at
12-16. According to Plaintiff, Defendants violated the First
Amendment by supporting and issuing a New York State
Family Court order that prevented her from posting on social
media about the ongoing custody dispute. *See id.* Plaintiff
also claims Defendants violated the First Amendment by
supporting and issuing a New York State Family Court order
that prevented her from disseminating documents about the
ongoing custody dispute at her children's school district. *See
id.* In her second cause of action, Plaintiff claims Defendants
violated her First Amendment right to peacefully assemble

by supporting and issuing a New York State Family Court order that prevented her from "disseminating documents or information at any location in the children's school district and/or faculty administration." *Id.* at 16-17. By her third cause of action, Plaintiff claims Defendants unconstitutionally deprived her of her right to raise her children by applying discriminatory policies and legal standards. *Id.* at 19-21. Through her fourth cause of action, Plaintiff claims she has "been discriminated against by the Defendants" because she is "an advocate for sexual abuse [sic] against children (#savethechildren) and women affected by legal abuse by the system and their spouses." *Id.* at 22. In her fifth cause of action, Plaintiff claims Judge Rivera, Judge McGinty, Judge Kehn, and AFC Broda "used their positions of power to intentionally inflict harm and pain on me." *Id.* at 23. By her sixth cause of action, Plaintiff claims Defendants "routinely engaged in sex bias, often causing [her] to endure worse legal treatment by the abusive husband." *Id.* at 26.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); see also *Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at \*1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [3]

[3]      Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. See *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims

are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because the claims are frivolous, it fails to state a claim upon which relief may be granted, and many Defendants are immune. See 28 U.S.C. § 1915(e)(2)(B). Moreover, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Private Individuals

Plaintiff purports to bring this action against Silva, a private attorney, and Broda, an AFC, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) Plaintiff does not explain or distinguish which of her causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. *See generally id.* at 12-31. The undersigned accordingly considers whether *any* of Plaintiff's causes of action state a claim for relief under 42 U.S.C. § 1983 against Silva and Broda. *See Sealed Plaintiff,* 537 F.3d at 191.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly,* 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g., Asensio v. DiFiore,* No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman,* 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's § 1983 claims against Silva and Broda are inadequately pled because she has failed to allege they acted under color of state law. *See* 42 U.S.C. § 1983; *Velez,* 401 F.3d at 84. Plaintiff's conclusory allegations that Silva and Broda acted in concert with state actors do not constitute plausible allegations that they acted under color of state law. *See Asensio,* 2019 WL 4392743, at *8; *Bornschein,* 304 F. Supp. 3d at 301. Moreover, Silva cannot be sued under 42 U.S.C. § 1983, as [i]t is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent v. New York,* 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd,* 485 F. App'x 500 (2d Cir. 2012); *see also Agron v. Douglas W. Dunham, Esq. & Assocs.,* No. 02 CIV.10071(LAP), 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor.") (collecting cases). Broda cannot be sued under 42 U.S.C. § 1983 either—"although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise

independent professional judgment on behalf of the clients they represent." *Parent,* 786 F. Supp. 2d at 538; *see also Milan v. Wertheimer,* 808 F.3d 961, 964 (2d Cir. 2015); *see, e.g., DeRouseau v. Fam. Ct., Westchester Cnty.,* No. 21-CV-8716 (LTS), 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."). The undersigned accordingly recommends dismissing all of plaintiff's § 1983 claims against Silva, the private attorney, and Broda, the AFC, on the grounds that they are inadequately pled and frivolous. *See* 28 U.S.C. § 1915(e)(2)(B); *see also Livingston,* 141 F.3d at 437.

### B. Immune Defendants

**\*4** Judge Rivera, Judge Kehn, and Judge McGinty are all immune from suit. 28 U.S.C. § 1915(e)(2)(B)(iii). Through her various causes of action, Plaintiff complains of rulings these Judges made and orders they issued while performing their duties as New York State Family Court Judges. (*See generally* Dkt. No. 1 at 6, 11-31.) However, because Plaintiff advanced no allegation suggesting Judge Rivera, Judge Kehn, or Judge McGinty acted outside the scope of their positions or without jurisdiction, the doctrine of judicial immunity applies. *See id.*; *see also Mireles v. Waco,* 502 U.S. 9, 11 (1991); *see also Chris H. v. New York,* 740 F. App'x 740, 741 (2d Cir. 2018). This doctrine immunizes the judges from the causes of action Plaintiff asserts under both 42 U.S.C. § 1983 and § 1985. *See, e.g., Deem v. DiMella-Deem,* 941 F.3d 618, 620-21 (2d Cir. 2019) (affirming the dismissal of plaintiff's claims, asserted under 42 U.S.C. § 1983 and § 1985, where "Judge Gordon-Oliver was ... clearly entitled to juridical immunity"); *Komatsu v. City of New York,* No. 1:20-CV-6510 (LLS), 2020 WL 8641274, at *3 (S.D.N.Y. Oct. 22, 2020), *aff'd,* No. 20-3676-CV, 2021 WL 6060603 (2d Cir. Dec. 20, 2021) ("Plaintiffs claims under [42 U.S.C. § 1983, § 1985, and § 1986] against Justice Bannon and Defendant Vaughan, in their individual capacities, are barred under the doctrine of judicial immunity."); *Asensio v. DiFiore,* No. 18-CV-10933 (RA), 2019 WL 4392743, at *6 (S.D.N.Y. Sept. 13, 2019) (concluding claims asserted under 42 U.S.C. § 1983 and § 1985 against "Judges DiFiore and Fasanya [we]re barred by the doctrine of judicial immunity"). The undersigned accordingly recommends that the Court dismiss all claims against Judge Rivera, Judge Kehn, and Judge McGinty on the grounds that the judges are immune, and the claims are frivolous. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii); *see Mills v. Fischer,* 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is "frivolous" for purposes [of the *in forma pauperis* statute].").

**C. Failure to State a Claim under 42 U.S.C. § 1983 and § 1985**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983 and § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] First, Plaintiff has not provided "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). As explained above, to prevail on a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) that someone deprived her of a federal right, and (2) that the person who deprived her of that right acted under color of state law. *Velez*, 401 F.3d at 84. Plaintiff advanced the general claim that Defendants violated her First and Fourteenth Amendment rights through the use of unconstitutional "policies, practices, procedures, and standards." (Dkt. No. 1 at 4.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Defendants' conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Furthermore, Plaintiff failed to advance non-conclusory factual allegations in support of her third, fourth, fifth, and sixth causes of action clarifying who did what, when they did it, how that action or inaction caused her injury, and what right or rights it violated. (Dkt. No. 1 at 19-31.) These causes of action fail to give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2). Because Plaintiff failed to plausibly allege that one of the Defendants violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under § 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.") (collecting cases).

[4]   Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42

U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 12-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983 or § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

**\*5** Second, to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g.*, *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

Here, Plaintiff failed to advance any factual allegations suggesting Defendants targeted and discriminated against her

on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Defendants discriminated against her and "routinely engag[ed] in sex bias," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 22, 26.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege the Defendants agreed (i.e., had a meeting of the minds) to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 4, 13.) Plaintiff advanced the general allegation that Defendants acted in concert during the custody dispute before the New York State Family Court, but made no factual allegations indicating Defendants agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Defendants violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Defendants acted in concert, without more, does not give rise to the inference that Defendants agreed to engage in unlawful conduct against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 12-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation.").) Plaintiff alleged in conclusory fashion that Defendants violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 12-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of

action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

[5]    The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 20.) That claim fails, however, because Plaintiff did not allege she is or was an employee of one of the Defendants, and she did not allege any employment discrimination. *See, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

**D. Jurisdiction**

**\*6** Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks declaratory and injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody

dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 EAW, 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g., Stumpf,* 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

**\*7** Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments,

and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendants from continuing their illegal acts," a "permanent restraining order," and a declaration that "the Defendants' actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g., Phifer,* 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation

was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 2341544

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805477
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Richard RIVERA et al., Defendants.

1:22-CV-560
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton
Road, Sand Lake, NY 12153.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On May 26, 2022, *pro se* plaintiff Alisha Clark Walker
("plaintiff") filed this action alleging that defendants violated
her civil rights in connection with a child custody dispute.
Dkt. No 1. Along with her complaint, plaintiff sought leave to
proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley
Dancks granted plaintiff's IFP Application for the purpose of
an initial review and advised by Report & Recommendation
("R&R") that plaintiff's complaint be dismissed with
leave to amend. Dkt. No. 4. Although Judge Dancks
observed that plaintiff's claims—which are asserted against

various participants in underlying state court child custody
proceedings—were almost certainly barred by various
jurisdictional or immunity principles, in light of plaintiff's
*pro se* status Judge Dancks concluded that plaintiff should be
given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 4. Upon review for clear
error, the R&R will be accepted and adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this
Order in which to amend her pleading in accordance with
the instructions set forth in Judge Dancks's Report &
Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this
thirty-day period, the Clerk of the Court shall enter a judgment
accordingly and close the file without further Order of this
Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 2805477

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-00263-DNH-TWD    Document 14    Filed 07/06/23    Page 27 of 46

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

2017 WL 2962884
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Jose CORREA, Plaintiff,

v.

MCLEOD, et al., Defendants.

No. 3:17cv1059 (VLB)
|
Signed 07/11/2017

INITIAL REVIEW ORDER

VANESSA L. BRYANT, UNITED STATES DISTRICT
JUDGE

**\*1** On June 29, 2017, the Plaintiff, Jose Correa, an inmate
currently confined at MacDougall-Walker Correctional
Institution in Suffield, Connecticut, filed a complaint pursuant
to 42 U.S.C. § 1983 against Correction Officer McLeod,
Lieutenant Lindsey, Correction Officer Ortyl, Correction
Officer Heinberg, Correction Officer Weir, Correction Officer
Daigle, Correction Officer Pinar, Correction Officer Beaulier,
Correction Officer Cassidy, Correction Officer Boudreau,
Correction Officer Carasquillo, Administrator Cournoyer, [1]
Deputy Warden Mulligan, Lieutenant Perylo, and Dr. Wright.
The Plaintiff is suing each defendant in his or her individual
and official capacities for violations of his Fourth, Fifth,
Eighth, and Fourteenth Amendment rights. He is seeking
declaratory, injunctive, and monetary relief. For the reasons
that follow, his complaint will be dismissed in part.

[1]     The ECF docketing system lists this defendant
        as "Courneyer." Upon information and belief, the
        correct spelling of this defendant's last name is
        "Cournoyer."

I. Factual Allegations
On February 27, 2016, at approximately 4:00 p.m., the
Plaintiff was in the 3-East day room at Northern for
recreation, when correctional officers searched through his
cell and "wreck[ed]" his legal papers. Frustrated, the plaintiff
threw a plastic container at Correction Officer McLeod,
hitting him on the left side of his face. The Plaintiff
immediately lied face-down on the ground in submission.
Nevertheless, Correction Officer John Doe proceeded to

punch and kick the Plaintiff in the ribs. The Plaintiff
was then placed in restraints, and multiple John Doe officers
continuously beat the plaintiff and "bang[ed]" his head
against the concrete floor. Lieutenants Lindsey and Guimond
then sprayed a chemical agent in the Plaintiff's face.
Afterward, the Plaintiff was denied a shower to wash off the
chemical agent, and was also denied medical care and food.
Officers also continued to harass him.

At 4:45 p.m., Officer Boudreau "called in a false code,"
claiming that the Plaintiff was attempting to damage his
restraints, which prompted Lieutenant Perylo to deploy
another chemical agent on the Plaintiff and call him names.
Once again, the Plaintiff was denied a shower to wash off the
agent and was continuously harassed.

The Plaintiff wrote multiple inmate request forms and
grievances seeking medical attention, but no one responded.
The Plaintiff later learned that the correctional officers at
Northern were reading his legal mail and telling other inmates
his charges, which the Plaintiff believed put him in danger.

II. Standard of Law
Pursuant to 28 U.S.C. § 1915A, this Court must review
prisoner civil complaints and dismiss any portion of the
complaint that is frivolous or malicious, that fails to state
a claim upon which relief may be granted, or that seeks
monetary relief from a defendant who is immune from
such relief. Although detailed allegations are not required,
the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon
which they are based and to demonstrate a right to relief.
Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009). The plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face." Bell
Atlantic, 550 U.S. at 570. Nevertheless, it is well-established
that "[p]ro se complaints 'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'
" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013)
(quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,
474 (2d Cir. 2006)).

III. Analysis
**\*2** The Plaintiff claims that the officers and staff at Northern
violated his Fourth Amendment rights by unlawfully
searching his cell, reading his mail, and using excessive force
against him, violated his Eighth Amendment right against

Case 3:23-cv-00263-DNH-TWD    Document 14    Filed 07/06/23    Page 28 of 46
Correa v. McLeod, Not Reported in Fed. Supp. (2017)
2017 WL 2962884

cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm, violated his Fifth Amendment rights, and unlawfully discriminating against him on the basis of his race.

A. Personal Involvement

"It is well settled ... that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In addition, the plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The only Defendants mentioned in the Plaintiff's statement of facts are Lieutenant Perylo, Lieutenant Guimond, Lieutenant Lindsey, Correction Officer McLeod, Correction Officer Boudreau, and several unnamed correction officers identified only as John Does. Thus, aside from these individuals, all claims against Defendants listed in this action are DISMISSED for lack of personal involvement.

Moreover, the Plaintiff does not explain how Officer McLeod was involved in the attack or denial of care thereafter. He only alleges that McLeod was hit in the face by the plastic container thrown by the Plaintiff. Therefore, the claims against Officer McLeod are also DISMISSED.

B. Claims Against Defendants in their Official Capacities

To the extent that the Plaintiff seeks money damages from the Defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

All such claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

C. Fourth Amendment Claims

The Plaintiff claims that the Defendants violated his Fourth Amendment rights in three ways: (1) searching his cell; (2) reading his mail; and (3) using excessive force against him. A prisoner has no reasonable expectation of privacy in his prison cell. *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Smith v. Woods*, 219 Fed.Appx. 110, 111 (2d Cir. 2007). The interception of a prisoner's mail does not violate the Fourth Amendment where the officer(s) had "good" or "reasonable" cause to inspect it. *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998). Moreover, the Plaintiff has not specified which, if any, of the Defendants were involved in the interception of his mail. Therefore, his first two Fourth Amendment claims are DISMISSED for failure to state a claim.

**\*3** The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998). To establish a Fourth Amendment excessive force claim, the Plaintiff must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene (*id.* at 396) and "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

With respect to his third Fourth Amendment claim, the Plaintiff alleges that Lieutenant Lindsey, Lieutenant Guimond, Lieutenant Perylo, Officer Boudreau, and several John Doe corrections officers used excessive force on him after he threw a plastic container at Officer McLeod by physically assaulting him and spraying him with chemical agents despite his submission to their authority. Based on these allegations, the Plaintiff has stated a plausible excessive force claim against those Defendants. Thus, the Court will permit his Fourth Amendment claim to proceed against Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers.

D. Fifth Amendment Claims

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

The Plaintiff claims that the defendants violated his Fifth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. Therefore, his Fifth Amendment claim is DISMISSED for failure to state a claim.

### E. Eighth Amendment Claims

The Plaintiff claims that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson*, 468 U.S. at 526-27. To state a claim for deliberate indifference to safety or failure to protect from harm, the plaintiff must show that the alleged conduct is sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999). The defendants must have been aware that the plaintiff faced an excessive risk to his health and safety and ignored that risk. *See Farmer*, 511 U.S. at 837. To determine whether the plaintiff faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

"An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *West v. Atkins*, 487 U.S. 42, 54 (1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[T]he State has a constitutional obligation, under the Eighth Amendment, to those whom it has incarcerated." *West*, 487 U.S. at 54. To state a claim for deliberate indifference to a serious medical need, an inmate must show both that his medical need was serious and that the defendants acted or failed to provide adequate medical care with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation

marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983 (*see id.* at 280) nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 Fed.Appx. 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

**\*4** The Plaintiff's allegations that he was assaulted and sprayed with a chemical agent while he was submissive and not resisting the Defendant's authority state plausible Eighth Amendment claims against the remaining Defendants for deliberate indifference to his safety. Thus, his Eighth Amendment claims will proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe corrections officers.

The Plaintiff has not alleged which prison officials denied his repeated requests for showers to wash off the chemical agents, medical care and food. Thus, he has failed to state a claim for deliberate indifference based on the denial of those requests. Plaintiff's deliberate indifference to medical needs claim is DISMISSED for failure to allege sufficient personal involvement.

### F. Fourteenth Amendment Claims

The Plaintiff claims the Defendants violated his Fourteenth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. He that the Defendants discriminated against him on the basis of his race but does not support that claim with any facts. Therefore, the Plaintiff's Fourteenth Amendment claim is DISMISSED for failure to state a claim.

### G. Request for Declaratory Relief

Declaratory relief is a vehicle for resolving the relative legal rights of parties to an actual controversy. "The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, 28 U.S.C.A. § 2201, styled 'creation of a remedy,' provides that in a case of actual controversy a competent court may declare the rights and other legal relations of a party whether or not further relief is, or could be, sought. This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Comm'n*

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

*of Utah v. Wycoff Co.*, 344 U.S. 237, 239 (1952) (internal quotations omitted). It serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, 10 Civ. 2291, 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1988).

The plaintiff's legal rights, outlined above, are clear and well established. The questions presented here are not whether the plaintiff has certain rights, but rather whether those rights have been denied. Thus the plaintiff asks the court to apply the facts of this case to the law and not to determine the legal rights of the parties, and declaratory judgment is inappropriate.

Relatedly, Plaintiff's request for declaratory relief concerns only past actions. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

Finally, declaratory judgment is a special proceeding which is available where other remedies do not exist. "A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case. *Public Service Comm'n of Utah*, 344 U.S. at 243 (discussing commentary to Fed. R. Civ. P. 57). In this case, 42 U.S.C. 1983 affords a remedy and thus a declaratory judgment is not authorized by statute. For the foregoing reasons, the request for declaratory relief is DISMISSED.

## ORDERS

**\*5** (1) All claims against Defendants McLeod, Ortyl, Heinberg, Weir, Daigle, Pinar, Carrasquillo, Beaulier, Cassidy, Cournoyer, Mulligan, Perylo, and Wright are DISMISSED. All claims against Defendants in their official capacities for monetary damages are DISMISSED.

(2) Because the Plaintiff has not identified the John Doe correction officers by their true names, the Clerk is not able to serve a copy of the complaint on those Defendants in their individual capacities. The Plaintiff must, within ninety (90) days of the date of this order, conduct discovery and file a notice indicating the first and last name of those Defendants. If the Plaintiff files the notice, the Court will direct the Clerk to effect service of the complaint on those Defendants in their individual capacities. If the Plaintiff fails to identify those Defendants within the time specified, the claims against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

(3) The Plaintiff's Fourth Amendment excessive force claim may proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and any John Doe officers properly and timely identified.

(4) The Plaintiff's Fifth Amendment claim is DIMISSED.

(5) The Plaintiff's Eighth Amendment claim for deliberate indifference to safety and/or failure to protect will proceed against Defendants Lindsey, Guimond, Perylo, Boudreau, and those John Doe officers properly and timely identified.

(6) The Plaintiff's Fourteenth Amendment claim is DISMISSED.

(7) The Plaintiff's request for declaratory relief is DISMISSED.

(8) Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers in their official capacities by delivering one copy of the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(9) The Clerk shall verify the current work addresses for Defendants Lindsey, Guimond, Perylo, and Boudreau with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each Defendant at the confirmed address within twenty-one (21) days of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the

2017 WL 2962884

Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(10) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(11) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(12) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

 **\*6**  SO ORDERED this 11th day of July, 2017 at Hartford, Connecticut.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2962884

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1506954
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Anthony ACOSTA, Plaintiff,

v.

CITY OF NEW YORK, Inspector Michael Harrington, in
his individual and professional capacity, Police Officers
Michael Mazzilli and Police Officers "John Does" in
their individual and professional capacities, Defendants.

No. 11 Civ. 856(KBF).
|
April 26, 2012.

MEMORANDUM & ORDER

KATHERINE B. FORREST, District Judge.

*1 Plaintiff Anthony Acosta, a self-described Hispanic male and former police officer with the New York City Police Department ("NYPD"), brings this action against defendants the City of New York (the "City"), Inspector Michael Harrington (in his individual and professional capacities), Police Officer Michael Mazzilli (in his individual and professional capacities), and an unspecified number of John Doe police officers.[1] Plaintiff alleges that as part of, and subsequent to, a 2008 altercation that occurred while plaintiff was off-duty, defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law ("NYSHRL"), New York State Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8–107 et seq., the use of excessive force in violation of 42 U.S.C. § 1983, and were acting under color of state law pursuant to unlawful policies in violation of Monell v. Department of Social Services, 438 U.S. 658 (1978).

[1]    Plaintiff lists certain "John Doe" police officer defendants in the caption of the Amended Complaint-and makes certain allegations against them. (See, e.g., Am. Compl. ¶ 14.) However, plaintiff has not identified those officers and there is no indication that plaintiff has attempted to ascertain their identities from the City. No service

has been effectuated on those John Does and thus, they are not properly before this Court. Accordingly, the Court only construes plaintiff s claims against those defendants who were properly served.

The City of New York along with defendants Harrington and Mazzilli have moved to dismiss plaintiff s Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted.

FACTUAL BACKGROUND[2]

[2]    For purposes of deciding the instant motions, the Court accepts as true all well-pleaded allegations in plaintiff's Amended Complaint and draws all reasonable inferences in plaintiff's favor. See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001).

In connection with plaintiff's opposition to the motion, plaintiff submitted various documents not referenced in, or integral to, the Amended Complaint. (See Decl. of Rocco G. Avallone in Opp'n to Mot. to Dismiss (Dkt. No. 22) Exs. B–G.) Consideration of such documents is inappropriate on a motion to dismiss, see DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.2010), and the Court has not done so in connection with deciding the instant motion.

On December 17, 2008 at approximately 11:05 p.m., plaintiff, at that time a uniformed member of the NYPD with the rank of Sergeant, was exiting a restaurant and bar near 1490 First Avenue in New York City, while off duty. (Am. Compl.

(Dkt. No. 18) ¶¶ 15, 16, 18.) After plaintiff entered his own car, through his car window he witnessed a separate vehicle strike an individual. (Id. ¶ 18.) Plaintiff exited his car to investigate and, in the process of trying to protect an allegedly "dark skinned and possible [sic] Hispanic" cab driver from "being attacked by several [intoxicated] off duty police officers from the 19th Precinct," was struck by a 2 x 4 piece of wood by a John Doe police officer. (Id.) Plaintiff then identified himself (presumably to the John Doe police officer) as a police officer. (Id. ¶ 18.)

Plaintiff alleges that Captain Pla from the 19th Precinct, [3] one of the NYPD officers at the scene of the incident, failed to take any action to protect either (a) plaintiff, who was attempting to take the 2 x 4 away from one of the John Doe off-duty police officers, or (b) the "dark skinned cab driver." (Am.Compl.¶ 19.) Plaintiff finally wrestled the 2 x 4 into his possession, after which an NYPD vehicle arrived at the scene. (*Id.* ¶ 21.) At that time, plaintiff purportedly identified himself as a police officer, and attempted to inform the "plain clothes" police officers about the car accident and altercation between the cab driver and the off-duty police officers. (*Id.*)

[3]    At all times relevant to the complaint, plaintiff was with the 30th Precinct. (Am.Compl.¶ 10.)

Plaintiff then purportedly approached Officer Mazzilli, identified himself as a police officer, and informed him of the altercation between the off-duty police officers and the cab driver-and pointed out the off-duty officers. (Am Compl. ¶ 23.) In response, defendant Mazzilli allegedly yelled at plaintiff to remove his hands from his pockets, grabbed plaintiff's wrist, pushed plaintiff s hands into his pockets, but then maneuvered plaintiff's elbow to try to remove plaintiff's hands from his pockets. (*Id.* ¶¶ 24–25.) At that time, plaintiff again informed defendant Mazzilli that he was an on-duty police officer, [4] to which Mazzilli responded that he did not care, punched plaintiff in the chest, threw plaintiff to the ground, and handcuffed plaintiff's left wrist. (*Id.* ¶¶ 25–26.)

[4]    Plaintiff alleges that he told defendant Mazzilli, "I'm a Sergeant. I'm on the job." (Am.Compl.¶ 25) despite the fact that plaintiff alleges earlier in the Amended Complaint that he was off-duty at the time of the alleged altercation (*id.* ¶ 18.)

 **\*2**  Defendant Mazzilli then attempted to handcuff plaintiff's right arm behind his back but could not due to limited mobility resulting from a prior surgery. (Am.Compl.¶¶ 26–27.) Plaintiff allegedly pleaded with Mazzilli to stop, explained the problem with his right arm, and requested that two sets of handcuffs be used; Mazzilli obliged. (*Id.* ¶ 27.) A "plain clothes" John Doe police officer subsequently inquired if plaintiff was armed, and, upon learning he was not, removed both sets of handcuffs and placed plaintiff in an SUV. (*Id.* ¶ 29.) Thereafter, plaintiff was transported to the 19th Precinct for interrogation. (*Id.* ¶ 30 .)

Plaintiff alleges that defendant Inspector Michael Harrington approached him prior to his interrogation, informed him that

he was not a subject of the investigation of the assault against the cab driver, but that he should lie during questioning regarding both what had occurred between the John Doe officers and the cab driver and what had occurred between plaintiff and Officer Mazzilli. Harrington then allegedly provided plaintiff with the version of the story he should tell to protect the off-duty police officers. (Am.Compl.¶¶ 31, 34–35.) According to plaintiff, Harrington provided his directives in front of two Sergeants–Mulvey and Cosmo-who allegedly were delegates from the Sergeants Benevolent Association. (*Id.* ¶¶ 32, 34.) Plaintiff informed Sergeants Mulvey and Cosmo of what had occurred, after which Mulvey informed plaintiff that it was inadvisable to go to the hospital for his purported injuries because the investigators "were looking to suspend Plaintiff" and a hospital visit would make plaintiff look "uncooperative and guarantee a suspension." (*Id.* ¶¶ 32, 33.) Based on that information, plaintiff allegedly did not seek medical attention subsequent to his interrogation. (*Id.* ¶ 33.)

Plaintiff, however, purportedly informed defendant Harrington that he would refuse to provide the story that Harrington had requested he give. (Am.Compl.¶ 31.) It is alleged, however, that "defendants" never interviewed the John Doe police officers who had seen the altercation between Mazzilli and plaintiff. (*Id.* ¶ 44.) Mulvey then spoke to Harrington and informed plaintiff that plaintiff was going to be placed on "Modified status;" he was placed on such status shortly thereafter. (*Id.* ¶ 36.) The Amended Complaint does not contain an explanation of the meaning of being placed on modified status.

Plaintiff alleges that he was also "issued Charges and Specifications" on August 18, 2009, and October 29, 2009, for failing to lie during his interrogation "to protect the white police officers" who were involved in the December 17, 2008 altercation with the cab driver. (*Id.* ¶ 38.) Plaintiff does not explain what charges or specifications were issued against him, or what it means to have charges and specifications issued. Then, on January 8, 2010, plaintiff alleges that he was placed in "Level II discipline monitoring" for approximately nine months. (*Id.* ¶ 39.) Again, plaintiff fails to explain what Level II discipline monitoring is or what precisely that meant in the context of plaintiff's job as an NYPD Sergeant.

 **\*3**  Plaintiff retired on October 2011—over two years later than he allegedly planned to retire. (Am.Compl.¶¶ 40, 41.) Plaintiff allegedly could not retire in March 2009 when planned because he purportedly could not obtain a "Good Guy" letter based on his placement on Level II status. (*Id.*

¶ 41.) Plaintiff also alleges that he had to forfeit a private security job, with a purported $140,000 annual salary, that he "had lined up" without the "Good guy" letter. (*Id.*) Plaintiff also alleges damages associated with failing to obtain overtime or special assignments based upon his modified and Level II statuses. (*Id.* ¶ 43.) It is further alleged that "defendants" continued their retaliation in unspecified ways through October 2011 because plaintiff would not accept a penalty for the charges. (*Id.* ¶ 45.)

PROCEDURAL HISTORY

Plaintiff commenced this action on November 23, 2011. (Dkt. No. 1.) On January 3, 2012, defendants requested a pre-motion conference related to an anticipated motion to dismiss plaintiff's original complaint, in response to which the Court set a briefing schedule. (Dkt. No. 10.) Defendants moved to dismiss the original complaint on January 18, 2012. (Dkt. No. 12.)

The Court held the initial pretrial conference in this matter on January 27, 2012. (*See* Dkt. No. 14.) At that conference, the Court informed plaintiff's counsel that plaintiff could withdraw his original complaint and file an amended complaint, taking into consideration defendants' motion to dismiss, or proceed on its original complaint and, if such complaint was found defective, any dismissal would be with prejudice. (*See id.*) In addition, the Court notified plaintiff's counsel at the conference that, given that plaintiff had been given notice of the defects in the original complaint from defendants' motion to dismiss the original complaint, plaintiff would be given a single chance to amend the complaint. In other words, the Court stated that if defects remained in any amended complaint, any dismissal would be with prejudice —*i.e.,* without leave to amend.

Plaintiff elected to amend his complaint (Dkt. No. 15), and filed the Amended Complaint on February 10, 2012 (*see* Dkt. No. 18). Plaintiff asserts claims under 42 U.S.C. § 1983 against the City and defendants Harrington and Mazzilli for racial discrimination, hostile work environment, and excessive force (Count One), [5] for violations of Title VII against the City (Count Two), New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* against all defendants (Count Three), New York City Human Rights Law, N.Y. City Admin. Code § 8–107 *et seq.* against all defendants (Count Four), 42 U.S.C. § 1983 for violations of constitutional rights under *Monell v. Department of Social Services,* 438 U.S. 658

(1978), against the City (Count Five), and 42 U.S.C. § 1981 for discrimination and retaliation (Count Six).

[5]     Plaintiff's claims are asserted in conclusory fashion, bur defendants-and the Court-construed them as broadly as possible on this motion to ensure that all potential claims were encapsulated by this decision.

Defendants filed the instant motion to dismiss on March 1, 2012, plaintiff opposed the motion on March 21, 2012, and the motion was fully briefed as of March 28, 2012. (Dkt.Nos.19, 21, 23.)

DISCUSSION

I. LEGAL STANDARD

**\*4**  To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010) (quoting *Twombly,* 550 U.S. at 570). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.* If the court can infer no more than "the mere possibility of misconduct" from the factual averments-in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. *Twombly,* 550 U.S. at 570; *Starr,* 592 F.3d at 321 (quoting *Iqbal,* 129 S.Ct. at 1950).

As an initial matter, plaintiff's claims fail because they do not meet the standard promulgated by *Twombly* and *Iqbal.* In particular, plaintiff's Amended Complaint is, as Judge McMahon recently put it, "a recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad

happened to me at work; (3) therefore, it happened because I am (insert name of protected class)," *Bermudez v. The City of* New York, 783 F.Supp.2d 560, 581 (S.D.N.Y.2011). But the *sine qua non* of a race-based discrimination or retaliation claim is that discrimination or retaliation was *because of race.* As discussed further below, plaintiff fails to connect the dots between the alleged adverse actions and his membership in a protected class. The Court will address each of plaintiff's claims, including his excessive force and *Monell* claims, *seriatim.*

## II. EMPLOYMENT DISCRIMINATION

### A. CLAIMS UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1983, and NYSHL

Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting analysis set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The same applies to claims of employment discrimination pursuant to 42 U.S.C. § 1983 and the NYSHL. *See Spiegel v. Schulmann,* 604 F.3d 72, 80 (2d Cir.2010) (N.Y.SHRL); *Boykin v. KeyCorp.,* 521 F.3d 202, 213 (2d Cir.2008) ( § 1983). Under that framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must demonstrate (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. *Collins v.* New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002); *Graham v.* Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000) ( § 1983).

**\*5** However, the *McDonnell–Douglas* test is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N .A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). An "employment discrimination plaintiff need not plead a prima facie case of discrimination" on this motion; instead, as long as the complaint gives the defendant "fair notice" of the plaintiff's claim, "the grounds upon which it rests" and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies Rule 8 fa) of the Federal Rules of Civil Procedure. *Boykin,* 521 F.3d at 214–16. Of course, "[t]he *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Jackson v. New York St. Dep't of Labor,* No. 09 Civ. 6608, 2012 WL 843631, at \*2 (S.D.N.Y. Mar.12, 2012) (quotation marks and citation omitted).

Although plaintiff does allege an "adverse" employment action—*i.e.,* that he was denied overtime and special assignments based on his Level II and modified status (Am.Compl.¶ 43)—he fails to raise a plausible inference that the action was taken on account of his race or national origin. Rather, plaintiff specifically alleges that the adverse employment action—being placed on modified status and Level II discipline monitoring—resulted from him refusing to "lie" when he was interrogated about the incident between the John Doe police officers and the cab driver. (*See* Am. Compl. ¶¶ 31, 35, 36, 38 ("In retaliation for failing to follow Defendant Harrington's unlawful directive regarding testifying falsely during Plaintiff's interrogation, ... Plaintiff was issued Charges and Specifications ...".) Plaintiff does not connect the fact that he is Hispanic to any of the alleged adverse actions taken against him other than alleging that the John Doe officers were white. (*See* Am. Compl. ¶ 38.) That is fatal to his discrimination claims. *See Int'l B'hood of Teamsters v. U.S.,* 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Plaintiff attempts to show that he was treated differently than the John Doe officers by intimating that "defendants" did not question the John Doe officers about the altercation between plaintiff and Mazzilli. (*Id.* ¶ 44.) Plaintiff does not make any allegations about what the John Doe defendants were or were not told to say about the incident. Nor does plaintiff allege that the officers did *not* face disciplinary charges or changed "status" as a result of the incident between themselves and the cab driver. Indeed, plaintiff specifically alleges that he was told that if he did not lie, "some NYPD officers would get disciplined." (*Id.* ¶ 35.)

The Amended Complaint's allegations provide the distinct impression that plaintiff faced the alleged adverse action due to his purported failure to lie to protect other NYPD officers —not based upon his race. Even assuming the truth of those allegations, as the Court must on this motion, it does not provide any basis for the Title VII, sections 1983 and 1981, and NYSHRL claims asserted here. *See Iqbal,* 129 S.Ct. at 1949. In other words, the Amended Complaint fails to advance a plausible claim for disparate treatment under those statutes. Accordingly, those claims are dismissed.

### B. NYCHRL

**\*6** Although employment discrimination claims under the NYCHRL are "to be evaluated separately from counterpart claims brought under Title VII," *Kolenovic v. ABM Indus. Inc.,* 361 Fed. Appx. 246, 248 (2d Cir.2010), to effectuate

the statute's "uniquely broad and remedial" purpose, *Kaur v. New York City Health & Hosp. Corp.,* 688 F.Supp.2d 317, 339 (S.D.N.Y.2010) (quotation marks omitted); *see also Price v. Cushman & Wakefield, Inc.,* 808 F.Supp.2d 670, 688 (S.D.N.Y.2011) ("Claims under the City HRL must be given an independent liberal construction." (quotation marks, citation, and alterations omitted)), claims of employment discrimination under the NYCHRL likewise are subject to the *McDonnell–Douglas* burden-shifting analysis, *see Spiegel,* 604 F.3d at 80; *Pilgram v. McGraw–Hill Cos.,* 599 F.Supp.2d 462, 468 (S.D.N.Y.2009) ("[T]he standard for all Title VII, section 1981, [NYSHRL] and [NY]CHRL employment discrimination claims is the same."); *Fowler v. Scores Holding Co., Inc.,* 677 F.Supp.2d 673, 682 (S.D.N.Y.2009). "[A]t a minimum, employment discrimination claims [under NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal* ...." *Goodman v. Port Auth. of* New York & New Jersey, No. 10 Civ. 8352, 2012 WL 664531, at *16 (S.D.N.Y. Feb.29, 2012).

Plaintiff's NYCHRL employment discrimination claim fails under both *McDonnell–Douglas* and *Twombly/Iqbal* for the same reason as its federal and state counterparts-*i.e.,* the absence of allegations connecting the purported adverse employment actions to plaintiff's race. As discussed in connection with the Court's analysis of plaintiff's employment discrimination claims under federal and state law, there is no plausible inference that plaintiff's placement on modified status or Level II disciplinary monitoring resulted from his race. Rather, plaintiff's own allegations state that plaintiff was subjected to adverse actions because he failed to lie to protect other NYPD officers, as instructed by defendant Harrington. (*See, e.g.,* Am. Compl. ¶¶ 31, 35, 36, 38.) Accordingly, even under the NYCHRL's liberal construction, plaintiff's employment discrimination claim under NYCHRL is dismissed.

## C. RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

Section 1981 of chapter 42 of the United States Code provides,

> All persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a).

Claims of employment discrimination under section 1981 are analyzed under the same framework as discrimination claims under Title VII and section 1983. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004); *see also Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000) (§ 1981); *Jermott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996) ( § 1983).

**\*7** Where a defendant is a state actor, claims may only lie under 42 U.S.C. § 1983 for violations of rights under 42 U.S.C. § 1981. *Jett v.* Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Gladwin v. Possi,* 403 Fed. Appx. 603, 604–05 (2d Cir.2010) (the plaintiff's § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983" (citing *Jett,* 491 U.S. at 735)).

Here, to the extent that plaintiff seeks to assert claims against defendants Harrington and Mazzilli in their official capacity or against the City, those claims are analyzed under section 1983 and are dismissed for the reasons set forth in Part II.A., *supra.* To the extent that plaintiff seeks to bring claims against them under section 1981, the claims are dismissed against the City and against Harrington and Mazzilli in their official capacity. *Bermudez,* 783 F.Supp.2d at 576.

## II. HOSTILE WORK ENVIRONMENT

### A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL

Under federal and New York state law, a hostile work environment claim is sufficiently plead where the complaint alleges that the plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation marks and citations omitted); *see also Patterson,* 375 F.3d at 227; *Kumaga v.* New York City Sch. Constr. Auth., 27 Misc.3d 1207(a), 2010 WL 1444513, at *8 (N.Y.Sup.Ct. Apr.2, 2010) (N.Y.SHRL). In looking at the totality of the circumsirancers, a court may also consider certain factors, among others, to determine whether

a work environment is "hostile"—*e.g.,* the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's "work performance." *Harris,* 510 U.S. at 23.

The question of "hostility" of a work environment is both subjective—*i.e.,* did the plaintiff find it hostile-and objective —*i.e.,* would a reasonable person have found it hostile. *Harris,* 510 U.S. at 21–22. The "hostility," however, must be borne of "animus towards [the plaintiff] as a result of [his] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper,* 281 F.Supp.2d 689, 704 (S.D.N.Y.2003). Severity is a hallmark of a hostile work environment claim. Such claims "are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonirol Mgmt. Corp.,* No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006).

The rubric just described applies similarly to hostile work environment claims under 42 U.S.C. §§ 1981 and 1983, and the NYSHRL. *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 § 2d Cir.2006); *Ferraro v. Kellwood Co.,* 440 F.3d 96, 99 (2d Cir.2006).

 **\*8** As with plaintiff's employment discrimination claims, the hostile work environment claims under Title VII, 42 U.S.C. § 1983, and NYSHRL fail because there are no allegations that any animus subjective or objective stemmed from plaintiff's "membership in a protected class." Merely using the words "Hispanic" in reference to himself and "white" in reference to the John Doe police officers in his Amended Complaint does not create a plausible inference of hostility based upon race or national origin. *See Bermudez,* 783 F.Supp.2d at 581. There is simply nothing alleged to demonstrate that race factored into defendants' alleged actions. Thus, the hostile work environment claims under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL are dismissed.

 B. NYCHRL
The NYCHRL's "liberal construction" lowers the standard for a hostile work environment claim brought under its auspices. *Bermudez,* 783 F.Supp.2d at 579; *see also Farrugia v. N. Shore Univ. Hosp.,* 13 Misc.3d 740, 820 N.Y.S.2d 718, 724 (N.Y.Sup.Ct.2006) ("The New York City Human Rights Law was intended to be more protective than the state and federal counterpart."); *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir.2009) ("claims under the [NYCHRL] must be given an independent liberal

construction" (quotation marks omitted)). A "hostile work environment" for purposes of the NYCHRL is one where there is "differential treatment" period. *Williams v. New York City Housing Auth.,* 61 A.D.3d 62, 77, 872 N.Y.S.2d 27 (1st Dep't 2009). In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class. *Id.* Questions of "severity" or "pervasiveness" go to damages only-not to liability. *Id.* at 76, 872 N.Y.S.2d 27.

As discussed above, plaintiff fails to allege that he was treated differently from the John Doe police officers. There are, as mentioned, no allegations that the John Doe police officers did not face disciplinary charges or were not placed on modified status. The Amended Complaint states in conclusory fashion only that plaintiff believed that the John Doe police officers were not questioned in connection with the altercation. (Am.Compl.¶ 44.) But there are no allegations that any questioning—or lack thereof—was based upon race. Accordingly, the Amended Complaint fails to state a hostile work environment claim under the NYCHRL.

III. RETALIATION

 A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL
Plaintiff also asserts that defendants retaliated against him based upon his participation in a protected activity—*i.e.,* speaking the truth—in violation of Title VII, 42 U.S.C. §§ 1981 & 1983,[6] and the NYSHRL. Claims of retaliation "under those" statutes are generally analyzed in the same way, with the same standards of liability. *See Schiano,* 445 F.3d at 608 (Title VII & NYSHRL); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107 (2d Cir.2004) (§ 1983); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38 (2d Cir.1984) (§ 1981).

[6]     Because plaintiff has abandoned his First Amendment claim, the claim for retaliation under section 1983 may not lie concurrently with one under Title VII. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993).

 **\*9** A plaintiff adequately states a claim for deprivation of equal protection rights stemming from retaliation for complaining about discrimination pursuant section 1983 where the complaint alleges the plaintiff suffered a "materially adverse employment action," which was "causally connected" to the plaintiff's engaging in a

"protected activity." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007); *Bermudez,* 783 F.Supp.2d at 575. A plaintiff engages in a protected activity when he "oppose [s] any practice made an unlawful employment practice by Title VII, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Bermudez,* 783 F.Supp.2d at 575 (quotation marks and alterations omitted).

An adverse employment action is one that materially and adversely alters the terms and conditions of employment. *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 446 (23 Cir.1999). A "materially adverse change is, for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.*

Here, plaintiff argues in his opposition to the motion to dismiss that the protected activity in which he engaged was "complaining to the uniformed officers at the scene and at 19th Precinct regarding the actions of Harrington, Mazzilli, and P.O. John Does regarding his unequal and discriminatory treatment on account of his race, national origin...." (Mem. Of Law in Opp'n to Defs.' Mot. To Dismiss the Am. Compl. (Dkt. No. 21) at 18.) However, no such allegation appears in the Amended Complaint. It is axiomatic that a complaint cannot be amended by assertions made in an opposition brief. *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F.Supp.2d 371, 432 (S.D.N.Y.2001). Thus, plaintiff's assertion in his opposition cannot form the basis for any allegations of protected activity. And without any alleged protected activity, the claims under Title VII, 42 U.S.C §§ 1981 and 1983, and the NYSHRL must fail. *See Patane,* 508 F.3d at 112.

The only protected activity alleged in the complaint is plaintiff's filing of charges with the EEOC. (*See* Am. Compl. ¶ 6.) [7] That filing occurred on January 22, 2010.(*Id.*) The closest in time "adverse action" taken against plaintiff–*i.e.,* the January 8, 2010 placement of plaintiff on Level II discipline monitoring-occurred *prior* to the EEOC filing, though. (*Id.* ¶ 39.) [8] The Level II discipline monitoring thus cannot be "causally connected" to the filing of the EEOC charges such that there is a basis for a retaliation claim. *Cf. Butts v. New York City Dep't of Housing Preservation & Dev.,* 307 Fed. Appx. 596, 599 (2d Cir.2009) ("The plaintiff can establish the causal connection indirectly by showing that the protected activity was closely *followed* by discrimination ..." (emphasis added)).

[7]    Plaintiff's refusal to "lie" to "protect" other NYPD officers does not constitute a "protected activity" for purposes of a retaliation claim. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) ( "The term 'protected activity' refers to actions taken to protest or oppose statutorily prohibited discrimination.").

[8]    Plaintiff asserts in wholly conclusory fashion that "[d]efendants continued to retaliate against [him] up until his retirement in October 2011...." (Am.Compl.¶ 45.) That allegation does not come close to meeting the standard set forth in *Twombly* or *Iqbal* and thus, the Court will not credit it on this motion.

**\*10**    Accordingly, without any allegations in the Amended Complaint supporting a protected activity and an adverse employment action, plaintiff's retaliation claims fail under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL. *See Desir v. City of* New York, 453 Fed. Appx. 30, 35 (2d Cir.2011).

### B. NYCHRL

As with discrimination and hostile work environment claims under the NYCHRL, claims of retaliation under the NYCHRL must be evaluated separately from its federal and state counterparts to effectuate the statute's "uniquely broad and remedial purpose." *See Loeffler,* 582 F.3d at 278; *accord Melie v. EVCI/TCI College Admin.,* 374 Fed. Appx. 150, 153–54 (2d Cir.2010). The same analysis employed for retaliation claims under Title VII and NYSHRL applies to retaliation claims under the NYCHRL. *Anderson v. Davis Polk & Wardwell LLP,* —— F.Supp.2d ——, 2012 WL 734120, at \*13 (S.D.N.Y. Mar.6, 2012). Even though the standard for a NYCHRL retaliation claim is "broader" or "lower" than the same claim under its federal or state counterparts, plaintiff's failure to establish a causal connection between any protected activity and an adverse employment action likewise dooms plaintiff's retaliation claim under the NYCHRL. *See Dixon v. Int'l Federation of Accountants,* 416 Fed. Appx. 107, 110 n. 1 (S.D.N.Y.2011).

### IV. EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

2012 WL 1506954

Plaintiff asserts that defendant Mazzilli used excessive force against him in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. A claim for excessive force in violation of the Fourth Amendment is analyzed with objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Stephenson v. Doe,* 332 F.3d 68, 77 (2d Cir.2003). That standard

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham,* 490 U.S. at 396. "Not every push or shove" amounts to a Fourth Amendment violation. *Id.* Indeed, a "de minimus use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101 105 (2d Cir.2005). Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim. *Wims v. N.Y.C. Police Dep't,* No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). Such injury need not be severe, however. *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff alleges that Officer Mazzilli pushed his wrist into his pocket, punched him in the chest, threw him to the ground face first, forcibly handcuffed his left arm, and attempted to manipulate his right arm into handcuffs as well. (Am.Compl.¶¶ 25–26.) It is further alleged that after plaintiff informed defendant Mazzilli of a prior surgery which rendered plaintiff's right arm unable to be fully brought behind his back, Mazzilli used a second set of handcuffs "so that [plaintiff's] right arm would not have to be pulled back." (*Id.* ¶ 27.)

*11 As an initial matter, the handcuffing itself cannot support plaintiff's excessive force claim. *Wims,* 2011 WL 2946369, at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."). More importantly, plaintiff does not allege "any specific or identifiable physical or mental harm beyond [ ] conclusory assertion[s] which, standing alone, [are] insufficient under

*Twombly* and *Iqbal.*" *Id.* (*See* Am. Compl. ¶¶ 32 (plaintiff informed Sergeants Mulvey and Cosmo that he "was injured and wanted medical attention"), 33 ("Plaintiff chose to wait until after being interrogated to seek medical attention"), 46 (plaintiff "suffered emotional and physical damages" "[a]s a result of these incidents").) That failure dooms plaintiff's excessive force claim. Accordingly, it must be dismissed. [9]

[9]
> In *Wims,* the court dismissed the excessive force claim despite the "liberal construction" accorded to complaints filed by *pro se* plaintiffs. 2011 WL 2946369, at * 1, 5. The failure to allege a specific and identifiable injury is more egregious here where plaintiff is represented by counsel, where plaintiff was "on notice" of the deficiency related to the failure to allege a specific and identifiable injury (*see* Mem. Of Law in Support of Defs. Mot. To Dismiss Compl. (Dkt. No. 13) at 22), and where the complaint has been amended once at plaintiff's own election subsequent to that "notice."

## V. *MONELL* CLAIM

To state a claim for municipal liability under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff must allege that " 'policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation.' " *Missel v. Ctny. of Monroe,* 351 Fed. Appx. 543, 545 (2d Cir.2009) (quoting *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006)). A *Monell* claim can survive a motion to dismiss where the plaintiff

> make[s] factual allegations that support a plausible inference that the constitutional violation took place pursuant to either a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.

*Id.*

Plaintiff has failed to set forth factual allegations that would support a plausible inference that the City's "policies" or "customs" caused Harrington's—or even Mazzilli's-alleged

violations of plaintiff's rights. The complaint is similarly devoid of allegations regarding any policy promulgated by the City requiring NYPD police officers to "lie" to "protect" other NYPD officers when they commit constitutional or NYPD-regulations violations.

Plaintiff alleges that the "City of New York failed to train its police officers as to display a deliberate indifference to the constitutional rights [of] those within the City of New York." (Am.Compl.¶ 71.) But that allegation standing alone does not create a plausible inference that any of Harrington's and Mazzilli's complained-of violations-regardless of whether those violations relate to plaintiff's claim for disparate treatment, hostile work environment, or retaliation were made pursuant to any City-mandated policy. That allegation is merely a recitation of the element of the cause of action-something the Court cannot credit on this motion. *Iqbal,* 129 S.Ct. at 1949. Accordingly, the *Monell* claim must be dismissed.

CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is GRANTED.

**\*12** Because plaintiff elected to amend the complaint in response to defendants' motion to dismiss the original complaint where nearly identical arguments to those raised on this motion, having the benefit of the Court's explicit admonition that any pleading deficiencies would be deemed with prejudice on a subsequent motion to dismiss, plaintiff's request for leave to amend is DENIED. Accordingly, the dismissal of the Amended Complaint is with prejudice.

The Clerk of Court is directed to terminate any pending motions and terminate this action. Judgment is to be entered for defendants the City of New York, Michael Harrington, and Michael Mazzilli.

SO ORDERED:

IN RE ADULT FILM COPYRIGHT INFRINGEMENT LITIGATION

This Document Relates to:

11 Civ. 7564(KBF)

11 Civ. 7999(KBF)

11 Civ. 8172(KBF)

11 Civ. 9550(KBF)

11 Civ. 9618(KBF)

11 Civ. 9688(KBF)

11 Civ. 9689(KBF)

11 Civ. 9703(KBF)

11 Civ. 9705(KBF)

11 Civ. 9706(KBF)

11 Civ. 0129(KBF)

11 Civ. 1077(KBF)

11 Civ. 1169(KBF)

Master Case No. 11 Civ. 7564

*MEMORANDUM & ORDER*

On March 13, 2012, this Court issued an order stating, in part, that plaintiffs shall identify Doe defendants, who have requested to proceed anonymously, by IP address and Doe number only—*i.e.,* plaintiffs must not reveal the identity of these Doe defendants in public filings. On April 18, 2012, in contravention of this order, plaintiff in Member Case No. 11 Civ. 9706 named a Doe defendant-who had submitted a request to proceed anonymously that was received by plaintiff-in a public filing. [1] This document has been removed by the Court.

[1]     Counsel shall broadly construe filings by *pro se* plaintiffs and err on the side of interpreting filings as requests to proceed anonymously when there is any indication that they might be such requests.

Should counsel for plaintiffs again disobey a Court order in this consolidated action, plaintiffs may be subject to sanctions including dismissal of their actions pursuant to Federal Rule of Civil Procedure 41(b).

Plaintiff is directed to mail this Order to the Doe defendant named in plaintiff's filing.

2012 WL 1506954

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1506954

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Alvarez v. County of Orange, N.Y.,   S.D.N.Y.,   March 25, 2015

2011 WL 2946369
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michael WIMS, Plaintiff,

v.

The NEW YORK CITY POLICE
DEPARTMENT, 52ND Precinct Bronx Narcotics
Division, Detective D. Roberts, Sergeant E.
Beckel, Sergeant A. Capato, Defendants.

No. 10 Civ. 6128(PKC).
|
July 20, 2011.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Michael Wims, proceeding *pro se,* brings this action against the New York City Police Department ("NYPD"), the 52nd Precinct Bronx Narcotics Division ("PBND"), Detective David Roberts, Sergeant E. Beckel and Sergeant A, Capato pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, excessive force and violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, arising out of his arrest on December 10, 2009. Defendants have moved to dismiss the Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss is granted.

BACKGROUND

Plaintiff filed the Complaint on August 17, 2010. (Docket # 1.) He alleges that at approximately 10:00 a.m. on December 10, 2009, he was leaving his residence at 1880 Valentine Avenue Bronx, New York, when he was confronted by several detectives. (Compl.¶ 7.) According to the Complaint, the detectives physically and mentally "brutalized" him, "antagonize[d]" him and "[taunted] [him] with firearms and harsh yet vulgar language and racial slurs." (*Id.*) Plaintiff asserts that he was not shown a search

warrant. (Compl.¶ 7.) Plaintiff also claims that the detectives "physical[ly] brutalized [him] through harsh and racially motivated [g]estures and comments." (*Id.* at p. 4.) Lastly, plaintiff asserts that the detectives did not read him his *Miranda* rights. (*Id.* at 3.)

The detectives searched plaintiff's apartment and found in the apartment two loaded firearms and a controlled substance. (*See* Francolla Decl., "B.") Plaintiff was subsequently arrested and charged with Criminal Possession of a Weapon in the Second Degree and Criminal Possession in the Fifth Degree With Intent to Sell. (*Id.*) On December 21, 2009, plaintiff entered a plea of guilty to Attempted Criminal Possession of a Weapon in the Second Degree. (*See* Francolla Decl., "C.")

DISCUSSION

I. *Motion to Dismiss Pursuant to Rule 12(b)(6)*
A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam). A plaintiff's *pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

Rule 8(a) (2), Fed.R.Civ.P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P ., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

**\*2** The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal

2011 WL 2946369

conclusion couched as a factual allegation. *Id.* Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See Int'l Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 72 (2d Cir.1995). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including arrest reports, criminal complaints, indictments and criminal disposition data. *Vasquez v. City of New York,* 99 Civ. 4606, 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (citations omitted); *see Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

Defendants move to dismiss plaintiff's claims under Rule 12(b) (6), arguing that plaintiff's guilty plea precludes his claims for false arrest and malicious prosecution, that he has failed to state a claim for excessive force, that two of the defendants are non-suable entities and that the defendant officers are entitled to qualified immunity. (Def.Mem.1–2.)

In opposition to defendant's motion, plaintiff has not submitted any legal arguments, but instead has set forth additional facts not alleged in the Complaint.[1] A court may not consider the contents of these documents without converting defendants' motion to dismiss into one for summary judgment. *See, e.g., Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) ("a district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal quotation marks, citations and alteration omitted). However, even if this Court were to generously read the facts set forth in plaintiff's opposition papers as being raised in his Complaint, plaintiff has still failed to state a claim upon which relief can be granted.

[1]     Local Rule 7.1 requires "all motions and all oppositions thereto ... [to] be supported by memorandum of law.... Failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." Here, the plaintiff did not submit a memorandum of law in opposition to defendants' motion to dismiss; rather plaintiff submitted a statement of facts. While the Court notes the

deficiency in the form of plaintiff's opposition, this Court has "broad discretion to determine whether to overlook a party's failure to comply with local rules ... and [n]othing in ... the Civil Rules of the Southern District requires a court to punish a party for noncompliance." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 108 n. 2 (2d Cir.2006) (internal quotation marks omitted) (citations omitted).

## II. *Plaintiff's Section 1983 Claims*

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law. 42 U.S.C. § 1983; *see Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Here, plaintiff's claims are predicated on allegations that he was falsely arrested, maliciously prosecuted, subjected to excessive force and deprived of rights, privileges and immunities guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments. The Court will examine each of these claims in turn.

### A. *False Arrest*

 **\*3**  Plaintiff's section 1983 claim for unconstitutional false arrest fails because plaintiff pled guilty to one of the crimes for which he was arrested.[2] *Cameron v. Fogarty,* 806 F.2d 380, 386–87 (2d Cir.1986) (holding that "a person who has been convicted of the crime for which he was arrested is barred from recovering" under section 1983 for a claim for false imprisonment or malicious prosecution, "sometimes colloquially called an action for 'false arrest' "). "Since a guilty plea is the equivalent of a conviction, a guilty plea will also bar a § 1983 false arrest claim." *Hernandez v. City of New York,* No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004).

[2]     The state prosecution of an individual is a matter of public record, of which a court may take judicial notice. *Shmueli v. City of New York,* 424 F.3d 231, 233 (2d Cir.2005). This Court takes judicial notice of plaintiff's conviction by guilty plea.

Here, plaintiff was arrested for, and initially charged with, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Controlled Substance in the Fifth Degree With Intent to Sell. (*See* Francolla Decl., Exhibit "B."). He pled guilty to Attempted Criminal Possession of a Weapon in the Second Degree, in satisfaction of all

charges against him. That plaintiff pled guilty to only one of the two initial charges—and to a lesser charged offense—nevertheless precludes recovery under section 1983 for false arrest. *See, e.g., Allison v. Farrell,* No. 97 Civ. 2247, 2002 WL 88380, at *4 (S.D.N.Y. Jan. 22, 2002) ("[I]t is of no moment that [plaintiff] pled guilty to a lesser charge arising out of the events that took place on the day of his arrest.") (citations omitted); *Papeskov v. Brown,* No. 97 Civ. 5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) ("[A] plea of guilty, even to a charge lesser than that for which the plaintiff was arrested, bars a § 1983 action.") (citations omitted).

Plaintiff has not shown that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). Under *Heck,* a plaintiff is barred from recovering damages under section 1983 if the award would imply the invalidity of plaintiff's conviction. *See Younger v. City of New York,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (dismissing plaintiff's claims for false arrest, false imprisonment and malicious prosecution because, if successful, they would render plaintiff's conviction invalid). Thus, his "guilty plea establishes that there was probable cause for his arrest" and "stands as a complete bar to any claims of false arrest ... and malicious prosecution under Section 1983." *Smith v. P.O. Canine Dog Chas,* No. 036240 KMW DF, 2004 WL 2202564, at *6 (S.D.N.Y. Sept. 28, 2004).

Accordingly, defendants' motion to dismiss plaintiff's claim for false arrest is granted.

### B. *Malicious Prosecution*

Plaintiff's guilty plea negates a required element of his malicious prosecution claim: a showing that the underlying proceeding terminated in his favor. A claim for malicious prosecution brought under section 1983 to vindicate plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable seizure is "substantially the same" as a claim for malicious prosecution under state law. *See Heck,* 512 U.S. at 486–87; *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). To state a claim for malicious prosecution under New York law plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 136 (internal

quotation marks omitted). "Favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action." *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). When a charge is dismissed as part of a plea bargain, the dropped charge is not a favorable termination sufficient to support a malicious prosecution claim. *See Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999) ("[I]f the outcome was the result of a compromise to which the accused agreed ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." (internal quotation marks and citation omitted)). Therefore, plaintiff's guilty plea for Attempted Criminal Possession of a Weapon in the Second Degree in satisfaction of all charges is not a favorable termination on the charge dismissed as part of the plea deal.

**\*4** Based on plaintiff's conviction and failure to show a favorable termination, defendants' motion to dismiss plaintiff's claim for malicious prosecution is granted.

### C. *Excessive Force*

A claim that excessive force was used "in the course of an arrest, investigatory stop or other 'seizure' of a free citizen [is] most properly characterized as invoking the protections of the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 387 (1989). Accordingly, plaintiff's excessive force claim will be analyzed under Fourth Amendment principles.[3]

3        In addition to listing a Fourth Amendment violation in his complaint, plaintiff also asserts that the defendants violated the prohibition against the infliction of cruel and "inhumane" punishment, which implicates the Eighth Amendment. (Compl.¶ 5.) Reading the complaint liberally and because he was not then incarcerated pursuant to a judgment of conviction, plaintiff's claim of use of excessive force during his arrest will be deemed to have been asserted under the Fourth and Fourteenth Amendments.

When excessive force is alleged, a court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight." *Id.* at 396. Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

A "de minimis use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993); *see also Rincon v. City of New York,* No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (rejecting claim of excessive force where plaintiff alleged that the officer threw her to the ground, causing her stitches to open and was treated for a swollen leg and wrist, because the force was de minimis). Further, "it is clear that some type of injury is required to prevail on a § 1983 excessive force claim." *Castro v.. County of Nassau,* 739 F.Supp.2d 153, 177 n. 16 (E.D.N.Y.2010). However, an individual does not need to sustain a severe injury to maintain a claim. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff states in his Complaint that he was "[taunted] [ ] with firearms and harsh yet vulgar language and racial slurs." (Compl.¶ 7.) He also asserts the "officers physical[ly] brutalized me through harsh and racially motivated [g]estures and comments." (Compl. p. 4.) No other facts showing injury are set forth in the Complaint. In plaintiff's Affirmation in Opposition to Motion to Dismiss, he claims the officers surrounded his vehicle with "weapons drawn ... [and] were very loud and using profanity." (Docket # 12.) He also asserts he was pulled out of his car and "thrown flat on [his] face unto the filthy ground." (*Id.*)

**\*5** These allegations do not rise to the level of force that is more than de minimis. Merely placing tight handcuffs on a suspect is not enough for an excessive force claim. *See Grant v. City of New York,* 500 F.Supp.2d 211, 217 (S.D.N.Y.2007) ("Frequently, a reasonable arrest involves handcuffing the suspect and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."). Similarly, the verbal abuse, on its own, is not actionable. *See Miro v. City of New York,* No. 95 Civ. 4331, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("[A]n arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim."). Further, it is not excessive for the officers

to draw their guns during the arrest. *See Bolden v. Vill. Of Monticello,* 344 F.Supp.2d 407, 419 (S.D.N.Y 2004) ("[In] executing a search warrant for drugs ... it is reasonable for police officers to enter a residence with guns draw to secure the area and prevent harm to themselves or others.") (citing *Speights v. City of New York,* No. 98 Civ. 4635(NG), 2001 WL 797982 (E.D.N.Y. June 18, 2001)). There is no assertion that having been "thrown flat on [his] face unto the filthy ground" resulted in any specific or identifiable physical or mental injury and harm beyond a conclusory assertion which, standing alone, is insufficient under *Twombly* and *Iqbal. See Castro,* 739 F.Supp.2d at 177.

Therefore, defendants' motion to dismiss plaintiff's claim for excessive force is granted.

### D. *Deprivation of Federal Civil Rights*

Plaintiff also alleges that the defendants violated his Fifth and Sixth Amendment Rights. (Compl.¶ 5.) The Court will examine these remaining claims in turn.

#### 1. *Fifth Amendment*

Plaintiff claims that his Due Process rights were violated because he was not read his *Miranda* rights, and he did not have an attorney during custodial interrogation. The Supreme Court has repeatedly held that *Miranda* warnings and right to counsel are not themselves required by the Constitution but are rather procedural safeguards to insure that a suspect's Fifth Amendment rights are not violated. *See, e.g., J.D.B. v. North Carolina,* 131 S.Ct. 2394, 2401 (2011). The appropriate remedy for the failure to read a suspect his *Miranda* warnings is the exclusion of any self-incriminating evidence, not liability under section 1983. *Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995). Thus, the officers' failure to inform plaintiff of his rights under *Miranda* does not, without more, result in section 1983 liability.

#### II. *Sixth Amendment*

Plaintiff claims that he was subjected to "cruel and inhumane" punishment because the detectives' conduct "was in conflict of departmental procedures." (Compl. p. 4.) Although plaintiff lists this as a Sixth Amendment violation, it appears he intended to assert a violation of the Eighth Amendment. The Sixth Amendment right to counsel would not attach until the Government commits itself to prosecution by initiating adversary judicial proceedings, *Moran v. Burbine,* 475 U.S.

412, 321 (1986). However, plaintiff's complaint alleges only a lack of representation during his initial interrogation before arraignment. (Compl. p. 3.) Similarly, the Eighth Amendment does not attach until after conviction and sentencing, as "it was designed to protect those convicted of crimes." *Ingraham v. Wright,* 430 U.S. 651, 664 (1977). Because these claims concern actions prior to his conviction, plaintiff's Eighth Amendment and Sixth Amendment claims are dismissed.

### III. *The NYPD and PBND Are Not Suable Entities*

**\*6** The NYPD and PBND move to dismiss on the grounds that neither is a suable entity. An entity's capacity to be sued is determined by state law. Fed.R.Civ.P. 17(b). Chapter 17, section 396 of the New York City Charter provides that "all actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law." As agencies of the City of New York, therefore, the NYPD and the PBND are non-suable entities. *See Ximines v. George Wingate High* Sch., 516 F.3d 156, 160 (2d Cir.2008) ( "Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); *East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992) (finding that Police Department, as an agency of the City, and Property Clerk, as a subdivision of the Police Department, are not suable entities).

### IV. *Municipal Liability*

Construing the claims against the NYPD and PBND as having been asserted against the City of New York under 42 U.S.C. § 1983, plaintiff has still failed to state a claim for municipal liability. *"Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Because plaintiffs potential claims against the City of New York depend upon the existence of an independent constitutional violation and as this Court has found that none have been stated, plaintiff's *Monell* claims will be dismissed.

### CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are GRANTED. The Clerk of the Court shall enter judgment in favor of the defendants.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 2946369

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.